# Exhibit B: Filed Complaints

# Cindy Bartlett, and her husband Thomas Bartlett Complaint

Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| **CINDY BARTLETT, AND HER HUSBAND, THOMAS BARTLETT** 4652 CATALPA CT. BURLINGTON, KY 41005 | : : : : : | Case No. |
|  | : | Judge |
|  | : |  |
| Plaintiffs, | : : | **COMPLAINT & JURY DEMAND** |
|  | : : |  |
| **v.** | : : |  |
|  | : |  |
| **ABUBAKAR ATIQ DURRANI, M.D.,** 4555 LAKE FOREST DR., Suite 150 CINCINNATI, OH 45242 (Serve via Certified Mail) | : : : : |  |
|  | : |  |
| And | : : |  |
|  | : |  |
| **CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC.** 4555 Lake Forest Drive, Suite 150 Cincinnati, Ohio 45242 | : : : : |  |
|  | : |  |
| SERVE: CT CORPORATION SYSTEM 1300 EAST 9TH STREET, SUITE 1010 CLEVELAND, OHIO 44114 (Serve via Certified Mail) | : : : |  |
|  | : |  |
| And | : : |  |
|  | : |  |
| **WEST CHESTER HOSPITAL, LLC** 7700 UNIVERSITY DRIVE WEST CHESTER, OH 45069 | : : : |  |
|  | : |  |
| SERVE: GH&R BUSINESS SVCS., INC. 511 WALNUT STREET 1900 FIFTH THIRD CENTER CINCINNATI,OH 45202 | : : |  |
|  | : |  |
| And | : |  |

1

**THE CHRIST HOSPITAL, INC.**
2139 AUBURN AVE
CINCINNATI, OHIO 45219

Serve: CT CORPORATION SYSTEM
1300 EAST NINTH STREET
CLEVELAND, OH 44114
(SERVE VIA CERTIFIED MAIL)

                                :

And                            :

                                :

**UC HEALTH**                     :
7700 UNIVERSITY DRIVE
WEST CHESTER, OH 45069     :

SERVE: CT CORPORATION SYSTEM  :
1300 EAST 9TH ST. STE 1010      :
CLEVELAND, OH 44114          :
(SERVE VIA CERTIFIED MAIL)

                                :

           Defendants.        :

Now comes Plaintiffs, Cindy Bartlett and Thomas Bartlett, and for their Complaint with Jury Demand against the Defendants, state as follows:

## PARTIES, JURISDICTION AND VENUE

1. The incidents giving rise to this action and the subject matter of the Complaint arise out of medical treatment, acts and omissions, and conduct that occurred in Butler County, Ohio, Hamilton County, Ohio, and Kenton County, Kentucky.

2. At all times relevant, Plaintiff Cindy Bartlett ("Plaintiff") was an individual resident and citizen of Boone County, Kentucky.

3. At all times relevant, Plaintiff Thomas Bartlett ("Plaintiff") was an individual resident and citizen of Boone County, Kentucky.

4. Cindy Bartlett is married to Thomas Bartlett.

5.  At all times relevant, Defendant Abubakar Atiq Durrani, M. D. ("Dr. Durrani") was licensed to and did in fact practice medicine in the State of Ohio and Kentucky.

6.  At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST"), was licensed to and did in fact perform medical services in the State of Ohio and the Commonwealth of Kentucky, and was and is a corporation authorized to transact business in the both states.

7.  At all time relevant, West Chester Hospital ("West Chester"), registered at the time of the incident as West Chester Medical Center, was a corporation authorized to transact business and perform medical services in the State of Ohio.

8.  At all time relevant, Christ Hospital, Inc. ("Christ Hospital") was a corporation authorized to transact business and perform medical services in the State of Ohio.

9.  At all times relevant, UC Health was a corporation authorized to transact business and manage medical services in the State of Ohio.

10. The amount in controversy exceeds the jurisdictional threshold of this Court.

11. Plaintiff reserve the right to file an Amended Complaint as this Complaint is being filed, inter alia, to preserve possible statutes of limitation, and remedies under law.

## BACKGROUND

12. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

13. Physical Therapist Aaron Dragone referred Plaintiff Cindy Bartlett to Defendant Dr. Durrani in 2005.

14. P.T. Dragone followed Dr. Durrani on rounds and during orthopedic clinic at Christ Hospital.

15. Dr. Durrani told Cindy Bartlett on her first office visit that she needed to have surgery.

16. Dr. Durrani told Cindy Bartlett she had to undergo a discogram, not for a medical purpose, but "so [her] insurance would pay for the surgery."

17. A discogram is an extremely painful test whereby dye is injected into the spine without anesthesia.

18. Cindy Bartlett was caused pressure, excessive pain and extreme discomfort by this discogram.

19. The results of the discogram were inconclusive, nevertheless Dr. Durrani insisted Cindy Bartlett undergo a spinal fusion sugery, and Dr. Durrani recommended fusing her vertebra from L4-S1, installing metal rods, screws into those vertebrae, installing a metal cage, and using synthetic bone graft, BMP-2.

20. Defendants never explained to the Plaintiffs that the surgery would be an experiment.

21. Defendants never obtained Plaintiffs informed consent to use BMP-2 on the L4 vertebrae.

22. BMP-2 is not approved by the FDA for use at L4 in spinal surgery.

23. Defendants never properly and fully informed Plaintiffs of the side effects of BMP-2, or that BMP-2 was not approved by the FDA for use at L4.

24. The BMP-2 used on Cindy Bartlett was manufactured by Medtronic, Inc., and was marketed as INFUSE BMP-2.

4

25. Dr. Durrani is a consultant for Medtronic.

26. Defendants never informed Plaintiffs that Dr. Durrani was a consultant for Medtronic and that Dr. Durrani received substantial financial compensation from Medtronic.

27. BMP-2 was used by Defendants in Cindy Bartlett's L4-S1 spinal fusion surgery at Christ Hospital on or about January 28, 2006 [the "first surgery"].

28. After the first surgery by Dr. Durrani, Cindy Bartlett developed an antaglic and sideways gait, causing her hips to turn with a kick when she walked, with a hitch-type limp.

29. After the first surgery, Cindy Bartlett was never able to pick up her two year old child again.

30. After the first surgery, Cindy Bartlett could never lie on her back again.

31. After the first surgery, Cindy Bartlett could feel the screws moving in her spine, and the movement was extremely painful.

32. After the first surgery, Cindy Bartlett could not walk normally, could not feed herself or her family, and had to wear a TENS unit for constant pain.

33. Thereafter, as a result of her limp, Cindy Bartlett had to have knee surgery in 2007.

34. Cindy Bartlett repeatedly reported these problems to Dr. Durrani at Christ Hospital, and at his private CAST office locations.

35. In response, Dr. Durrani told Plaintiff that the bone graft BMP-2 "didn't take" and that he would take the old hardware out, and install new hardware that "had just

5

come out" and that he would "mix up" a new bone graft material that would be better this time.

36. Dr. Durrani told Plaintiffs he had incorrectly installed the (R) right side hardware and rod, and that as a result, he needed to install all new hardware.

37. The second (revision) surgery was performed by Dr. Durrani at Christ Hospital on or about December 12, 2007 [the "second surgery'].

38. During the second surgery, Dr. Durrani removed the old hardware and installed all new hardware. This involved removing the screws from Cindy Bartlett's vertebrae, and reinserting new (larger) screws into the same vertebrae.

39. Defendants never explained to the Plaintiffs that the second surgery would be an experiment.

40. Defendants never obtained Plaintiffs informed consent to use BMP-2 on the L4 vertebrae during the second suregery

41. BMP-2 is not approved by the FDA for use at L4 in spinal surgery.

42. Defendants never properly and fully informed Plaintiffs of the side effects of BMP-2, or that BMP-2 was not approved by the FDA for use at L4.

43. At all times relevant, Dr. Durrani was in exclusive control of amount and ratio of BMP-2 bone graft that he personally "mixed up".

44. At all times relevant, Dr. Durrani was responsible for the selection, modification, bending, cutting, sizing and placement of the rods, screws and hardware he implanted into Cindy Bartlett.

45. After the second surgery, Cindy Bartlett's condition deteriorated further, and she was now in constant pain that was even more extreme that before the first surgery.

46. After the second surgery, Plaintiffs had to install handicap ramps at their home, had to purchase a modified motor vehicle, had to install a handicap toilet.

47. After the second surgery, Cindy Bartlett can no longer drive more than an hour, and has to use a wheelchair after walking or standing for a minimal time.

48. The damage to Cindy Bartlett from the first and second surgeries, including the improperly installed hardware, the compromised bone structures, and the limping, instability, and immobility caused headaches and extreme upper spinal pain to Cindy Bartlett.

49. In response to the newly developed symptoms, Dr. Durrani recommended another surgery, this time a cervical fusion surgery, and said this cervical surgery would be "no big deal" and that "I will fix you this time."

50. Cindy Bartlett decided not to permit Dr. Durrani to install rods and screws into her cervical (neck) area.

51. After the first and second surgeries by Dr. Durrani at Christ Hospital, Cindy Bartlett developed extreme lower back pain, immobility, numbness in her legs, her bowels, her lungs, and an extremely painful condition of shooting nerve pain from her tailbone to her neck, which caused her to vomit each time it would occur

52. After becoming disabled, Cindy Bartlett asked Dr. Durrani to provide her documentation to receive a handicap parking sticker.

53. Dr. Durrani refused to help Cindy Bartlett get a handicap sticker, and in front of several staff members at Christ Hospital, told Cindy he "would not give her a handicap sticker because [he] cannot stand it when a old big fat lady pulls into a

7

handicap spot." Dr. Durrani led a roar of condescending laughter directed at his patient Cindy Bartlett.

54. Cindy Bartlett had become a handicap 36 year old mother of four (4), and Dr. Durrani thought it was comical.

55. Cindy Bartlett suffered extreme humiliation and distress because of the statement.

56. Cindy Bartlett's pain, immobility, handicap and paralysis never subsided.

57. Dr. Durrani told Plaintiffs that the BMP-2 bone graft from the second surgery had also "not taken" and that the bones were still not fused.

58. Dr. Durrani now had to extend the rods up one level to L3 since he had destroyed the vertebrae at L4 during the last two screw insertions at the same L4 level.

59. Screws had been inserted into L4 during the first surgery and larger screws during the second (revision) surgery. Now a third revision surgery was required which would extend the rods, screws and hardware to L3 to account for the compromised spinal structure of L4, which could no longer support the hardware.

60. Dr. Durrani again marketed the new and improved hardware he could install, and said the BMP-2 bone graft he would mix this time would be stronger, correct, and to give him "one more chance to fix it" and that "he promised" he would this time

61. On March 9, 2009, Dr. Durrani performed a third (second revision) surgery [the "third surgery"] at Christ Hospital, extending the rods and screws from L3-S1.

62. Defendants never explained to the Plaintiffs that the third surgery would be an experiment.

63. Defendants never obtained Plaintiffs informed consent to use BMP-2 on the L3 vertebrae.

8

64. BMP-2 is not approved by the FDA for use at L3 in spinal surgery.

65. Defendants never properly and fully informed Plaintiffs of the side effects of BMP-2, or that BMP-2 was not approved by the FDA for use at L3.

66. Cindy Bartlett has suffered extreme scarring from the multiple (revision) surgeries, the long scarred incisions, and numerous staple marks on her back.

67. Cindy can no longer turn her hips from side to side.

68. After the third surgery, Cindy Bartlett has to wear a bone stimulator device around her abdomen for 12 hours a day for 3 months.

69. Dr. Durrani has continued to attempt to convince Cindy Bartlett to permit him to perform a cervical surgery.

70. After the third surgery, Dr. Durrani told Plaintiffs that the bone graft had once again "not taken" and that now he wanted to try the latest and newest procedure whereby he would insert all new hardware, this time through an incision into her buttocks by inserting the rods into the spine from bottom.

71. Dr. Durrani scheduled this fourth (third revision) surgery for August 2, 2010.

72. On August 2, 2010 Dr. Durrani performed the fourth surgery on Cindy Bartlett, fusing L3-S1, by inserting rods and a cage through the buttocks ["the fourth surgery"]. This surgery occurred at West Chester Hospital.

73. Since the fourth surgery, Cindy Bartlett cannot control or feel her bowel movements.

74. Since the surgeries, Plaintiffs have a diminished and at times, non-existent sexual marital relationship.

75. Cindy Bartlett continued to complain to Dr. Durrani, but he told her it was simply a matter of time until she would get better and to just "wait it out".

76. Despite Dr. Durrani's recommendation for cervical surgery, other medical providers told Cindy Bartlett that cervical surgery was not necessary.

77. Cindy Bartlett's last office visit with Dr. Durrani was on or about November 2012. Dr. Durrani finally admitted the pain would never subside, and that Cindy was going to "have to learn to deal with it."

78. Dr. Durrani again offered top perform cervical surgery, but said there was nothing else he could do for Cindy Bartlett's lumbar spine.

79. Cindy Bartlett is now handicap, suffers from occasional paralysis, immobile, and in constant pain. Her condition is embarrassing and emotionally draining, and painful.

80. A substantial part of Cindy Bartlett's medical expenses were paid for by her health insurer.

## COUNT I: NEGLIGENCE – DOCTOR DURRANI & CAST

81. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

82. Defendants owed Plaintiffs, and his patient, Cindy Bartlett, the duty to exercise the degree of skill, care, and diligence of an ordinary prudent health care provider would have exercised under like or similar circumstances.

83. Defendants breached his duty causing damages by failing to exercise the requisite degree of skill, care and diligence that an ordinary prudent health care provider would have exercised under same or similar circumstances through, among other

10

things, the negligent surgery, improper diagnosis, medical mismanagement and mistreatment of Cindy Bartlett, including but not limited to unnecessary surgery, failed surgery, improper performance of surgery, and improper follow up care addressing the patient's concerns.

84. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENCE - CHRIST HOSPITAL, WEST CHESTER HOSPITAL & UC HEALTH

85. Plaintiffs incorporate by reference each and every allegation in the paragraphs above

86. Defendants owed their patient, Cindy Bartlett, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

87. Defendants breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiff.

88. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiffs sustained severe and grievous injuries, prolonged pain and

suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABLITY - CAST, CHRIST HOSPITAL, WEST CHESTER HOSPITAL & UC HEALTH

89. Plaintiffs incorporates by reference each and every allegation in the paragraphs above.

90. At all times relevant, Defendant Dr. Durrani was a was a staff physician, agent, owner, and/or employee of Christ Hospital and/or West Chester Hospital, which is owned and/or managed by UC Health.

91. Upon information and belief, Dr. Durrani is a shareholder, owner, director and/or member manager of West Chester Hospital, and therefore has a direct financial motive and interest in West Chester Hospital and/or UC Health profits.

92. Defendant Durrani was performing within the scope of his employment , agency relationship, and/or for the financial gain of the Defendants when dealing with the Plaintiffs.

93. Defendants are responsible for harm caused by acts of employees, agents and owners which conduct occurred within the scope of employment under the theory of respondeat superior, ostensible agency, and/or vicarious liability.

94. Defendants are liable for the negligent acts and omissions of Defendant Durrani alleged in this Complaint.

95. As a direct and proximate result of these Defendants acts and omissions by and through its agents and/or employees, Plaintiffs sustained severe and grievous

injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT IV: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION - CHRIST HOSPITAL

96. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

97. Defendant Christ Hospital was responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

98. Defendant Christ Hospital was in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiff to exercise said control.

99. Defendant Christ Hospital provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

100.    Defendants Christ Hospital and Dr. Durrani participated in experiments using BMP-2 bone graft on patients, including the Plaintiffs, without obtaining proper informed consent causing harm to Plaintiffs.

101.    Christ Hospital requested Dr. Durrani resign from Christ Hospital.

102.    Upon information and belief, Dr. Durrani resigned from Christ Hospital after his attorney, Mike Lyons, negotiated a deal with Christ Hospital administration.

103.    Defendant Christ Hospital breached its duty to Plaintiffs, inter alia, by not controlling the actions of the Dr. Durrani and doctors, nurses, staff, and those with privileges, during the medical treatment of Cindy Bartlett at Christ Hospital.

104.    As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by Christ Hospital, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT V: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION - CAST, WEST CHESTER HOSPITAL & UC HEALTH

105.    Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

106.    Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

107.    Defendants were in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiff to exercise said control.

108.    Defendants provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

14

109.     Defendants West Chester Hospital, UC Health and Dr. Durrani participated in experiments using BMP-2 bone graft on patients, including the Plaintiffs, without obtaining proper informed consent causing harm to Plaintiffs.

110.     Defendants CAST, West Chester Hospital and/or UC Health knew, or had reason to know, that Dr. Durrani had his privileges terminated and/or refused at Christ Hospital, Children's Hospital, Good Samaritan Hospital, Deaconess Hospital, and St. Elizabeth Hospitals prior to West Chester Hospital and UC Health providing Dr. Durrani privileges at the facility.

111.     West Chester Hospital and UC Health currently continue to permit Dr. Durrani to admit patients, and to perform surgery at West Chester Hospital.

112.     Defendants CAST, West Chester Hospital and UC Health breached its duty to Plaintiffs, inter alia, by not controlling the actions of the Dr. Durrani and doctors, nurses, staff, and those with privileges, during the medical treatment of Cindy Bartlett at West Chester Hospital.

113.     As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by West Chester Hospital and/or UC Health, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT VI: BATTERY - DEFENDANT DURRANI

114.     Plaintiffs incorporate, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

115.     Defendant Durrani committed battery against the Plaintiff Cindy Bartlett by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent , inter alia, by using BMP-2 in ways and surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiffs.

116.     Plaintiffs would not have agreed to the surgeries if they knew that the surgeries were unnecessary, not approved by the FDA, and not indicated.

117.     As a direct and proximate result of the aforementioned battery by Defendant, Plaintiffs were caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VII: FRAUD - CAST, DEFENDANT DURRANI, CHRIST HOSPITAL, WEST CHESTER HOSPITAL & UC HEALTH

118.     Plaintiff incorporates, adopts and alleges those allegations contained in the above paragraphs.

119.     Defendants made material, false representations to Plaintiffs and their insurance company related to Cindy Bartlett's care and treatment, as outlined in this Complaint.

120.    Such false representations include, inter alia, stating that the surgery was imminently necessary; that Dr. Durrani "could fix" Cindy Bartlett; that further conservative treatment was unnecessary and futile; that the surgery would be simple; that Cindy Bartlett would be walking normally within days after each surgery; that the procedures and surgery billing to the insurance company was accurate and medically indicated; that the surgery was successful; that "I will fix you."; that Cindy Bartlett was medically stable and ready to be discharged.

121.    Defendants knew or should have known such representations were false, and/or made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

122.    Defendants made the misrepresentations both before and after the surgeries with the intent of misleading Plaintiffs and their insurance company into relying upon them.

123.    Plaintiffs and their insurance company justifiably relied upon the material misrepresentations of Defendants when making the decision to undergo and pay for the surgeries.

124.    As a direct and proximate result of the aforementioned, Plaintiff Cindy Bartlett did undergo multiple surgeries which were paid for in whole or in part by her insurance company, and sustained grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125.    Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

126.    Defendants intended to, and in fact, caused emotional distress to the Plaintiffs.

127.    Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

128.    Defendant's conduct was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress.

129.    The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT IX: LOSS OF CONSORTIUM & MEDICAL EXPENSES

130.    Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

131.    At all times relevant, Plaintiffs Cindy Bartlett and Thomas Bartlett were married.

132.    That as a result of the wrongful acts and omissions of the Defendants, Plaintiffs Cindy Bartlett and Thomas Bartlett were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss of affection, loss of assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

133.    That all the aforesaid injuries and damages were caused solely and

proximately by the acts and omissions of the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all claims.
Plaintiffs further request:

1.    Past medical bills;

2.    Future medical bills;

3.    Lost income and benefits;

4.    Lost future income and benefits;

5.    Loss of ability to earn income;

6.    Past pain and suffering;

7.    Future pain and suffering;

8.    Plaintiffs seek a finding that their injuries are catastrophic under Ohio
      Rev. Code §2315.18;

9.    All incidental costs and expenses incurred as a result of their injuries;

10.   The damages to their credit as a result of their injuries;

11.   Loss of consortium;

12.   Punitive damages;

13.   Costs;

14.   Attorneys' fees;

15.   Interest;

16.   All property loss;

17.   All other relief to which they are entitled to.

Based upon 1-17 itemizations of damages, the damages sought exceed the
minimal jurisdictional amount of this court.

Respectfully submitted,

\s_____
**Eric C. Deters (38050)**

19

ERIC. C. DETERS &
PARTNERS, PSC
5247 Madison Pike
Independence, KY  41051
Phone:  (859) 363-1900
Fax:  (859) 363-1444
eric@ericdeters.com

## JURY DEMAND

Plaintiffs hereby respectfully request trial by jury on all issues.

Respectfully submitted,

Eric C. Deters (0038050)
Attorney for Plaintiffs
ERIC C. DETERS & PARTNERS, P.S.C.
5247 Madison Pike
Independence, KY 41051-7941
Phone:  859-363-1900 Fax:  859-363-1444
Email:  eric@ericdeters.com

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO
CIVIL DIVISION

CINDY BARTLETT, AND HER
HUSBAND, THOMAS BARTLETT          :          Case No.
                                  :          Judge
                                  :
          Plaintiffs,             :          **PLAINTIFFS' FIRST DISCOVERY**
                                  :          **TO WEST CHESTER HOSPITAL AND**
                                  :          **UC HEALTH SERVED WITH**
                                  :          **COMPLAINT**
                                  :
                                  :
v.                                :
                                  :
ABUBAKAR ATIQ DURRANI, M.D., et al.:
                                  :
                                  :
          Defendants.             :

_____

      Come now the Plaintiffs Cindy & Thomas Bartlett, by and through counsel, hereby request that Defendants respond to the following discovery in accordance with the Ohio Rules of Civil Procedure.

      PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

### REQUESTS FOR ADMISSION

1. Admit that Dr. Durrani has an ownership interest in West Chester Hospital Medical Center.
   ANSWER:

2. Admit that you have made reports to the Ohio Board of Medical Licensure regarding claims for medical negligence relating to care or treatment provided by Defendant Durrani to patients at your facility.

**ANSWER:**

3. Admit that you have made reports to the National Practitioner Databank regarding claims for medical negligence relating to care or treatment provided by Defendant Durrani to patients at your facility.
   **ANSWER:**

4. Admit that you have made reports to the National Practitioner Databank relating to Defendant Durrani.
   **ANSWER:**

5. Admit that you did not obtain a report from the National Practitioner Databank prior to granting Defendant Durrani privileges to practice at your facility.
   **ANSWER:**

6. Admit that Dr. Durrani used BMP-2 on Cindy Bartlett at West Chester Hospital.
   **ANSWER:**

## INTERROGATORIES

1. Identify the process, including all terms and conditions, by which Defendant Durrani had his privileges suspended at West Chester Hospital.
**ANSWER:**

2. Identify what information was gathered by you with respect to the selection of Dr. Abubakar Atiq Durrani prior to granting him privileges at West Chester Hospital.
**ANSWER:**

3. Identify what information was gathered by you with respect to the retention of Dr. Abubakar Atiq Durrani after West Chester Hospital granted him privileges at the hospital.
**ANSWER:**

4. Identify the materials and information upon which West Chester Hospital and/or UC Health based its decision to hire, retain, and/or grant privileges to Dr. Abubakar Atiq Durrani.
**ANSWER:**

5. Identify the materials and information upon which West Chester Hospital and/or UC Health based its decision to retain Dr. Abubakar Atiq Durrani as a physician at West Chester Hospital.
**ANSWER:**

6. Identify all actions you took regarding Dr. Abubakar Atiq Durrani in furtherance of, or related to your duty to grant and continue such privileges only to competent physicians.

**ANSWER:**

7. Identify the date, the source, and the author, and provide a brief description of every document contained in the credentialing file of Dr. Abubakar Atiq Durrani so that Plaintiffs may make a meaningful determination whether ORC 2305.252 applies to each document.

**ANSWER:**

8. Identify and produce all documents that can be obtained from their original sources, but which are otherwise contained in the credentialing file of Dr. Abubakar Atiq Durrani.

**ANSWER:**

9. With respect to Dr. Abubakar Atiq Durrani:
    1. Produce his application for appointment and privileges at West Chester Hospital;
    2. Identify and produce all information gathered by West Chester Hospital to confirm the information contained in the application for privileges;
    3. Identify and produce all information gathered by West Chester Hospital during the course of Dr. Durrani's appointment relating to quality of care and professional ethics; and
    4. Identify all Board and/or Management decisions with respect to appointments and privileges of Dr. Durrani at West Chester Hospital.

**ANSWER:**

10. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.
    A) West Chester Medical Center;
    B) Children's Hospital Cincinnati;
    C) Christ Hospital;
    D) Good Samaritan Hospital.

**ANSWER:**

11. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against you and Dr. Durrani and/or CAST, and

further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

12. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against you and Dr. Durrani and/or CAST, and/or that have been brought to the attention of you, your insurance company(ies), your lawyers and/or your representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

**ANSWER:**

13. Identify the exact number of complaints, including but not limited to patient complaints, that you have received concerning Dr. Durrani related to failed surgeries, unnecessary surgeries, malpractice, negligence, fraud and/or hardware failure.

**ANSWER:**

14. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

**ANSWER:**

15. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani ever performed on Cindy Bartlett.

**ANSWER:**

16. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

**ANSWER:**

17. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:

1. Details of each person's education, training, qualifications, and background in his or her field of expertise;
2. The substance of the facts and opinions to which each such expert witness is expected to testify; and
3. A summary of the grounds for each such opinion of each such expert witness.

**ANSWER:**

18. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

19. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

20. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Cindy Bartlett in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

21. Please state whether you, your agents, attorneys, or employees have performed surveillance on Cindy Bartlett in which you have made an audio or video recording and/or a transcript or notes of Cindy Bartlett. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

22. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Cindy Bartlett was negligent, failed to mitigate her damages, and/or did not act with reasonable care in his own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

23. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state

whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

24. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

25. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Cindy Bartlett that were present with Defendant Durrani during each occasion he interacted with Cindy Bartlett.

**ANSWER:**

26. Does West Chester Hospital have any policies or procedures for informing patients when it is suspected that an adverse event such as a hardware failure has occurred during and/or after surgery? And if so, produce a copy of the policy.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all documents that support your defense that Dr. Durrani properly obtained informed consent from Cindy Bartlett concerning the use of BMP-2.
   **ANSWER:**

2. Produce a copy of each insurance policy that may provide coverage related to this lawsuit.
   **ANSWER:**

3. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.
   **ANSWER:**

4. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Cindy Bartlett including but not limited to all prior versions and/or iterations of all billing records.
   **ANSWER:**

5. Please produce copies of all statements of any person related to Cindy Bartlett which you have in your possession or control.
   **ANSWER:**

6. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.
   **ANSWER:**

7. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.
   **ANSWER:**

8. Please produce copies of all correspondence between the Plaintiffs and the Defendants, or between any agent of the Defendants and the Plaintiffs.
   **ANSWER:**

9. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.
   **ANSWER:**

10. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.
    **ANSWER:**

11. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Cindy Bartlett after her surgeries.
    **ANSWER:**

12. Please produce all documents which form the basis of the relationship between Cindy Bartlett and the Defendants, or are otherwise related thereto.
    **ANSWER:**

13. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.
    **ANSWER:**

14. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.
    **ANSWER:**

15. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.
    **ANSWER:**

16. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.
    **ANSWER:**

17. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
**ANSWER:**

Respectfully submitted,

Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

## IN THE COURT OF COMMON PLEAS
### BUTLER COUNTY, OHIO
### CIVIL DIVISION

CINDY BARTLETT, AND HER
HUSBAND, THOMAS BARTLETT     :       Case No.
                           :       Judge
                           :
         Plaintiffs,          :       **PLAINTIFFS' FIRST DISCOVERY**
                                    **TO DR. DURRANI & CAST, INC.**
                           :       **SERVED WITH COMPLAINT**
                           :
                           :
**v.**                            :
ABUBAKAR ATIQ DURRANI, M.D., et al.       :
                           :
                           :
        Defendants.        :

---

Come now the Plaintiffs, by and through counsel, hereby request that Defendants respond to the following First Set of Requests for Admission, Interrogatories and Requests for Production to Defendants Defendants Durrani and C.A.S.T. in accordance with the Ohio Rules of Civil Procedure.

PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

### REQUESTS FOR ADMISSION

1. Admit that Defendant Durrani's privileges were suspended at West Chester Medical Center.
   **ANSWER:**

2. Admit that Defendant Durrani's privileges were terminated at Children's Hospital.
   **ANSWER:**

3. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Children's Hospital in lieu of having his privileges revoked.
   **ANSWER:**

4. Admit that Defendant Durrani received information from Children's Hospital indicating that if he did not voluntarily resign his privileges at Children's Hospital, then his privileges would be terminated.
   **ANSWER:**

5. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Children's Hospital.
   **ANSWER:**

6. Admit that Defendant Durrani's privileges were terminated at Christ Hospital.
   **ANSWER:**

7. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Christ Hospital in lieu of having his privileges revoked.
   **ANSWER:**

8. Admit that Defendant Durrani received information from Christ Hospital indicating that if he did not voluntarily resign his privileges at Christ Hospital, then his privileges would be terminated.
   **ANSWER:**

9. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Christ Hospital.
   **ANSWER:**

10. Admit that Defendant Durrani's privileges were terminated at Good Samaritan Hospital.
    **ANSWER:**

11. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Good Samaritan Hospital in lieu of having his privileges revoked.
    **ANSWER:**

12. Admit that Defendant Durrani received information from Good Samaritan Hospital indicating that if he did not voluntarily resign his privileges at Good Samaritan Hospital, then his privileges would be terminated.
    **ANSWER:**

13. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Good Samaritan Hospital.
**ANSWER:**

14. Admit that Cindy Bartlett was not properly informed of the use of BMP-2 in her surgeries. If you deny, produce the informed consent paperwork wherein you obtained informed consent from Cindy Bartlett to use BMP-2.
**ANSWER:**

## INTERROGATORIES

1. Identify all hospitals, hospital facilities, surgical facilities, surgery centers, outpatient care clinics and medical care clinics in which you have held privileges for the past twenty (20) years. For each facility or institution listed, please identify the name, address, location, dates during which you held privileges and reasons for your resignation, revocation or termination of privileges.
**ANSWER:**

2. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.
   A) West Chester Medical Center;
   B) Children's Hospital Cincinnati;
   C) Christ Hospital;
   D) Good Samaritan Hospital.

   **ANSWER:**

3. With respect to each explanation for each facility listed in Interrogatory 2, identify the person(s) with whom you interacted and/or received information concerning the change in privilege status, briefly explaining what you were told regarding your privilege(s), and furthermore, explain your response(s):

   A) West Chester Medical Center:
      a. Person(s):_____
      b. What you were told:_____
      c. Response:_____
   B) Children's Hospital Cincinnati:
      a. Person(s):_____
      b. What you were told:_____

       c.  Response: _____

C) Christ Hospital:

       a.  Person(s): _____

       b.  What you were told: _____

       c.  Response: _____

D) Good Samaritan Hospital:

       a.  Person(s) _____

       b.  What you were told: _____

       c.  Response: _____

**ANSWER:**

4. State whether you have ever been to required to make a report to the Ohio Board of Medical Licensure and/or the National Practitioner Databank, settlement of any written claims or lawsuits made against you. If the answer is "Yes," please state the date the report was made, to whom the report was made, and a description of the claim or suit.

**ANSWER:**

5. Identify all other hospitals and hospital facilities from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

6. Identify all surgical facilities, surgery centers, outpatient care facilities, clinics, and medical care facilities of any kind, from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

7. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against Defendants Durrani and/or CAST, and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

8. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against Defendant Durrani and/or CAST that have been brought to the attention of Dr. Durrani's and/or CAST's insurance company(ies), lawyers and/or

representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*
    **ANSWER:**

9. Identify the exact number of Defendant Durrani's patients that have had screws come loose from the original surgical implant location.

    **ANSWER:**

10. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

    **ANSWER:**

11. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani ever performed on Cindy Bartlett.

    **ANSWER**:

12. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

    **ANSWER:**

13. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:
    1. Details of each person's education, training, qualifications, and background in his or her field of expertise;
    2. The substance of the facts and opinions to which each such expert witness is expected to testify; and
    3. A summary of the grounds for each such opinion of each such expert witness.

    **ANSWER:**

14. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

   **ANSWER:**

15. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

   **ANSWER:**

16. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Cindy Bartlett in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

   **ANSWER:**

17. Please state whether you, your agents, attorneys, or employees have performed surveillance on Cindy Bartlett in which you have made an audio or video recording and/or a transcript or notes of Cindy Bartlett. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

   **ANSWER:**

18. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Cindy Bartlett was negligent, failed to mitigate her damages, and/or did not act with reasonable care in her own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

   **ANSWER:**

19. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

   **ANSWER:**

20. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the

coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

21. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Cindy Bartlett that were present with Defendant Durrani during each occasion he interacted with Cindy Bartlett.

**ANSWER:**

22. Identify each employee of you and CAST from March 1, 2009 - the present, by name, current address, telephone number, and provide the length of employment of each person identified by start date and termination of employment, and produce their complete employment and disciplinary files. For those persons identified who are no longer (or not currently) employed by you or CAST, state the reason(s) why the person is no longer an employee, whether the separation from employment was voluntary on the part of the employee, and produce their complete employment and disciplinary files.

**ANSWER:**

23. Identify each person(s) who provided medical care, medical treatment and/or medical related and/or support services of any kind whatsoever to Cindy Bartlett at your direction, while in your presence, and/or while at CAST, including but not limited to medical care, medical advice, medical warnings, nursing care, pre-operative care, pre-operative information exchange, obtaining informed consent, ancillary services, laboratory analysis, pathology analysis, radiology analysis, obtaining history and physical, triage, therapy, rehabilitative services, and obtaining and/or verifying insurance information, and briefly described the care or service provided.

**ANSWER:**

24. Please separately identify the total number of surgeries Defendant Durrani performed in 2008, 2009, 2010 and 2011.

**ANSWER:**

25. Please separately identify the total number of patients Defendant Durrani treated in 2008, 2009, 2010 and 2011.

**ANSWER:**

26. Explain the reason(s) Defendant Durrani told Cindy Bartlett her surgeries were "necessary."

**ANSWER:**

27. Does CAST have any policies or procedures for informing patients when it is suspected that an adverse event such as an infection has occurred during surgery? And if so, produce a copy of the policy.

**ANSWER**:

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce Dr. Durrani's tax returns for the years 2008 – present.
**ANSWER**:

2. Produce CAST's tax returns for the years 2008 – present time.
**ANSWER**:

3. Produce a copy of each insurance policy that may provide coverage related to this lawsuit
**ANSWER**:

4. Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Cindy Bartlett THAT ARE CURRENTLY IN THE POSSESSION OF CAST AND/OR DR. DURRANI.
**ANSWER**:

5. Please produce copies of all medical records of Cindy Bartlett that were in your possession as of her first surgery.
**ANSWER**:

6. Please produce the actual radiological films, x-rays or media (not just the reports) of Cindy Bartlett that are in your possession.
**ANSWER**:

7. Please produce all documents and information not otherwise included in Cindy Bartlett's "chart" or not heretofore requested or produced, which relate to the interaction of Cindy Bartlett and Abubakar Durrani, M.D. and/or CAST, including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Cindy Bartlett and Abubakar Durrani, M.D. and/or CAST was reviewed, analyzed and/or memorialized in any way.
**ANSWER**:

8. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.
**ANSWER**:

9. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Cindy Bartlett including but not limited to all prior versions and/or iterations.
**ANSWER**:

10. Please produce copies of all statements of any person related to Cindy Bartlett which you

have in your possession or control.
**ANSWER:**

11. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.
**ANSWER:**

12. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.
**ANSWER:**

13. Please produce copies of all correspondence between the Plaintiffs and the Defendant, or between any agent of the Defendant and the Plaintiffs.
**ANSWER:**

14. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.
**ANSWER:**

15. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.
**ANSWER:**

16. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Cindy Bartlett after her surgeries.
**ANSWER:**

17. Please produce all documents which form the basis of the relationship between Cindy Bartlett and the Defendants, or are otherwise related thereto.
**ANSWER:**

18. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to the procedure(s), technique(s), product(s), device(s), equipment, and materials of the same type utilized by Defendant Durrani on Cindy Bartlett.
**ANSWER:**

19. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to, or use information derived or compiled, in whole or in part from the procedure(s), technique(s), product(s), device(s), equipment, and materials utilized by Defendants on Cindy Bartlett.
**ANSWER:**

20. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.
**ANSWER:**

21. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.
**ANSWER:**

22. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.
**ANSWER:**

23. Produce all documents that relate to any suspension, revocation or termination of your privileges from:
a. West Chester Medical Center;
b. Children's Hospital Cincinnati;
c. Christ Hospital;
d. Good Samaritan Hospital
e. Any other hospital, surgery center and/or medical care facility identified by you in response to this discovery.

**ANSWER:**

24. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.
**ANSWER:**

25. Produce the video surveillance audio, video and images files in electronic format, or as otherwise stored by you, for all dates that Cindy Bartlett was present at all CAST locations.
**ANSWER:**

26. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
**ANSWER:**

Respectfully submitted,

_____
Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.

5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

Respectfully submitted,

/s/ Eric C. Deters
Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, Kentucky 41051
(859) 363-1900
eric@ericdeters.com

Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO
## CIVIL DIVISION

|                                          |     |       |     |
|------------------------------------------|-----|-------|-----|
| **CINDY BARTLETT, AND HER**              | :   |       |     |
| **HUSBAND, THOMAS BARTLETT**             | :   |       |     |
|                                          | :   | Judge |     |
|                                          | :   |       |     |
|                                          | :   |       |     |
| Plaintiffs,                              | :   |       | :   |
|                                          | :   |       |     |
| **v.**                                   | :   |       |     |
|                                          | :   |       |     |
| ABUBAKAR ATIQ DURRANI, M.D., et al       | :   |       |     |
|                                          |     |       |     |
| Defendants.                              |     |       |     |

---

### MOTION FOR EXTENSION OF TIME TO FILE AN AFFIDAVIT OF MERIT

Come now the Plaintiffs, by and through Counsel, and move this Court to grant an extension of time to file an affidavit of merit as required under Ohio Rule of Civil Procedure 10(D)(2). Dr. Durrani and CAST have failed to timely produce complete and accurate medical and billing records of similarly situated Plaintiffs, and Plaintiffs herein and their consultants require additional time to confirm the records and billing are complete, and for the Plaintiffs' medical expert to complete the review of the records. This process must be completed prior to the expert signing the affidavit of merit. This is being filed now to preserve all applicable statutes of limitation, and based on Counsel's experience in claims against Dr. Durrani, the nurse review and the preliminary document review with the expert indicate the claim is supported by Ohio law. Plaintiffs respectfully request a ninety (90) day extension to file their affidavit of merit.



**MARY L. SWAIN**                                              **CLERK OF COURTS**

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME GH & R Business Svcs
ADDRESS 511 Walnut Street
1800 Fifth Third Center
CITY Cincinnati      STATE OH   ZIP 4520

Today's Date: 2|28|13                     Case No.:
                                          Abubakar Atiq
Plaintiff: Bartlett, et al      -VS-   Defendant: Durrani, M.D., et

## PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ☐ Ordinary Mail                ☐ Personal Service by Butler County Sheriff
- ☑ Certified Mail               ☐ Foreign County Sheriff
- ☐ Appointed Process Server     ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

Complaint & Jury Demand
(with
First Set of Discovery

REQUESTING ATTORNEY:
NAME: Eric C. Deters (38050)
ADDRESS: 5247 Madison Pike
CITY Independence      STATE KY   ZIP 41051
PHONE: 859 363 1900

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

**MARY L. SWAIN**  **CLERK OF COURTS**

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME CT CORPORATION SYSTEM
ADDRESS 1300 East 9th Street, Suite 1010

CITY Cleveland    STATE OH   ZIP 44114

Today's Date: 2/28/13        Case No.: _____

Plaintiff: Bartlett, et al   -vs-   Defendant: Abubakar Atiq Durrani, M.D., et al

## PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ❏ Ordinary Mail
- ☑ Certified Mail
- ❏ Appointed Process Server
- ❏ Personal Service by Butler County Sheriff
- ❏ Foreign County Sheriff
- ❏ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

Complaint & Jury Demand
with
First Set of Discovery

REQUESTING ATTORNEY:
NAME: Eric C. Deters (38056)
ADDRESS: 5247 Madison Pike
CITY: Independence   STATE KY   ZIP 41051
PHONE: 859 363-1900

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

MARY L. SWAIN  CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME Abubakar Atiq Durrani M.D.
ADDRESS 4555 Lake Forest Dr.

CITY Cincinnati     STATE OH  ZIP 45242

Today's Date: 2/28/13          Case No.:

Plaintiff: Cindy Bartlett, et al     -VS-   Defendant: Abubakar Atiq Durrani, M.D, et al

## PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ❑ Ordinary Mail
- ☒ Certified Mail
- ❑ Appointed Process Server
- ❑ Personal Service by Butler County Sheriff
- ❑ Foreign County Sheriff
- ❑ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:
Complaint & Jury Demand
with
First Set of Discovery

REQUESTING ATTORNEY:
NAME: Eric C. Deters (38050)
ADDRESS: 5247 madison Pike
CITY: Independence   STATE KY   ZIP 41051
PHONE: 859 363-1400

P. 1

※ ※ ※ Communication Result Report ( Feb. 28. 2013 4:59PM ) ※ ※ ※

1)
2)

Date/Time: Feb. 28. 2013 4:30PM

| File<br>No. Mode | Destination | Pg(s) | Result | Page<br>Not Sent |
|---|---|---|---|---|
| 1143 Memory TX | 5138873966 | P. 45 | OK | |

Reason for error
 E. 1) Hang up or line fail        E. 2) Busy
 E. 3) No answer                   E. 4) No facsimile connection
 E. 5) Exceeded max. E-mail size

IN THE COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO
: CASE NO:

CINDY BARTLETT, AND HER
HUSBAND, THOMAS BARTLETT
Plaintiff, :
vs. :                                    DOCKET STATEMENT

ABUBAKAR ATIQ DURRANI, M.D., et al
Defendant :
: : : : : : :
Type of Claim
 ( x) Professional Tort
 ( ) Product Liability
 ( ) Other Torts
 ( ) Workers Compensation
 ( ) Foreclosure
 ( ) Administrative Appeal
 ( ) Other Civil
Do you know any reason this matter should not be set for report within one hundred
eighty (180) days of this date? Yes_____No__x____
If yes, what are the grounds?

2-29-13

Eric C. Deters (38050)
Attorney for Plaintiffs
ERIC C. DETERS & PARTNERS
5247 Madison Pike
Independence, KY 41051
Phone: 859.363.1900
Fax: 859.363.1444
Email: eric@ericdeters.com

**IN THE COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**
: CASE NO:

CINDY BARTLETT, AND HER
HUSBAND, THOMAS BARTLETT
Plaintiff, :

vs. :                                            **DOCKET STATEMENT**

ABUBAKAR ATIQ DURRANI, M.D., et al
Defendant :
: : : : : : :
Type of Claim
( x) Professional Tort
( ) Product Liability
( ) Other Torts
( ) Workers Compensation
( ) Foreclosure
( ) Administrative Appeal
( ) Other Civil
Do you know any reason this matter should not be set for report within one hundred
eighty (180) days of this date? Yes_____No__x_____
If yes, what are the grounds?

_____          _____

2-28-13

Eric C. Deters (38050)
Attorney for Plaintiffs
ERIC C. DETERS & PARTNERS
5247 Madison Pike
Independence, KY 41051
Phone: 859.363.1900
Fax: 859.363.1444
Email: eric@cricdeters.com

William Feltner Complaint



# TRACY WINKLER
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
February 19, 2013 01:34 PM
TRACY WINKLER
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 226118

**WILLIAM FELTNER**

**A 1301232**

**vs.**
**ABUBAKAR ATIQ DURRANI**

## FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND

## PAGES FILED: 36

EFR200

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
Case No.: _____

WILLIAM AND DONNA FELTNER, INDIVIDUALLY,
AND AS BEST FRIEND OF THEIR MINOR SON,
JACOB FELTNER
        Plaintiffs                                   Judge _____

v.

ABUBAKAR ATIQ DURRANI, M.D.
4555 Lake Forest Drive, Suite 150        :
Cincinnati, OH 45242                :
     (Serve via Certified Mail)

**COMPLAINT & JURY DEMAND**

and

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC. [CAST]
4555 Lake Forest Drive, Suite 150
Cincinnati, OH 45242

Serve: CT Corporation System
1300 East 9th St. Ste 1010
Cleveland, OH 44114
     (Serve via Certified Mail)
and

CINCINNATI CHILDREN'S HOSPITAL
MEDICAL CENTER
333 Burnette Ave.
Cincinnati, Ohio 45229

SERVE: Frank C Woodside, III
1900 Chemed Center
255 E. Fifth Street
Cincinnati, Ohio 45202
     (Serve via Certified Mail)

          Defendants.

Come now Plaintiffs, through Counsel, and for their Complaint and jury demand state as follows:

## JURISDICTION

1.  At all times relevant, Plaintiffs, William and Donna Feltner were residents of and domiciled in the State of Kentucky, as was their minor son, Jacob. Legal guardianship is being applied for.

2.  At all times relevant, Defendant Dr. Abubakar Atiq Durrani was licensed to and did in fact practice medicine in the State of Ohio.

3.  At all times relevant, Center for Advanced Spine Technologics, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio.

4.  At all times relevant, Cincinnati Children's Hospital Medical Center (hereinafter "Children's Hospital"), was a registered trade name for Children's Hospital Medical Center, a corporation authorized to transact business and perform medical services in the State of Ohio.

5.  Plaintiff attaches a Motion for Extension of time to obtain an Affidavit of Merit.

6.  The amount in controversy exceeds the jurisdictional threshold of this Court.

7.  The subject matter of the Complaint arises out of medical treatment by the Defendants in Hamilton County, Ohio. This Court is thus the proper venue to grant the Plaintiffs the relief they seek.

## BACKGROUND

8.  Plaintiff incorporates by reference each and every allegation contained within the above paragraphs further states:

9.  In 2001, when he was 7 years old, Jacob Feltner was diagnosed with spondylolysis – a fracture of the back part of the vertebra.

10. Jacob's pain from this condition had substantially increased in late 2005, and Jacob's primary care physician referred Jacob to Defendant Durrani.

11. An x-ray from September 2005 showed a stable Grade I spondylolysis at L5.

12. Surgery is not recommended unless the spondylolysis is Grade III or higher.

13.  Nevertheless, Defendant Durrani recommended and performed a lumbar fusion surgery at L5, placing transpedicular screws and rods in Jacob's back in January 2006.

14.  The surgery in January 2006 occurred at Defendant Children's Hospital.

15.  During the January 2006 surgery, Defendant Durrani experimentally used BMP/2 (bone morphogenetic protein), which is a bone grafting material on Jacob Feltner without informing the Plaintiffs and without the consent of the Plaintiffs.

16.  A CT Scan from August 2008 notes "there is fairly extensive bone grafting material in place."

17.  By October 2009, Jacob Feltner's back pain had returned.

18.  On October 29, 2009 Jacob's primary care physician referred Plaintiffs back to Defendant Durrani.

19.  An MRI from September 2011 indicated "particulate disease" surround the screws that Defendant Durrani had placed in Jacob's back.

20.  Plaintiffs were again referred to Defendant Durrani, who insisted the screws he placed were not the source of the Jacob's ongoing and worsening pain.

21.  On September 30, 2011, Plaintiffs sought and obtained a second opinion from Dr. Kakarlapudi who recommended the screws placed by Defendant Durrani be removed.

22.  On October 7, 2011, Plaintiffs sought and obtained a third opinion from Dr. Asghar who also recommended the screws placed by Defendant Durrani be removed.

23.  On November 29, 2011. Dr. Kakarlapudi removed the screws and related hardware that had been placed by Defendant Durrani. Plaintiff immediately experienced pain relief.

24.  Defendant Durrani performed follow up services and therapy for Plaintiff at Children's Hospital through the end of 2008.

25.  Defendant Durrani then began practice at Defendant CAST.

26.  Defendant Durrani is an employee, agent, servant, member or owner of Defendant CAST.

27.  Under information and belief, Defendant Durrani was asked to leave Defendant Children's Hospital.

28.  Under information and belief, Defendant Children's Hospital had received previous complaints about Defendant Durrani.

29.  Plaintiff continued his treatment with Defendant Durrani at Defendant CAST.

30. From the time of the January 2006 surgery until completing his treatment with Defendant Durrani, Jacob Feltner continued to complain of pain at a greater degree than before the surgery.

31. Plaintiff could no longer participate in normal daily life activities.

32. Defendant Durrani continued telling Plaintiffs that Jacob was healing well.

33. Defendant Durrani continued to note in his record that Jacob Feltner was doing well with reduced pain, despite the Plaintiffs indications to the contrary.

34. Plaintiff Jacob Feltner last treated with Defendant Durrani on or about September 13, 2011.

## COUNT I - NEGLIGENCE OF DOCTOR DURRANI

35. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further states:

36. Defendant Dr. Abubakar Atiq Durrani owed his patient, Plaintiff Jacob Feltner, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

37. Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgery and installation of hardware, improper follow up care addressing a patient's concerns and lax documentation, causing injuries and damages as alleged in this Complaint.

## COUNT II - NEGLIGENCE OF CAST

38. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further states:

39. Defendant CAST owed its patient, Plaintiff Jacob Feltner, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

40. Defendant CAST breached that duty by failing to exercise the requisite degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiff.

41. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant, Plaintiffs were caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III - VICARIOUS LIABILITY OF CAST

42. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further states:

43. At all times relevant, Defendant Dr. Durrani was a shareholder, director, officer, agent, and/or employee of CAST.

44. Defendant Dr. Durrani was performing within the scope of his employment when dealing with the Plaintiff regarding the care of Plaintiff.

45. Defendant CAST is responsible for harm caused by acts of its employees for conduct that was within the scope of employment under the theory of respondeat superior.

46. Defendant CAST is vicariously liable for the negligent acts of Defendant Dr. Durrani alleged in this Complaint.

47. As a direct and proximate result of Defendant CAST's actions, Plaintiff sustained harm.

## COUNT IV - NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION BY CINCINNATI CHILDREN'S HOSPITAL

48. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

49. Defendant Cincinnati Children's Hospital was responsible for the conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

50. Defendant Cincinnati Children's Hospital was in a unique position to hire, retain, credential, supervise and control the actions of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiff to exercise said oversight and control.

51. Defendant Cincinnati Children's Hospital breached this duty to Plaintiff by not reasonably overseeing and/or controlling the actions of the residents, doctors, nurses, and those with privileges, during the medical treatment of Plaintiff Jacob Feltner.

52. As a direct and proximate result of the failure to properly supervise and oversee medical treatment by the residents, doctors, nurses, and those with privileges by Cincinnati Children's Hospital, Plaintiff has suffered severe and grievous injuries.

## COUNT V – BATTERY BY DEFENDANT DURRANI

53.    Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

54.    Defendant Durrani committed battery against the Plaintiff Jacob Feltner by performing a surgery that was unnecessary, by using BMP-2 off label without informed consent, by performing a surgery which was not indicated by Plaintiff's medical condition, and for which he did not properly obtain informed consent, by the failure to provide this information to Plaintiff.

55.    Plaintiff would not have undergone the surgery if he knew that the surgery was unnecessary, not indicated, and if Plaintiffs had been properly informed about the "off label" use and risks associated with BMP.

56.    As a direct and proximate result of the aforementioned battery by Defendant, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VI – FRAUD BY DEFENDANT DURRANI & CHILDRENS HOSPITAL

57.    Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

58.    Defendants made material, false representations for the purpose of, and did in fact, mislead Plaintiffs in the course of his care and treatment of Jacob Feltner, as explained in this Complaint. Such false representations include, but are not limited to, use of BMP-2, falsification of medical records and medical billing, and furthermore, that Plaintiff, Jacob Feltner required surgery, that placement of facet screws was an appropriate procedure to treat Plaintiff, and/or that placement of facet screws would improve Plaintiff's pain.

59.    Defendants knew that such representations were false, and/or Defendants made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred;

60.    Defendant Durrani made the misrepresentations concerning surgery with the intent of misleading Plaintiffs into relying upon them;

61.    Plaintiffs justifiably relied upon the material misrepresentations of Defendant Durrani when making the decision to undergo surgery performed on January 2006;

62.    As a direct and proximate result of the aforementioned, Plaintiff did undergo the January 2006 surgery and sustained severe and grievous injuries, prolonged pain and suffering,

emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

63. Following the surgery, Defendants hid the fact that BMP-2 was used on Jacob Feltner. Plaintiffs never consented to the off label, unapproved use of BMP-2, and when Plaintiff requested medical and billing records from Children's Hospital, they would not produced itemized billing, and would not explain and/or substantiate several substantial medical billing items, which upon information and belief, relate to the billing of BMP-2. .

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

64. Defendants intended to, and in fact, caused emotional distress to the Plaintiffs.

66. Defendants' conduct, alone or in combination, was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

67. Defendants' conduct was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress;

68. The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT III - VICARIOUS LIABILITY OF CHILDREN'S HOSPITAL

69. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further states:

70. At all times relevant, Defendant Dr. Durrani was an agent, employee, and/or performed services at the direction of, and/or for the benefit of Children's Hospital.

71. Defendant Dr. Durrani was performing within the scope of his employment when dealing with the Plaintiff regarding the care of Plaintiff.

72. Defendant Children's Hospital is responsible for harm caused by acts of its agents and employees for conduct that was within the scope of employment under the theory of respondeat superior.

73. Defendant Children's Hospital is vicariously liable for the acts and omissions of Defendant Dr. Durrani alleged in this Complaint.

74.     As a direct and proximate result of the conduct of Defendant Children's Hospital, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment. harm.

## COUNT VIII – PARENTAL LOSS OF CONSORTIUM & MEDICAL EXPENSES

75.     Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

76.     Plaintiffs William and Donna Feltner, parents, bring a separate cause of action for the loss of consortium, companionship, love, and affection of their son, Jacob Feltner, which loss was directly and proximately caused by the negligent acts, omissions, recklessness, and intentional conduct of the Defendants as outlined in this Complaint.

77.     As a direct and proximate result of the conduct of the Defendants as outlined in this Complaint, Plaintiffs William and Donna Feltner, parents of Jacob Feltner, have incurred, and will continue to incur medical expenses and miscellaneous expenses, costs, charges, lost work time, inconveniences, lost benefits, and lost work opportunities.

## PRAYER FOR RELIEF
WHEREFORE, Plaintiffs demand judgment against Defendants on all claims.

Plaintiffs further request:

1.     Costs associated with the disbursement of this action;

2.     Interest;

3.     Punitive damages, not to exceed $50,000,000.00 (fifty million dollars);

4.     Reasonable attorneys' fees;

5.     All compensatory damages, not to exceed $5,000,000.00 (five million dollars)

6.     Trial by jury; and

7.     All other relief this court deems fitting and proper.

Respectfully submitted:

Eric C. Deters, Esq.
Deters & Partners, PSC

5247 Madison Ave.
Independence, KY 41051
Phone: 859-363-1900
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiffs respectfully request a trial by jury.

Eric C. Deters, Esq.

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**Case No.:** _____

WILLIAM AND DONNA FELTNER, INDIVIDUALLY,
AND ON BEHALF OF JACOB FELTNER
                    Plaintiffs                                    Judge _____

v.

ABUBAKAR ATIQ DURRANI, M.D., et al:
            Defendants.

_____

## MOTION FOR EXTENSION OF TIME TO FILE AN AFFIDAVIT OF MERIT

Come now the Plaintiffs, by and through Counsel, and move this Court to grant an

extension of time to file an affidavit of merit as required under Ohio Rule of Civil Procedure

10(D)(2). The named Defendants have failed to timely produce complete and accurate medical

and billing records of the Plaintiff Jacob Feltner, and Plaintiffs and their consultants require

additional time to confirm the records and billing are complete, and for the Plaintiff's medical

expert to complete the review of the records. This process must be completed prior to the expert

signing the affidavit of merit. This is being filed now because based on Counsel's experience in

claims against Dr. Durrani, the nurse review and the preliminary document review with the

expert indicate the claim is supported by Ohio law. Plaintiffs respectfully request a ninety (90)

day extension to file their affidavit of merit.

                                        Respectfully submitted,
                                        /s/ Eric C. Deters
                                        Eric C. Deters (38050)
                                        Eric C. Deters & Partners, P.S.C.
                                        5247 Madison Pike
                                        Independence, Kentucky 41051
                                        (859) 363-1900

eric@ericdeters.com

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
Case No.: _____

WILLIAM AND DONNA FELTNER, INDIVIDUALLY,
AND AS BEST FRIEND OF THEIR MINOR SON,
JACOB FELTNER
        Plaintiffs

v.

ABUBAKAR ATIQ DURRANI, M.D. et al

        Defendants.

Judge _____

**PLAINTIFFS' FIRST
DISCOVERY TO CHILDREN'S
HOSPITAL SERVED WITH
COMPLAINT**

Come now the Plaintiffs, William, Donna and Jacob Feltner, by and through counsel, hereby request that Defendants respond to the following First Set of Requests for Admission, Interrogatories and Requests for Production to Children's Hospital in accordance with the Ohio Rules of Civil Procedure. PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

## REQUESTS FOR ADMISSION

1. Admit that Defendant Durrani's privileges were suspended from Children's Hospital Cincinnati
   **ANSWER:**

2. Admit that Defendant Durrani's privileges were terminated from Children's Hospital Cincinnati.
   **ANSWER:**

3. Admit that Defendant Durrani was given the option to voluntarily resign his privileges or have his privileges terminated at Children's Hospital Cincinnati.
   **ANSWER:**

4. Admit that Defendant Durrani was brought before the Medical Executive Committee at

Children's Hospital Cincinnati.
ANSWER:

5.  Admit that subsequent to granting Defendant Durrani privileges at Children's Hospital
    Cincinnati, you knew that Defendant Durrani had his privileges terminated at Christ
    Hospital.
    ANSWER:

6.  Admit that subsequent to granting Defendant Durrani privileges at Children's Hospital
    Cincinnati, you knew that Defendant Durrani had his privileges terminated at Good
    Samaritan Hospital.
    ANSWER:

7.  Admit that Defendant Durrani performed surgery at Children's Hospital on Jacob Feltner
    in January 2006 in which Dr. Durrani used BMP-2.
    ANSWER:

8.  Admit that on or before the January 2006 surgery by Dr. Durrani on Jacob Feltner, you
    did not inform William or Donna Feltner that Dr. Durrani intended to use BMP-2.

9.  Admit that on or before the January 2006 surgery by Dr. Durrani on Jacob Feltner, you
    did not inform William or Donna Feltner that Dr. Durrani had been brought before the
    Medical Executive Committee at Children's Hospital Cincinnati.
    ANSWER:

10. Admit that the surgery performed by Dr. Durrani on Jacob Feltner in January 2006 was
    not medically necessary.
    ANSWER:

11. Admit that you have made reports to the Ohio Board of Medical Licensure regarding
    claims for medical negligence relating to care or treatment provided by Defendant
    Durrani to patients at your facility.
    ANSWER:

12. Admit that you have made reports to the National Practitioner Databank regarding claims
    for medical negligence relating to care or treatment provided by Defendant Durrani to
    patients at your facility.
    ANSWER:

13. Admit that you have made reports to the National Practitioner Databank relating to

Defendant Durrani.
**ANSWER:**

14. Admit that you did not obtain a report from the National Practitioner Databank prior to granting Defendant Durrani privileges to practice at Children's Hospital Cincinnati.
**ANSWER:**

**15.** Admit that you will not in the future grant hospital inpatient admission privileges to Defendant Durrani.
**ANSWER:**

16. Admit that you will not in the future grant hospital outpatient privileges to Defendant Durrani.
**ANSWER:**

17. Admit that you will not in the future grant hospital surgery privileges to Defendant Durrani.
**ANSWER:**

18. Admit that Defendant Durrani is not permitted to treat patients on the property of Children's Hospital Cincinnati.
**ANSWER:**


## INTERROGATORIES

1. Identify the date, and explain the reason(s), that Defendant Durrani's privileges ended at Children's Hospital Cincinnati.
**ANSWER:**

2. Identify the person(s) who interacted with Defendant Durrani concerning the ending of his privileges from Children's Hospital Cincinnati, specifically explaining what Defendant Durrani was told regarding the privilege(s), and furthermore, explain Defendant Durrani's response(s).
**ANSWER:**

3. Identify the process, including all terms and conditions of reinstatement, by which Defendant Durrani had his privileges reinstated at Children's Hospital Cincinnati.
**ANSWER:**

4. Identify what information was gathered by CCHMC with respect to the selection of Dr. Abubakar Atiq Durrani prior to granting him privileges at the hospital.
**ANSWER:**

5. Identify what information was gathered by CCHMC with respect to the retention of Dr. Abubakar Atiq Durrani after CCHMC granted him privileges at the hospital.

   **ANSWER:**

6. Identify the materials and information upon which CCHMC based its decision to hire Dr. Abubakar Atiq Durrani.

   **ANSWER:**

7. Identify the materials and information upon which CCHMC based its decision to retain Dr. Abubakar Atiq Durrani as a physician at CCHMC.

   **ANSWER:**

8. Identify all actions you took regarding Dr. Abubakar Atiq Durrani in furtherance of, or related to your duty to grant and continue such privileges only to competent physicians.

   **ANSWER:**

9. Identify the date, the source, and the author, and provide a brief description of every document contained in the credentialing file of Dr. Abubakar Atiq Durrani so that Plaintiff may make a meaningful determination whether ORC 2305.252 applies to each document.

   **ANSWER:**

10. Identify and produce all documents that can be obtained from their original sources, but which are otherwise contained in the credentialing file of Dr. Abubakar Atiq Durrani.

    **ANSWER:**

11. With respect to Dr. Abubakar Atiq Durrani:
    a. Produce his application for appointment and privileges at CCHMC
    b. Identify and produce all information gathered by CCHMC to confirm the information contained in the application for privileges;
    c. Identify and produce all information gathered by CCHMC during the course of Dr. Durrani's appointment relating to quality of care and professional ethics; and
    d. Identify all Board or Management decisions with respect to appointments and privileges.

    **ANSWER:**

12. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought jointly against Children's Hospital Cincinnati realted to acts and omissions of Dr. Durrani, and further provide a brief summary of the claims and allegations so that Plaintiffs can make a determination of whether the other lawsuits

are substantially similar to the present lawsuit.
ANSWER:

13. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS,
    including but not limited to receipt of "180 day letters" that have been received related to
    Dr. Durrani, and further provide a brief summary of the demands and claims made so that
    Plaintiffs can make a determination of whether the claims are substantially similar to the
    present lawsuit.

*To the extent this request may require the disclosure of private information such as former or
current patient names, you can submit the information for an in camera review and/or
contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that
counsel can meet and confer about the terms and conditions of a protective order to ensure
patient privacy. However completely avoiding answering this question with a claim of or
objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to
meet and confer will result in a Motion pursuant to CR 37.*

ANSWER:

14. Identify the exact number of surgeries Defendant Durrani performed at your facility, and
    provide the date of each surgery and name or description of each surgery.
ANSWER:

15. Identify all surgical procedures – *by name and CPT billing code* – that were performed
    on Jacob Feltner at your facility.
ANSWER:

16. Identify the current address and phone number of all employees who provided care,
    treatment, and medical services to Jacob Feltner during his inpatient admission at your
    facility in January 2006.
ANSWER

17. What is the current name, address, social security number and date of birth of the
    person(s) answering this Discovery, and, if applicable, any other or prior names (maiden,
    married, etc.) used by or by which the answerer has been known.
ANSWER:

18. Please identify fully (give name, address, phone number) all experts whom you intend to
    call as a witness to testify at the trial of this matter, and with respect to each expert
    witness stated, provide:
    a. Details of each person's education, training, qualifications, and background in his
       or her field of expertise;
    b. The substance of the facts and opinions to which each such expert witness is
       expected to testify; and

    c. A summary of the grounds for each such opinion of each such expert witness.
**ANSWER:**

19. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts known or opinions held by the expert relative to this action, and if so, produce a copy of the report.
**ANSWER:**

20. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.
**ANSWER:**

21. Please state whether you, your agents, attorneys, etc. have had any conversations or meetings with Plaintiffs in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.
**ANSWER:**

22. Please state whether you, your agents, attorneys, or employees have performed surveillance on Plaintiffs in which you have made an audio or video recording and/or a transcript or notes of Plaintiffs. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.
**ANSWER:**

23. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing that Plaintiffs were was negligent, failed to mitigate damages, and/or did not act with reasonable care regarding his own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).
**ANSWER:**

24. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself related to this lawsuit, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.
**ANSWER:**

25. Please identify, list and produce a copy of all policies of insurance that may provide

coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

26. Identify the current address, title/position and telephone number of persons identified in your medical records of Jacob Feltner that were present with Defendant Durrani during each occasion he interacted with Plaintiffs.

**ANSWER:**

27. Please separately identify the total number of surgeries Defendant Durrani performed at your facility in 2006, 2007, 2008, 2009, 2010, 2011 and 2012.

**ANSWER:**

28. Please separately identify the total number of patients Defendant Durrani admitted as an inpatient at your facility in 2006, 2007, 2008, 2009, 2010, 2011 and 2012.

**ANSWER:**

29. Please separately identify the total number of patients Defendant Durrani admitted as an outpatient at your facility in 2006, 2007, 2008, 2009, 2010, 2011 and 2012.

**ANSWER:**

30. Please separately identify the total number of surgeries that Defendant Durrani performed at your facility in which a Medtronic sales or other Medtronic representative was present during all or part of the surgery at your facility in 2006, 2007, 2008, 2009, 2010, 2011 and 2012.

**ANSWER:**

31. Identify the investigation, background check and all information upon which you used to formulate the decision to permit Defendant Durrani inpatient admission and/or surgery privileges at your facility.

**ANSWER:**

32. Identify all persons with whom you consulted prior to permitting Defendant Durrani inpatient admission and/or surgery privileges at your facility; furthermore, briefly summarize the content and explain the information you received from the persons identified.

**ANSWER:**

33. Describe the investigation you performed to determine Defendant Durrani's fitness to practice medicine prior to permitting him privileges at your facility.

**ANSWER:**

34. Identify all instances where Defendant Durrani did not follow proper medical

documentation protocol, policies and/or procedures at your facility.

*Please Note: To the extent this request may require the disclosure of private information such as former or current patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

**ANSWER:**

35. Identify the process in place for receiving, investigating and responding to complaints (formal and informal) from patients related to patient care, including but not limited to:

    a. The manner in which complaints are received
    b. Whether patients are advised f a formal complaint process
    c. The name and professional title of any person responsible for receiving, investigating and responding to any complaint
    d. Whether there is a written record of any complaint

**ANSWER:**

36. Identify any hospital policy, procedure or process regarding responding to a sentinel event that occurs within Children's Hospital Cincinnati.

**ANSWER:**

37. Identify any sentinel event report(s) and or investigation(s) related to Jacob Feltner. For any sentinel event, please state

    a. The nature of the sentinel event;
    b. Whether there was a root cause analysis and/or investigation performed as a result of the sentinel event;
    c. The name of any person involved in the investigation of the sentinel event, including that person's professional title and whether that individual was involved as a witness or investigator;
    d. Whether a written report and/or documentation was made related to the sentinel event and whether such documentation and/or report still exists; and
    c. Whether the sentinel event was reviewed by any committee, whether internal or external and the name of such committee.

**ANSWER:**

38. Identify by name, position, last known address and dates of service, those persons who

have served on Children's Hospital Cincinnati's Medical Executive Committee for the years 2006 – present.

**ANSWER:**

## REQUESTS FOR IDENTITY AND PRODUCTION OF DOCUMENTS

1. Produce a copy of each insurance policy that may provide coverage related to this lawsuit.

   **ANSWER:**

2. Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Jacob Feltner that are currently in your possession, custody or control.

   **ANSWER:**

3. Please produce a complete, authenticated, certified, bates stamped copy of all actual radiological films, x-rays or media of Jacob Feltner (not just the reports).

   **ANSWER:**

4. Please produce all documents and information not otherwise included in Jacob Feltner's "chart" or not heretofore requested or produced, which relate to the interaction of Jacob Feltner or his family and Abubakar Durrani, M.D., including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Plaintiffs in this lawsuit and Abubakar Durrani, M.D. was reviewed, analyzed and/or memorialized in any way.

   **ANSWER:**

5. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.

   **ANSWER:**

6. Please produce a certified, authenticated, bates stamped complete set of billing records of Jacob Feltner including but not limited to all prior versions and/or iterations related to his inpatient treatment at your facility.

   **ANSWER:**

7. Please produce copies of all statements of any person related to Jacob Feltner which you have in your possession or control.

   **ANSWER:**

8. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.

   **ANSWER:**

9. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.

   **ANSWER:**

10. Please produce copies of all correspondence between the Plaintiffs and the Defendants, or between any agent of the Defendants and the Plaintiffs.

    **ANSWER:**

11. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.

    **ANSWER:**

12. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.

    **ANSWER:**

13. Please produce all documents which form the basis of the relationship between Jacob Feltner and the Defendants, or are otherwise related thereto.

    **ANSWER:**

14. Produce any and all policy and procedure manuals related to medical staff, physician credentialing, granting, revoking or denying medical privileges.

    **ANSWER:**

15. Produce any and all policy and procedure manuals related to nursing and/or physician documentation or charting.

    **ANSWER:**

16. Produce any and all policy and procedure manuals related to billing for services rendered, whether those services were performed by hospital personnel, physicians or contractors.

**ANSWER:**

17. Produce copies of any and all documentation, notes or other material created or compiled as a result of the identification and/or investigation of a sentinel event concerning Dr. Durrani.

**ANSWER:**

18. Produce a copy of any and all personnel or staff files related to Defendant Durrani, including but not limited to his application for medical staff privileges, criminal background checks, general and professional background checks, all complaints you have received related to Defendant Durrani (patient names may be redacted) and any disciplinary actions taken against Defendant Durrani.

**ANSWER:**

19. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
**ANSWER:**

Respectfully submitted,

Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

SERVED WITH COMPLAINT.

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
Case No.: _____

WILLIAM AND DONNA FELTNER, INDIVIDUALLY,
AND AS BEST FRIEND OF THEIR MINOR SON,
JACOB FELTNER
        Plaintiffs

v.

ABUBAKAR ATIQ DURRANI, M.D. et al

        Defendants.

Judge _____

**PLAINTIFFS' FIRST
DISCOVERY TO DR. DURRANI
AND CAST SERVED WITH
COMPLAINT**

Come now the Plaintiffs, William, Donna and Jacob Feltner, by and through counsel, hereby request that Defendants respond to the following First Set of Requests for Admission, Interrogatories and Requests for Production to Defendants Durrani and C.A.S.T. in accordance with the Ohio Rules of Civil Procedure. PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

### REQUESTS FOR ADMISSION

1. Admit that Defendant Durrani's privileges were suspended at West Chester Medical Center.

   **ANSWER:**


2. Admit that Defendant Durrani's privileges were terminated at Children's Hospital.

   **ANSWER:**

3. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Children's Hospital in lieu of having his privileges revoked.

   **ANSWER:**

4. Admit that Defendant Durrani received information from Children's Hospital indicating that if he did not voluntarily resign his privileges at Children's Hospital, then his privileges would be terminated.

   **ANSWER:**

5. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Children's Hospital.

   **ANSWER:**

6. Admit that Defendant Durrani's privileges were terminated at Christ Hospital.

   **ANSWER:**

7. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Christ Hospital in lieu of having his privileges revoked.

   **ANSWER:**

8. Admit that Defendant Durrani received information from Christ Hospital indicating that if he did not voluntarily resign his privileges at Christ Hospital, then his privileges would be terminated.

**ANSWER:**

9. Admit that Defendant Durrani was required to defend his privileges before the Medical
   Executive Committee of Christ Hospital.

   **ANSWER:**

10. Admit that Defendant Durrani's privileges were terminated at Good Samaritan Hospital.

    **ANSWER:**

11. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges
    at Good Samaritan Hospital in lieu of having his privileges revoked.

    **ANSWER:**

12. Admit that Defendant Durrani received information from Good Samaritan Hospital
    indicating that if he did not voluntarily resign his privileges at Good Samaritan Hospital,
    then his privileges would be terminated.

    **ANSWER:**

13. Admit that Defendant Durrani was required to defend his privileges before the Medical
    Executive Committee of Good Samaritan Hospital.

    **ANSWER:**

14. Admit that an x-ray of Jacob Felnter dated September 2005 showed a stable Grade I
    spondylolysis at L5.

**ANSWER:**

15. Admit that surgery is not necessary unless the spondylolysis is diagnosed as Grade III or higher.

    **ANSWER:**

16. Admit that in January 2006, Dr. Durrani recommended and performed a lumbar fusion surgery at L5, placing transpedicular screws and rods in Jacob Feltner's spine.

    **ANSWER:**

17. Admit Jacob Feltner's surgery by Dr. Durrani in January 2006 occurred at Children's Hospital.

    **ANSWER:**

18. Admit that during the January 2006 surgery, Dr. Durrani used BMP-2 (bone morphogenetic protein).

    **ANSWER:**

19. Admit that prior to the January 2006 surgery, Dr. Durrani did not inform Jacob Feltner's parents William and Donna Feltner, of the risks associated with BMP-2.

    **ANSWER:**

20. Admit that prior to the January 2006 surgery, Dr. Durrani did not inform Jacob Feltner's parents William and Donna Feltner, that he intended to use BMP-2.

    **ANSWER:**

21. Admit that after the January 2006 surgery, Dr. Durrani did not inform Jacob Feltner's parents William and Donna Feltner, that he had used BMP-2.

    **ANSWER:**

## INTERROGATORIES

1. Identify the cumulative number of minor children under the age of eighteen (18) upon which Dr. Durrani has used BMP-2 during a surgical procedure.
   **ANSWER:**

2. Identify all hospitals, hospital facilities, surgical facilities, surgery centers, outpatient care clinics and medical care clinics in which you have held privileges for the past twenty (20) years. For each facility or institution listed, please identify the name, address, location, dates during which you held privileges and reasons for your resignation, revocation or termination of privileges.
   **ANSWER:**

3. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.

   A) West Chester Medical Center;
   B) Children's Hospital Cincinnati;
   C) Christ Hospital;
   D) Good Samaritan Hospital.

   **ANSWER:**

4. With respect to each explanation for each facility listed in Interrogatory 3, identify the person(s) with whom you interacted and/or received information concerning the change in privilege status, briefly explaining what you were told regarding your privilege(s), and furthermore, explain your response(s):

   A) West Chester Medical Center:
       a. Person(s):_____
       b. What you were told:_____
       c. Response:_____
   B) Children's Hospital Cincinnati:
       a. Person(s):_____
       b. What you were told: _____
       c. Response: \_ _____
   C) Christ Hospital:
       a. Person(s):_____
       b. What you were told:_____

    c. Response:_____ \_\_\_

D) Good Samaritan Hospital:

    a. Person(s)_____ .

    b. What you were told:_____

    c. Response:_____ . .

**ANSWER:**

5. State whether you have ever been to required to make a report to the Ohio Board of Medical Licensure and/or the National Practitioner Databank, settlement of any written claims or lawsuits made against you. If the answer is "Yes," please state the date the report was made, to whom the report was made, and a description of the claim or suit.

    **ANSWER:**

6. Identify all other hospitals and hospital facilities from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

    **ANSWER:**

7. Identify all surgical facilities, surgery centers, outpatient care facilities, clinics, and medical care facilities of any kind, from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

    **ANSWER:**

8. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against Defendants Durrani and/or CAST, and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

    **ANSWER:**

9. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against Defendant Durrani and/or CAST that have been brought to the attention of Dr. Durrani's and/or CAST's insurance company(ies), lawyers and/or

representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

> **ANSWER:**

10. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

> **ANSWER:**

11. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani ever performed on Jacob Feltner.

> **ANSWER:**

12. Identify all persons who were employed by Defendant Durrani and CAST in January 2006 by name, position, current address, telephone number and whether each individual is still employed by Defendant Durrani and/or CAST.

> **ANSWER**

13. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

> **ANSWER:**

14. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:
>   1. Details of each person's education, training, qualifications, and background in his or her field of expertise;
>   2. The substance of the facts and opinions to which each such expert witness is expected to testify; and

     3. A summary of the grounds for each such opinion of each such expert witness.

**ANSWER:**

15. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

16. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

17. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Jacob Feltner in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

18. Please state whether you, your agents, attorneys, or employees have performed surveillance on Jacob Feltner in which you have made an audio or video recording and/or a transcript or notes of Jacob Feltner. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

19. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Jacob Feltner, and/or his parents William and Donna Feltner, were or was negligent, failed to mitigate Jabob's damages, and/or did not act with reasonable care in relation to the care and treatment of Jacob Feltner, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

20. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number

each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

21. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

22. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Jacob Feltner that were present with Defendant Durrani during each occasion he interacted with Jacob Feltner, and/or William and Donna Feltner.

**ANSWER:**

23. Identify each employee of you and CAST from March 1, 2009 - the present, by name, current address, telephone number, and provide the length of employment of each person identified by start date and termination of employment, and produce their complete employment and disciplinary files. For those persons identified who are no longer (or not currently) employed by you or CAST, state the reason(s) why the person is no longer an employee, whether the separation from employment was voluntary on the part of the employee, and produce their complete employment and disciplinary files.

**ANSWER:**

24. Identify each person(s) who provided medical care, medical treatment and/or medical related and/or support services of any kind whatsoever to Jacob Feltner at your direction, while in your presence, and/or while at CAST, including but not limited to medical care, medical advice, medical warnings, nursing care, pre-operative care, pre-operative information exchange, obtaining informed consent, ancillary services, laboratory analysis, pathology analysis, radiology analysis, obtaining history and physical, triage, therapy, rehabilitative services, and obtaining and/or verifying insurance information, and briefly described the care or service provided.

**ANSWER:**

25. Please separately identify the total number of surgeries Defendant Durrani performed in 2008, 2009, 2010 and 2011.

**ANSWER:**

26. Please separately identify the total number of patients Defendant Durrani treated in 2005, 2006, and 2008.

    **ANSWER:**

27. Explain the reason(s) Defendant Durrani told William and Donna Feltner that the January 2006 surgery on Jacob Feltner was "necessary."

    **ANSWER:**

28. Why didn't Defendant Durrani inform William and Donna Feltner that the January 2006 surgery was unsuccessful?

    **ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce Dr. Durrani's tax returns for the years 2008 – present.
**ANSWER:**

2. Produce CAST's tax returns for the years 2008 – present time.
**ANSWER:**

3. Produce a copy of each insurance policy that may provide coverage related to this lawsuit
**ANSWER:**

4. Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Jacob Feltner THAT ARE CURRENTLY IN THE POSSESSION OF CAST AND/OR DR. DURRANI.

    **ANSWER:**

5. Please produce copies of all medical records of Jacob Feltner that were in your possession as of January 31, 2006.

    **ANSWER:**

6. Please produce the actual radiological films, x-rays or media (not just the reports) of Jacob Feltner that were in your possession as of January 31, 2006.

   **ANSWER:**

7. Please produce all documents and information not otherwise included in Jacob Feltner's "chart" or not heretofore requested or produced, which relate to the interaction of Jacob Feltner and Abubakar Durrani, M.D. and/or CAST, including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Jacob Feltner and Abubakar Durrani, M.D. and/or CAST was reviewed, analyzed and/or memorialized in any way.

   **ANSWER:**

8. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.

   **ANSWER:**

9. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Jacob Feltner including but not limited to all prior versions and/or iterations related to his surgery of January 2006.

   **ANSWER:**

10. Please produce copies of all statements of any person related to Jacob Feltner which you have in your possession or control.

    **ANSWER:**

11. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.

**ANSWER:**

12. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.

    **ANSWER:**

13. Please produce copies of all correspondence between the Plaintiffs and the Defendants, or between any agent of the Defendants and the Plaintiffs.

    **ANSWER:**

14. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.

    **ANSWER:**

15. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.

    **ANSWER:**

16. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Jacob Feltner after his surgery in January 2006.

    **ANSWER:**

17. Please produce all documents which form the basis of the relationship between Jacob Feltner and the Defendants, or are otherwise related thereto.

    **ANSWER:**

18. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to the procedure(s), technique(s), product(s), device(s), equipment, and materials of the same type utilized by Defendant Durrani on Jacob Feltner.

**ANSWER:**

19. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to, or use information derived or compiled, in whole or in part from the procedure(s), technique(s), product(s), device(s), equipment, and materials utilized by Defendants on Jacob Feltner.

**ANSWER:**

20. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.

**ANSWER:**

21. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.

**ANSWER:**

22. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.

**ANSWER:**

23. Produce all documents that relate to any suspension, revocation or termination of your privileges from:

   a. West Chester Medical Center;

b. Children's Hospital Cincinnati;

c. Christ Hospital;

d. Good Samaritan Hospital

e. Any other hospital, surgery center and/or medical care facility identified by you in response to this discovery.

**ANSWER:**

24.  Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.

**ANSWER:**

25.  Produce the video surveillance audio, video and images files in electronic format, or as otherwise stored by you, for all dates that Jacob Feltner was present at all CAST locations.

**ANSWER:**

26.  Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.

**ANSWER:**

Respectfully submitted,

Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

SERVED WITH COMPLAINT.

Christine Geralds Complaint

Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| **CHRISTINE GERALDS** | : | |
| 1890 MISTY HILL DRIVE | : | Case No. |
| CINCINNATI, OHIO | : | |
| | : | Judge |
| | : | |
| | : | |
| Plaintiff, | : | **COMPLAINT & JURY DEMAND** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ABUBAKAR ATIQ DURRANI, M.D.,** | : | |
| 4555 LAKE FOREST DR., Suite 150 | : | |
| CINCINNATI, OH 45242 | : | |
| (Serve via Certified Mail) | : | |
| | : | |
| And | : | |
| | : | |
| **CENTER FOR ADVANCED SPINE** | : | |
| **TECHNOLOGIES, INC.** | : | |
| 4555 Lake Forest Drive, Suite 150 | : | |
| Cincinnati, Ohio 45242 | : | |
| | : | |
| SERVE: CT CORPORATION SYSTEM | : | |
| 1300 EAST 9TH STREET, SUITE 1010 | : | |
| CLEVELAND, OHIO 44114 | : | |
| (Serve via Certified Mail) | : | |
| And | : | |
| | : | |
| **WEST CHESTER HOSPITAL, LLC** | : | |
| 7700 UNIVERSITY DRIVE | : | |
| WEST CHESTER, OH 45069 | : | |
| | : | |
| SERVE: GH&R BUSINESS SVCS., INC. | : | |
| 511 WALNUT STREET | : | |
| 1900 FIFTH THIRD CENTER | : | |
| CINCINNATI,OH 45202 | : | |
| | : | |
| And | : | |
| | : | |

1

**UC HEALTH**                                      :
7700 UNIVERSITY DRIVE                              :
WEST CHESTER, OH 45069

SERVE:  CT CORPORATION SYSTEM     :
1300 EAST 9TH ST. STE 1010                         :
CLEVELAND, OH 44114                                :
(SERVE VIA CERTIFIED MAIL)

                                      :
             Defendants.                       :

Now comes Plaintiff, Christine Geralds, and for her Complaint with Jury Demand against the Defendants, states as follows:

## PARTIES, JURISDICTION AND VENUE

1. The incidents giving rise to this action and the subject matter of the Complaint arise out of medical treatment, acts and omissions, and conduct that occurred in Butler County, Ohio, Hamilton County, Ohio, and Kenton County, Kentucky.

2. At all times relevant, Plaintiff Christine Geralds ("Plaintiff") was an individual resident and citizen of Hamilton County, Ohio.

3. At all times relevant, Defendant Abubakar Atiq Durrani, M. D. ("Dr. Durrani") was licensed to and did in fact practice medicine in the State of Ohio and Kentucky.

4. At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST"), was licensed to and did in fact perform medical services in the State of Ohio and the Commonwealth of Kentucky, and was and is a corporation authorized to transact business in the both states.

2

5. At all time relevant, West Chester Hospital ("West Chester"), registered at the time of the incident as West Chester Medical Center, was a corporation authorized to transact business and perform medical services in the State of Ohio.

6. At all times relevant, UC Health was a corporation authorized to transact business and manage medical services in the State of Ohio.

7. The amount in controversy exceeds the jurisdictional threshold of this Court.

8. Plaintiff reserves the right to file an Amended Complaint as this Complaint is being filed, inter alia, to preserve possible statutes of limitation, and remedies under law.

## BACKGROUND

9. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

10. On or about June 2009, Plaintiff first began treatment with Dr. Durrani at CAST.

11. Dr. Durrani told Christine Geralds on her first office visit that she needed to have surgery.

12. Dr. Durrani told Christine Geralds she had to undergo a discogram, not for a medical purpose, but "so [her] insurance would pay for the surgery."

13. A discogram is an extremely painful test whereby dye is injected into the spine without anesthesia.

14. Christine Geralds was caused pressure, excessive pain and extreme discomfort by this discogram.

15. The results of the discogram were inconclusive, nevertheless Dr. Durrani insisted Christine Geralds undergo a spinal fusion sugery, and Dr. Durrani recommended

3

surgery and scheduled the same to occur at West Chester Hospital in October 2009.

16. On or about October 2009, Dr. Durrani performed spinal fusion surgery on Plaintiff at West Chester Hospital [the "first surgery"].

17. Immediately following the first surgery, Plaintiff began suffering extreme (L) left leg pain, radiating down her leg, paralysis and numbness in her left leg.

18. Plaintiff had not experienced any of these symptoms, including but not limited to immobility, nor this level of pain and discomfort, in her left leg prior to the first surgery.

19. Following the first surgery, this new pain and symptomolgy never resolved or subsided.

20. Plaintiff continued to complain to Dr. Durrani at his offices at CAST that since the first surgery, the pain had become so extreme, she couldn't bear it.

21. On or about November 2011, Dr. Durrani told Plaintiff she now had a bulging disk in back, and scheduled another surgery.

22. On or about February 1, 2012, Dr. Durrani performed another surgery on Plaintiff at West Chester Hospital [the "second surgery"].

23. At the follow up appointments at CAST, Dr. Durrani assured Plaintiff that it was "just a matter of time" and that when she was finally healed from this second surgery, her pain and immobility would resolve, and her condition would dramatically improve.

24. The pain, numbness and immobility did not resolve, and Plaintiff continued to trust Dr. Durrani that over time, these conditions would improve.

25. On or about August 2012, the pain, numbness and immobility had still not improved, and Plaintiff again sought answers and direction from Dr. Durrani at CAST.

26. At that time, Dr. Durrani took an x-ray at CAST and told Plaintiff that he now needed to perform a third surgery, and that "I can fix you this time."

27. Plaintiff declined to permit Dr. Durrani to perform any additional, corrective and/or revision surgery on her.

28. Upon information and belief Defendants used BMP-2 bone graft on Plaintiff during one or both surgeries without her informed consent.

29. Defendants never explained to the Plaintiff that the surgeries would be an experiment.

30. The BMP-2 used on Christine Geralds was manufactured by Medtronic, Inc., and was marketed as INFUSE BMP-2.

31. Dr. Durrani is a consultant for Medtronic.

32. Defendants never informed Plaintiff that Dr. Durrani was a consultant for Medtronic and that Dr. Durrani received substantial financial compensation from Medtronic.

33. At all times relevant, Dr. Durrani was in exclusive control of amount and ratio of BMP-2 bone graft that he personally "mixed up".

34. At all times relevant, Dr. Durrani was responsible for the selection, modification, bending, cutting, sizing and placement of the rods, screws and hardware he implanted into Christine Geralds.

35. On or about November 2012, Plaintiff sought treatment from a new physician, Dr. Mandybur at Mayfield Clinic, who ordered an MRI at Mercy Hospital.

36. On or about February 21, Plaintiff had an MRI at Mercy Hospital.

37. Since the surgeries by Dr. Durrani, Plaintiff cannot travel any substantial distance, cannot wear certain footwear, cannot dance anymore, suffers positional discomfort, immobility, and continues to have (L) left leg numbness and paralysis, and has begun to suffer (R) leg radiculopathy as well.

38. Christine Geralds is now handicapped, partially paralyzed, immobile, and in constant pain. Her condition is embarrassing and emotionally draining, and painful.

39. A substantial part of Christine Geralds's medical expenses were paid for by Medicare and her health insurer

### COUNT I: NEGLIGENCE – DOCTOR DURRANI & CAST

40. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

41. Defendants owed Plaintiff Christine Geralds, the duty to exercise the degree of skill, care, and diligence of an ordinary prudent health care provider would have exercised under like or similar circumstances.

42. Defendants breached his duty causing damages by failing to exercise the requisite degree of skill, care and diligence that an ordinary prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent surgery, improper diagnosis, medical mismanagement and mistreatment of Christine Geralds, including but not limited to unnecessary

surgery, failed surgery, improper performance of surgery, and improper follow up care addressing the patient's concerns.

43. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENCE - WEST CHESTER HOSPITAL & UC HEALTH

44. Plaintiff incorporates by reference each and every allegation in the paragraphs above

45. Defendants owed their patient, Christine Geralds, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

46. Defendants breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiff.

47. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life,

and loss of the ability to perform usual and customary activities and incurred

substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABLITY - CAST, WEST CHESTER

## HOSPITAL & UC HEALTH

48. Plaintiff incorporates by reference each and every allegation in the paragraphs

above.

49. At all times relevant, Defendant Dr. Durrani was a was a staff physician, agent,

and/or employee of CAST and/or West Chester Hospital, which is owned and/or

managed by UC Health.

50. Upon information and belief, Dr. Durrani is a shareholder, owner, director and/or

member manager of CAST and West Chester Hospital, and therefore has a direct

financial motive and interest in CAST, West Chester Hospital and/or UC Health

profits.

51. Defendant Durrani was performing within the scope of his employment, agency

relationship, and/or for the financial gain of the Defendants when dealing with the

Plaintiff.

52. Defendants are responsible for harm caused by acts of employees, agents and

owners which conduct occurred within the scope of employment under the theory

of respondeat superior, ostensible agency, and/or vicarious liability.

53. Defendants are liable for the negligent acts and omissions of Defendant Durrani

alleged in this Complaint.

54. As a direct and proximate result of these Defendants acts and omissions by and

through its agents and/or employees, Plaintiff sustained severe and grievous

8

injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

**COUNT V: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION - CAST, WEST CHESTER HOSPITAL & UC HEALTH**

55. Plaintiff incorporates by reference each and every allegation contained within the above paragraphs and further state:

56. Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

57. Defendants were in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiff to exercise said control.

58. Defendants provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

59. Defendants West Chester Hospital, UC Health and Dr. Durrani participated in experiments using BMP-2 bone graft on patients, including the Plaintiff, without obtaining proper informed consent causing harm to Plaintiff.

60. Defendants knew, or had reason to know, that Dr. Durrani had his privileges terminated and/or refused at Christ Hospital, Children's Hospital, Good Samaritan Hospital, Deaconess Hospital, and St. Elizabeth Hospitals prior to West Chester Hospital and UC Health providing Dr. Durrani privileges at the facility.

9

61. West Chester Hospital and UC Health currently continue to permit Dr. Durrani to admit patients, and to perform surgery at West Chester Hospital.

62. CAST continues to employ Dr. Durrani.

63. Defendants breached their duty to Plaintiff, inter alia, by not controlling the actions of the Dr. Durrani and doctors, nurses, staff, and those with privileges, during the medical treatment of Christine Geralds at CAST and West Chester Hospital.

64. As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by West Chester Hospital and/or UC Health, Plaintiff sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT VI: BATTERY - DEFENDANT DURRANI

65. Plaintiff incorporates, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

66. Defendant Durrani committed battery against the Plaintiff Christine Geralds by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent, inter alia, by using BMP-2 in ways and surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiff.

67. Plaintiff would not have agreed to the surgeries if they knew that the surgeries were unnecessary, not approved by the FDA, and not indicated.

68. As a direct and proximate result of the aforementioned battery by Defendant, Plaintiff were caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiff have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VII: FRAUD - DEFENDANT DURRANI, CAST, WEST CHESTER HOSPITAL & UC HEALTH

69. Plaintiff incorporates, adopts and alleges those allegations contained in the above paragraphs.

70. Defendants made material, false representations to Plaintiff, to Medicare, and Plaintiff's insurance company related to Christine Geralds's care and treatment, as outlined in this Complaint.

71. Such false representations include, inter alia, stating that the surgery was imminently necessary; that Dr. Durrani "could fix" Christine Geralds; that further conservative treatment was unnecessary and futile; that the surgery would be simple; that Christine Geralds would be walking normally within days after each surgery; that the procedures and surgery billing to the insurance company was accurate and medically indicated; that the surgery was successful; that Christine Geralds was medically stable and ready to be discharged.

72. Defendants knew or should have known such representations were false, and/or made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

73. Defendants made the misrepresentations both before and after the surgeries with the intent of misleading Plaintiff and third parties into relying upon them.

74. Plaintiff and the insurers justifiably relied upon the material misrepresentations of Defendants when making the decision to undergo and pay for the surgeries.

75. As a direct and proximate result of the aforementioned, Plaintiff Christine Geralds did undergo multiple surgeries which were paid for in whole or in part by Medicare and her insurance company, and sustained grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

**COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

76. Plaintiff incorporates adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

77. Defendants intended to, and in fact, caused emotional distress to the Plaintiff.

78. Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

79. Defendant's conduct was the proximate and actual cause of the Plaintiff's psychiatric and emotional injuries, mental anguish, suffering, and distress.

80. The distress and anguish suffered by the Plaintiff is so serious and of a nature no reasonable man or woman could be expected to endure.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants on all claims. Plaintiff further requests:

1. Past medical bills;
2. Future medical bills;
3. Lost income and benefits;
4. Lost future income and benefits;
5. Loss of ability to earn income;
6. Past pain and suffering;
7. Future pain and suffering;
8. Plaintiffs seek a finding that their injuries are catastrophic under Ohio Rev. Code §2315.18;
9. All incidental costs and expenses incurred as a result of their injuries;
10. The damages to their credit as a result of their injuries;
11. Loss of consortium;
12. Punitive damages;
13. Costs;
14. Attorneys' fees;
15. Interest;
16. All property loss;
17. All other relief to which they are entitled to.

Based upon 1-17 itemizations of damages, the damages sought exceed the minimal jurisdictional amount of this court.

Respectfully submitted,

\s\

**Eric C. Deters (38050)**

ERIC. C. DETERS &
PARTNERS, PSC
5247 Madison Pike
Independence, KY 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
eric@ericdeters.com

## JURY DEMAND

Plaintiff hereby respectfully request trial by jury on all issues.

Respectfully submitted,

Eric C. Deters (0038050)
Attorney for Plaintiff
ERIC C. DETERS & PARTNERS, P.S.C.
5247 Madison Pike
Independence, KY 41051-7941
Phone: 859-363-1900 Fax: 859-363-1444
Email: eric@ericdeters.com

14

# IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO
### CIVIL DIVISION

CHRISTINE GERALDS

                          :         Case No.

                          :         Judge

                          :

         Plaintiff,          :      **PLAINTIFFS' FIRST DISCOVERY**

                          :      **TO WEST CHESTER HOSPITAL AND**

                          :      **UC HEALTH SERVED WITH**

                          :      **COMPLAINT**

                          :

                          :

v.                           :

                          :

ABUBAKAR ATIQ DURRANI, M.D., et al.:

                          :

                          :

         Defendants.        :

---

Come now the Plaintiff Christine Geralds, by and through counsel, hereby request that Defendants respond to the following discovery in accordance with the Ohio Rules of Civil Procedure.

PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

## REQUESTS FOR ADMISSION

1. Admit that Dr. Durrani has an ownership interest in West Chester Hospital Medical Center.
   ANSWER:

2. Admit that you have made reports to the Ohio Board of Medical Licensure regarding claims for medical negligence relating to care or treatment provided by Defendant Durrani to patients at your facility.

**ANSWER:**

3. Admit that you have made reports to the National Practitioner Databank regarding claims for medical negligence relating to care or treatment provided by Defendant Durrani to patients at your facility.
**ANSWER:**

4. Admit that you have made reports to the National Practitioner Databank relating to Defendant Durrani.
**ANSWER:**

5. Admit that you did not obtain a report from the National Practitioner Databank prior to granting Defendant Durrani privileges to practice at your facility.
**ANSWER:**

6. Admit that Dr. Durrani used BMP-2 on Christine Geralds at West Chester Hospital.
**ANSWER:**

## INTERROGATORIES

1. Identify the process, including all terms and conditions, by which Defendant Durrani had his privileges suspended at West Chester Hospital.
**ANSWER:**

2. Identify what information was gathered by you with respect to the selection of Dr. Abubakar Atiq Durrani prior to granting him privileges at West Chester Hospital.
**ANSWER:**

3. Identify what information was gathered by you with respect to the retention of Dr. Abubakar Atiq Durrani after West Chester Hospital granted him privileges at the hospital.
**ANSWER:**

4. Identify the materials and information upon which West Chester Hospital and/or UC Health based its decision to hire, retain, and/or grant privileges to Dr. Abubakar Atiq Durrani.
**ANSWER:**

5. Identify the materials and information upon which West Chester Hospital and/or UC Health based its decision to retain Dr. Abubakar Atiq Durrani as a physician at West Chester Hospital.
**ANSWER:**

6. Identify all actions you took regarding Dr. Abubakar Atiq Durrani in furtherance of, or related to your duty to grant and continue such privileges only to competent physicians.
   **ANSWER:**

7. Identify the date, the source, and the author, and provide a brief description of every document contained in the credentialing file of Dr. Abubakar Atiq Durrani so that Plaintiffs may make a meaningful determination whether ORC 2305.252 applies to each document.
   **ANSWER:**

8. Identify and produce all documents that can be obtained from their original sources, but which are otherwise contained in the credentialing file of Dr. Abubakar Atiq Durrani.
   **ANSWER:**

9. With respect to Dr. Abubakar Atiq Durrani:
   1. Produce his application for appointment and privileges at West Chester Hospital;
   2. Identify and produce all information gathered by West Chester Hospital to confirm the information contained in the application for privileges;
   3. Identify and produce all information gathered by West Chester Hospital during the course of Dr. Durrani's appointment relating to quality of care and professional ethics; and
   4. Identify all Board and/or Management decisions with respect to appointments and privileges of Dr. Durrani at West Chester Hospital.
   **ANSWER:**

10. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.
    A) West Chester Medical Center;
    B) Children's Hospital Cincinnati;
    C) Christ Hospital;
    D) Good Samaritan Hospital.

    **ANSWER:**

11. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against you and Dr. Durrani and/or CAST, and

further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

12. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against you and Dr. Durrani and/or CAST, and/or that have been brought to the attention of you, your insurance company(ies), your lawyers and/or your representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

**ANSWER:**

13. Identify the exact number of complaints, including but not limited to patient complaints, that you have received concerning Dr. Durrani related to failed surgeries, unnecessary surgeries, malpractice, negligence, fraud and/or hardware failure.

**ANSWER:**

14. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

**ANSWER:**

15. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani ever performed on Christine Geralds.

**ANSWER:**

16. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

**ANSWER:**

17. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:

1. Details of each person's education, training, qualifications, and background in his or her field of expertise;
2. The substance of the facts and opinions to which each such expert witness is expected to testify; and
3. A summary of the grounds for each such opinion of each such expert witness.

**ANSWER:**

18. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

19. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

20. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Christine Geralds in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

21. Please state whether you, your agents, attorneys, or employees have performed surveillance on Christine Geralds in which you have made an audio or video recording and/or a transcript or notes of Christine Geralds. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

22. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Christine Geralds was negligent, failed to mitigate her damages, and/or did not act with reasonable care in his own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

23. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state

whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

24. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

25. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Christine Geralds that were present with Defendant Durrani during each occasion he interacted with Christine Geralds.

**ANSWER:**

26. Does West Chester Hospital have any policies or procedures for informing patients when it is suspected that an adverse event such as a hardware failure has occurred during and/or after surgery?  And if so, produce a copy of the policy.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all documents that support your defense that Dr. Durrani properly obtained informed consent from Christine Geralds concerning the use of BMP-2.
**ANSWER:**

2. Produce a copy of each insurance policy that may provide coverage related to this lawsuit.
**ANSWER:**

3. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.
**ANSWER:**

4. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Christine Geralds including but not limited to all prior versions and/or iterations of all billing records.
**ANSWER:**

5. Please produce copies of all statements of any person related to Christine Geralds which you have in your possession or control.
**ANSWER:**

6. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.
   **ANSWER:**

7. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.
   **ANSWER:**

8. Please produce copies of all correspondence between the Plaintiff and the Defendants, or between any agent of the Defendants and the Plaintiff.
   **ANSWER:**

9. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.
   **ANSWER:**

10. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.
    **ANSWER:**

11. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Christine Geralds after her surgeries.
    **ANSWER:**

12. Please produce all documents which form the basis of the relationship between Christine Geralds and the Defendants, or are otherwise related thereto.
    **ANSWER:**

13. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.
    **ANSWER:**

14. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.
    **ANSWER:**

15. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.
    **ANSWER:**

16. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.
    **ANSWER:**

17. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
    **ANSWER:**

                                                Respectfully submitted,

                                                _____
                                                Eric C. Deters (38050)
                                                Eric C. Deters & Partners, P.S.C.
                                                5247 Madison Pike
                                                Independence, KY 41051
                                                (859) 363-1900
                                                (859) 363-1444 (fax)
                                                Eric@ericdeters.com

Eric C. Deters (0038050)

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

|                                        |     |       |
|----------------------------------------|-----|-------|
| CHRISTINE GERALDS                      |  :  |       |
|                                        |  :  | Judge |
| Plaintiff,                             |  :  |       |
|                                        |  :  |       |
| v.                                     |  :  |       |
|                                        |  :  |       |
| ABUBAKAR ATIQ DURRANI, M.D., et al     |  :  |       |
|                                        |     |       |
| Defendants                             |     |       |

---

### MOTION FOR EXTENSION OF TIME TO FILE AN AFFIDAVIT OF MERIT

Comes now the Plaintiff, by and through Counsel, and move this Court to grant an extension of time to file an affidavit of merit as required under Ohio Rule of Civil Procedure 10(D)(2). Dr. Durrani and CAST have failed to timely produce complete and accurate medical and billing records of similarly situated Plaintiffs, and Plaintiff herein and their consultants require additional time to confirm the records and billing are complete, and for the Plaintiffs' medical expert to complete the review of the records. This process must be completed prior to the expert signing the affidavit of merit. This is being filed now to preserve all applicable statutes of limitation, and based on Counsel's experience in claims against Dr. Durrani, the nurse review and the preliminary document review with the expert indicate the claim is supported by Ohio law. Plaintiff respectfully requests a ninety (90) day extension to file their affidavit of merit.

Respectfully submitted,

/s/ Eric C. Deters
Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, Kentucky 41051
(859) 363-1900
eric@ericdeters.com

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

CHRISTINE GERALDS

                                  :             Case No.

                                  :             Judge

                                  :

        Plaintiff,               :             **PLAINTIFFS' FIRST DISCOVERY**
                                  :             **TO DR. DURRANI & CAST, INC.**
                                  :             **SERVED WITH COMPLAINT**

                                  :

**v.**                                  :

ABUBAKAR ATIQ DURRANI, M.D., et al.    :

                                  :

        Defendants.             :

_____

      Comes now the Plaintiff, by and through counsel, hereby request that Defendants respond to the following First Set of Requests for Admission, Interrogatories and Requests for Production to Defendants Defendants Durrani and C.A.S.T.  in accordance with the Ohio Rules of Civil Procedure.

      PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

### REQUESTS FOR ADMISSION

1. Admit that Defendant Durrani's privileges were suspended at West Chester Medical Center.
   **ANSWER:**

2. Admit that Defendant Durrani's privileges were terminated at Children's Hospital.
   **ANSWER:**

3. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Children's Hospital in lieu of having his privileges revoked.
   **ANSWER:**

4. Admit that Defendant Durrani received information from Children's Hospital indicating that if he did not voluntarily resign his privileges at Children's Hospital, then his privileges would be terminated.
   **ANSWER:**

5. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Children's Hospital.
   **ANSWER:**

6. Admit that Defendant Durrani's privileges were terminated at Christ Hospital.
   **ANSWER:**

7. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Christ Hospital in lieu of having his privileges revoked.
   **ANSWER:**

8. Admit that Defendant Durrani received information from Christ Hospital indicating that if he did not voluntarily resign his privileges at Christ Hospital, then his privileges would be terminated.
   **ANSWER:**

9. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Christ Hospital.
   **ANSWER:**

10. Admit that Defendant Durrani's privileges were terminated at Good Samaritan Hospital.
    **ANSWER:**

11. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Good Samaritan Hospital in lieu of having his privileges revoked.
    **ANSWER:**

12. Admit that Defendant Durrani received information from Good Samaritan Hospital indicating that if he did not voluntarily resign his privileges at Good Samaritan Hospital, then his privileges would be terminated.
    **ANSWER:**

13. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Good Samaritan Hospital.
    **ANSWER:**

14. Admit that Christine Geralds was not properly informed of the use of BMP-2 in her surgeries. If you deny, produce the informed consent paperwork wherein you obtained informed consent from Christine Geralds to use BMP-2.
    **ANSWER:**

## INTERROGATORIES

1. Identify all hospitals, hospital facilities, surgical facilities, surgery centers, outpatient care clinics and medical care clinics in which you have held privileges for the past twenty (20) years. For each facility or institution listed, please identify the name, address, location, dates during which you held privileges and reasons for your resignation, revocation or termination of privileges.
   **ANSWER:**

2. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.
   A) West Chester Medical Center;
   B) Children's Hospital Cincinnati;
   C) Christ Hospital;
   D) Good Samaritan Hospital.
   **ANSWER:**

3. With respect to each explanation for each facility listed in Interrogatory 2, identify the person(s) with whom you interacted and/or received information concerning the change in privilege status, briefly explaining what you were told regarding your privilege(s), and furthermore, explain your response(s):

   A) West Chester Medical Center:
       a. Person(s):_____
       b. What you were told:_____
       c. Response:_____
   B) Children's Hospital Cincinnati:
       a. Person(s):_____
       b. What you were told:_____

    c. Response: _____

C) Christ Hospital:

    a. Person(s):_____

    b. What you were told:_____

    c. Response:_____

D) Good Samaritan Hospital:

    a. Person(s)_____

    b. What you were told:_____

    c. Response:_____

**ANSWER:**

4. State whether you have ever been to required to make a report to the Ohio Board of Medical Licensure and/or the National Practitioner Databank, settlement of any written claims or lawsuits made against you. If the answer is "Yes," please state the date the report was made, to whom the report was made, and a description of the claim or suit.

**ANSWER:**

5. Identify all other hospitals and hospital facilities from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

6. Identify all surgical facilities, surgery centers, outpatient care facilities, clinics, and medical care facilities of any kind, from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

7. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against Defendants Durrani and/or CAST, and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

8. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against Defendant Durrani and/or CAST that have been brought to the attention of Dr. Durrani's and/or CAST's insurance company(ies), lawyers and/or

representatives, including but not limited to the receipt of "180 day" letters, and further
provide a brief summary of the claims and demands made against you so that Plaintiffs
can make a determination of whether the issues and claims are substantially similar to the
present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of
private information such as former patient names, you can submit the information for an in
camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this
discovery has passed so that counsel can meet and confer about the terms and conditions of a
protective order to ensure patient privacy. However completely avoiding answering this
question with a claim of or objection based on "privacy" without first contacting Plaintiffs'
counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*
    **ANSWER:**

9. Identify the exact number of Defendant Durrani's patients that have had screws come
loose from the original surgical implant location.

    **ANSWER:**

10. Identify the number of Defendant Durrani's patients that have had surgically implanted
hardware fail and/or come loose from the original surgical implant location.

    **ANSWER:**

11. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani
ever performed on Chrsitine Geralds.

    **ANSWER:**

12. What is the current name, address, social security number and date of birth of the
person(s) answering these Interrogatories, and, if applicable, any other or prior names
(maiden, married, etc.) used by or by which the answerer has been known.

    **ANSWER:**

13. Please identify fully (give name, address, phone number) all experts whom you intend to
call as a witness to testify at the trial of this matter, and with respect to each expert
witness, provide:
   1. Details of each person's education, training, qualifications, and background in his
   or her field of expertise;
   2. The substance of the facts and opinions to which each such expert witness is
   expected to testify; and
   3. A summary of the grounds for each such opinion of each such expert witness.

    **ANSWER:**

14. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

15. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

16. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Christine Geralds in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

17. Please state whether you, your agents, attorneys, or employees have performed surveillance on Christine Geralds in which you have made an audio or video recording and/or a transcript or notes of Chrsitine Geralds. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

18. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Christine Geralds was negligent, failed to mitigate her damages, and/or did not act with reasonable care in her own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

19. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

20. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the

coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

21. Identify the current address, title/position and telephone number  of all persons that are "found in the medical records" of Christine Geralds that were present with Defendant Durrani during each occasion he interacted with Chrsitine Geralds.

**ANSWER:**

22. Identify each employee of you and CAST from March 1, 2009 - the present, by name, current address, telephone number, and provide the length of employment of each person identified by start date and termination of employment, and produce their complete employment and disciplinary files. For those persons identified who are no longer (or not currently) employed by you or CAST, state the reason(s) why the person is no longer an employee, whether the separation from employment was voluntary on the part of the employee, and produce their complete employment and disciplinary files.

**ANSWER:**

23. Identify each person(s) who provided medical care, medical treatment and/or medical related and/or support services of any kind whatsoever to Christine Geraldsat your direction, while in your presence, and/or while at CAST, including but not limited to medical care, medical advice, medical warnings, nursing care, pre-operative care, pre-operative information exchange, obtaining informed consent, ancillary services, laboratory analysis, pathology analysis, radiology analysis,  obtaining history and physical, triage, therapy, rehabilitative services, and obtaining and/or verifying insurance information, and briefly described the care or service provided.

**ANSWER:**

24. Please separately identify the total number of surgeries Defendant Durrani performed in 2008, 2009, 2010 and 2011.

**ANSWER:**

25. Please separately identify the total number of patients Defendant Durrani treated in 2008, 2009, 2010 and 2011.

**ANSWER:**

26. Explain the reason(s) Defendant Durrani told Christine Geralds her surgeries were "necessary."

**ANSWER:**

27. Does CAST have any policies or procedures for informing patients when it is suspected that an adverse event such as an infection has occurred during surgery?  And if so, produce a copy of the policy.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce Dr. Durrani's tax returns for the years 2008 – present.
**ANSWER:**

2. Produce CAST's tax returns for the years 2008 – present time.
**ANSWER:**

3. Produce a copy of each insurance policy that may provide coverage related to this lawsuit
**ANSWER:**

4. Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Christine Geralds THAT ARE CURRENTLY IN THE POSSESSION OF CAST AND/OR DR. DURRANI.
**ANSWER:**

5. Please produce copies of all medical records of Christine Geralds that were in your possession as of her first surgery.
**ANSWER:**

6. Please produce the actual radiological films, x-rays or media (not just the reports) of Christine Geraldsthat are in your possession.
**ANSWER:**

7. Please produce all documents and information not otherwise included in Chrsitine Geralds's "chart" or not heretofore requested or produced, which relate to the interaction of Christine Geralds and Abubakar Durrani, M.D. and/or CAST, including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Christine Geralds and Abubakar Durrani, M.D. and/or CAST was reviewed, analyzed and/or memorialized in any way.
**ANSWER:**

8. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.
**ANSWER:**

9. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Christine Geralds including but not limited to all prior versions and/or iterations.
**ANSWER:**

10. Please produce copies of all statements of any person related to Christine Geralds which you have in your possession or control.
ANSWER:

11. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.
ANSWER:

12. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.
ANSWER:

13. Please produce copies of all correspondence between the Plaintiffs and the Defendant, or between any agent of the Defendant and the Plaintiffs.
ANSWER:

14. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.
ANSWER:

15. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.
ANSWER:

16. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Christine Geralds after her surgeries.
ANSWER:

17. Please produce all documents which form the basis of the relationship between Christine Geralds and the Defendants, or are otherwise related thereto.
ANSWER:

18. Produce a copy of any and all publications, presentations, literature, research, and and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to the procedure(s), technique(s), product(s), device(s), equipment, and materials of the same type utilized by Defendant Durrani on Chrsitine Geralds.
ANSWER:

19. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to, or use information derived or compiled, in whole or in part from the procedure(s), technique(s), product(s), device(s), equipment, and materials utilized by Defendants on Chrsitine Geralds.

**ANSWER:**

20. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.
**ANSWER:**

21. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.
**ANSWER:**

22. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.
**ANSWER:**

23. Produce all documents that relate to any suspension, revocation or termination of your privileges from:
a. West Chester Medical Center;
b. Children's Hospital Cincinnati;
c. Christ Hospital;
d. Good Samaritan Hospital
e. Any other hospital, surgery center and/or medical care facility identified by you in response to this discovery.

**ANSWER:**

24. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.
**ANSWER:**

25. Produce the video surveillance audio, video and images files in electronic format, or as otherwise stored by you, for all dates that Christine Geralds was present at all CAST locations.
**ANSWER:**

26. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
**ANSWER:**

Respectfully submitted,

Eric C. Deters (38050)

Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com



## MARY L. SWAIN

## CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME _C T Corporation System_
ADDRESS _1300 East 9th Street, Suite 1010_
CITY _Cleveland_  STATE _OH_  ZIP _44114_

Today's Date: _____

Case No.: _____

Plaintiff: _____  -VS-  Defendant: _____

### PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ❏ Ordinary Mail
- ☑ Certified Mail
- ❏ Appointed Process Server
- ❏ Personal Service by Butler County Sheriff
- ❏ Foreign County Sheriff
- ❏ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

_All filings — Complaint + Jury Demand_
_+ Discovery Demand_

REQUESTING ATTORNEY:
NAME: _Eric C. Deters_
ADDRESS: _5247 Madison Pike_
CITY _Independance_  STATE _KY_  ZIP _41051_
PHONE: ( ) _859 363-1900_

MARY L. SWAIN  CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME Abubaka Atiq Durrani M.D.
ADDRESS 4555 Lake Forest Dr. Suite 150

CITY Cincinnati STATE OH ZIP 45242

Today's Date: 2|28|13 _____  Case No.: _____

Plaintiff Geralds _____  -VS-  Defendant: Abubakar Durrani, M.D.,
                                            et al

### PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ☐ Ordinary Mail
- ☑ Certified Mail
- ☐ Appointed Process Server
- ☐ Personal Service by Butler County Sheriff
- ☐ Foreign County Sheriff
- ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

All filings    Complaint w/ Jury Demand
               w/ Discovery Demand

REQUESTING ATTORNEY:
NAME: Eric Deters (38050)
ADDRESS 5247 Madison Pike
CITY Independence STATE KY ZIP 41051
PHONE: (     )
       (859) 363-1900

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org



MARY L. SWAIN                              CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME GH+R Business SVCS
ADDRESS 511 Walnut Street
1900 Fifth Third Center
CITY Cincinnati     STATE OH   ZIP 45202

Today's Date: 2/28/13          Case No.: _____
Plaintiff: Geralds          -VS-   Defendant: Abubakar Atiq Durrani, M.D.
                                              et al

### PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ☐ Ordinary Mail               ☐ Personal Service by Butler County Sheriff
- ☑ Certified Mail              ☐ Foreign County Sheriff
- ☐ Appointed Process Server    ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

All filings - Complaint & Jury Demand
+ Discovery Demand

REQUESTING ATTORNEY:
NAME: Eric C. Deters
ADDRESS: 5247 Madison Pike
CITY Independence    STATE   KY  ZIP 41057
PHONE: ( )   -
(859) 363-1900

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

P. 1

※ ※ ※ Communication Result Report ( Feb. 28. 2013  5:28PM ) ※ ※ ※

1)
2)

Date/Time: Feb. 28. 2013  5:00PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|------|------|-------------|-------|--------|---------------|
| 1149 | Memory TX | 15138873966 | P. 38 | OK | |

-----------------------------------------------------------------

Reason for error
  E. 1) Hang up or line fail        E. 2) Busy
  E. 3) No answer                   E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size

IN THE COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO
: CASE NO:

CHRISTINE GERALDS
Plaintiff, :
vs. :                                    DOCKET STATEMENT

ABUBAKAR ATIQ DURRANI, M.D., et al
Defendant :
:::::::
Type of Claim
(x) Professional Tort
( ) Product Liability
( ) Other Torts
( ) Workers Compensation
( ) Foreclosure
( ) Administrative Appeal
( ) Other Civil
Do you know any reason this matter should not be set for report within one hundred
eighty (180) days of this date? Yes_____No_x___
If yes, what are the grounds?

February 28, 2013

Attorney for Plaintiffs
ERIC C. DETERS & PARTNERS
5247 Madison Pike
Independence, KY 41051
Phone: 859.363.1900
Fax: 859.363.1444
Email: eric@ericdeters.com

**IN THE COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**
: CASE NO:

CHRISTINE GERALDS
Plaintiff, :
vs. :                                              **DOCKET STATEMENT**

ABUBAKAR ATIQ DURRANI, M.D., et al
Defendant :
: : : : : : :
Type of Claim
( x ) Professional Tort
( ) Product Liability
( ) Other Torts
( ) Workers Compensation
( ) Foreclosure
( ) Administrative Appeal
( ) Other Civil
Do you know any reason this matter should not be set for report within one hundred
eighty (180) days of this date? Yes_____No__x____
If yes, what are the grounds?

_____

February 28, 2013

Eric C. Deters (38050)
Attorney for Plaintiffs
ERIC C. DETERS & PARTNERS
5247 Madison Pike
Independence, KY 41051
Phone: 859.363.1900
Fax: 859.363.1444
Email: eric@ericdeters.com