# Barbara Hensley Complaint



# TRACY WINKLER
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
January 17, 2012 05:41 PM
TRACY WINKLER
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 114500

**BARBARA HENSLEY**

vs.

**ABUBAKAR ATIQ DURRANI**

**A 1200508**

**FILING TYPE: INITIAL FILING(OUT OF COUNTY) WITH JURY DEMAND**

**PAGES FILED: 7**

EFR200

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **BARBARA HENSLEY** | : | **Case No.** |
| **12063 Decker** | : | |
| **Richwood, KY 41094** | : | **Judge** |
| | : | |
| **Plaintiff** | : | |
| | : | **COMPLAINT WITH JURY DEMAND** |
| **v.** | : | |
| | : | |
| **ABUBAKAR ATIQ DURRANI, M.D.** | : | |
| **4555 Lake Forest Drive, Suite 150** | : | |
| **Cincinnati, Ohio 45242** | : | |
| **(Serve Certified Mail)** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CENTER FOR ADVANCED SPINE** | : | |
| **TECHNOLOGIES, INC.** | : | |
| **4555 Lake Forest Drive, Suite 150** | : | |
| **Cincinnati, Ohio 45242** | : | |
| | : | |
| **Serve: John E. Barnes** | : | |
| **255 East Fifth Street** | : | |
| **Suite 1900** | : | |
| **Cincinnati, Ohio 45202** | : | |
| **(Serve Certified Mail)** | : | |
| | : | |
| | : | |
| **Defendants** | : | |

Comes now Plaintiff, Barbara Hensley, and for her Complaint and jury demand, states as
follows:

I.      JURISDICTION

1.      At all times relevant, Plaintiff Barbara Hensley, was a resident of and domiciled in the
        State of Kentucky.

2.      At all times relevant, Defendant Dr. Abubakar Atiq Durrani was licensed to and did in
        fact practice medicine in the State of Ohio.

3.     At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio.

4.     Upon information and belief, Defendant Durrani is an employee, agent, servant, member or owner of Defendant CAST.

5.     Plaintiff attaches an Affidavit of Merit fro Dr. Keith Wilkey to this Complaint.

6.     The amount in controversy exceeds the jurisdictional threshold of this Court.

7.     The subject matter of the Complaint arises out of medical treatment by the Defendants in Hamilton County, Ohio. This Court is thus the proper venue to grant the Plaintiff the relief she seeks.

## II.     BACKGROUND

8.     Plaintiff incorporates by reference each and every allegation contained within the above paragraphs.

9.     Plaintiff Barbara Hensley had an x-ray ordered by Dr. Gary Shearer to due to complaints of neck pain.

10.     Barbara had history of two previous cervical spine surgeries.

11.     The MRI revealed degenerative changes above the C5-7 fusion of borderline significance and degenerative changes at C7-T1 of questionable significance.

12.     Dr. Shearer then referred Barbara to Defendant Durrani for evaluation of her neck and lower back pain.

13.     Defendant Durrani ordered an MRI and planned to perform surgery after receiving the results.

14.     The MRI showed there was only mild stenosis of C3-C4, mild to moderate at C4-C5, and

at C7-T1; with no herniation or obvious abnormality.

15. On October 23, 2009, Defendant Durrani performed an anterior cervical discectomy and fusion of C4-5 and C7-T1 on Barbara.

16. Two weeks after the operation Barbara was seen by Defendant Durrani.

17. At that time, Barbara had complaints of difficulty eating and drinking since surgery, with moderate to severe pain between her shoulder blades and down her right arm. Her range of motion was "very, very limited," and physical therapy.

18. On February 24, 2010, Plaintiff Hensley visited Dr. Shearer with difficulty swallowing and headaches.

19. Barbara received injections into her occipital nerve to treat the headaches.

20. In May, 2010, she again visited Dr. Shearer complaining of emotional issues, weight loss, and weakness; an x-ray at that time showed fusion from C4 through T1.

21. On September 27, 2010, she again visited Dr. Shearer, complaining of a number of issues, including difficulty swallowing and weight loss; as a result of which Dr. Shearer ordered a Barium swallow study.

22. The study showed severe constriction of the esophagus, and on a visit with Dr. Shearer on October 27, 2010, Barbara complained that her voice had been getting fainter over the past several months.

23. Dr. Shearer referred her for a gastrointestinal (GI) evaluation.

24. On January 24, 2011, Barbara received a second opinion from Dr. Michael Rohmiller of the Cincinnati Spine Institute.

25. Dr. Rohmiller reviewed the MRI that was done prior to Barbara's surgery by Dr. Durrani and noted there was no herniation or obvious abnormality noted.

26. Dr. Rohmiller reviewed the films done following the surgery and felt it was likely that Defendant Durrani had used bone morphogenetic protein (BMP) and that was likely the reason for Barbara's difficulty swallowing.

27. BMP is a genetically engineered protein product that stimulates bone growth and is not FDA approved for cervical spinal fusions.

28. On January 31, 2011, an upper GI evaluation was performed, but the study was incomplete as Barbara was able to tolerate only a few small sips, because food refluxed into her nose, a diagnosis of esophageal dysmotility.

29. On February 7, 2011 Barbara visited Dr. Kevin Moreman of Tri-state Gastroenterology, where he performed an esophageal dilatation on barbara, and he noted the possible need for a feeding tube.

30. On February 21, 2011 Barbara again visited Dr. Shearer, when he noted that "she had her rods removed due to food catching and hanging up."

31. That same day, Barbara also visited Dr. Rohmiller, who discussed with her the possibility of feeding tube, which she declined at that time.

32. Barbara continued to visit to Dr. Shearer for swallowing problems, including that when she swallows it comes out her nose.

## III.    COUNT I - NEGLIGENCE OF DEFENDANT DURRANI

33. Plaintiff incorporates by reference each and every allegation contained within the above paragraphs.

34. Defendant Durrani owed his patient, Plaintiff Barbara Hensley, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

35.     Defendant Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent diagnosis, medical mismanagement and mistreatment of Barbara, including but not limited to improper selection for surgery, improper performance of the surgery and installation of hardware, improper follow up care addressing a patient's concerns and lax documentation.

IV.     **COUNT II - BATTERY BY DEFENDANT DURRANI**

36.     Plaintiff incorporates by reference each and every allegation contained within the above paragraphs.

37.     Defendant Durrani committed battery against the plaintiff by performing a surgery that was unnecessary, not indicated by Barbara's medical condition, and for which he did not properly obtain consent by the failure to provide this information to Barbara.

V.      **COUNT III - NEGLIGENCE OF CAST**

38.     Plaintiff incorporates by reference each and every allegation contained within the above paragraphs.

39.     Defendant CAST owed its patient, Plaintiff Barbara Hensley, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

40.     Defendant CAST breached that duty by failing to exercise the requisite degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Barbara.

41.    As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant, Barbara was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## VI.    COUNT III - VICARIOUS LIABILITY OF CAST

42.    Plaintiff incorporates by reference each and every allegation contained within the above paragraphs.

43.    At all times relevant, Defendant Durrani was a shareholder, director, officer, agent, or employee of CAST.

44.    Defendant Durrani was acting within the scope of his agency when dealing with Barbara regarding her care.

45.    Defendant CAST is responsible for harm caused by acts of its aganets and employees for conduct that was within the scope of employment under the theory of respondeat superior.

46.    Defendant CAST is vicariously liable for the acts of Defendant Durrani alleged in this Complaint.

47.    As a direct and proximate result of Defendant CAST's actions, Plaintiff sustained harm.

## VII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendant on all claims.  Plaintiffs further request:

1.    Costs associated with the disbursement of this action;
2.    Interests;
3.    Punitive damages;
4.    Reasonable attorney's fees;

5.  All compensatory damages;
6.  Trial by jury; and
7.  All other relief this court deems fitting and proper.

Respectfully submitted,

\s\Eric C. Deters
Eric C. Deters (38050)
        eric@ericdeters.com
ERIC C. DETERS & PARTNERS PSC
5247 Madison Pike
Independence, KY 41051
(859) 363-1900   (859) 363-1444 (fax)

## VIII.  JURY DEMAND

Plaintiffs respectfully request a trial by jury.

\s\Eric C. Deters
Eric C. Deters (38050)

## IX.  CERTIFICATION OF EXPERT REVIEW

Eric Deters certified he has had this matter reviewed by competent health care providers qualified to testify and they are willing to support the allegations made in the Complaint.

\s\Eric C. Deters
Eric C. Deters

C:\Documents and Settings\All Users\Documents\Hensley Complaint.doc

Stephanie Herrin-Threm Complaint

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO
CIVIL DIVISION

STEPHANIE HERRIN-THREM          :    Case No.
7444 Timberview Drive           :
Cincinnati, OH 45241            :
                                :
And                             :
                                :
                                :
CHRISTOPHER THREM                :    Judge
7444 Timberview Drive           :
Cincinnati, OH 45241            :
                                :
        Plaintiffs              :
                                :
                                :
        v.                      :    COMPLAINT & JURY DEMAND
                                :    TO BE RE-FILED
                                :
ABUBAKAR ATIQ DURRANI, M.D.     :
4555 Lake Forest Drive, Suite 150   :
Cincinnati, OH 45242            :
        (Serve via Certified Mail)  :
                                :
and                             :
                                :
                                :
CENTER FOR ADVANCED SPINE       :
TECHNOLOGIES, INC.              :
4555 Lake Forest Drive, Suite 150   :
Cincinnati, OH 45242            :
                                :
        Serve: CT Corporation System    :
        1300 East 9th St. Ste 1010   :
        Cleveland, OH 44114     :
        (Serve via Certified Mail)  :
                                :
And                             :
                                :
BRADLEY TINKLE, M.D.            :
3333 Burnet Ave, ML 4006        :
Cincinnati, OH 45229
        (Serve via Certified Mail)  :

1

Comes now, Plaintiffs, Stephanie Herrin-Threm and Christopher Threm, re-filing their Complaint and jury demand pursuant to O.R.C. 2305.19, states as follows:

## I.    JURSIDICTION

1. At all times relevant, Plaintiff, Stephanie Herrin-Threm (hereafter referred to as "Plaintiff"), was a resident of and domiciled in the State of Ohio.

2. At all times relevant, Plaintiff, Christopher Threm (referred to as "Plaintiff Christopher Threm") was a resident of and domiciled in the State of Ohio.

3. At all times relevant, Defendant, Dr. Abubakar Atiq Durrani was licensed to and did in fact practice medicine in the State of Ohio.

4. At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio.

5. At all times relevant, Defendant Bradley T. Tinkle was licensed to, and did in fact, practice medicine in the State of Ohio.

6. Upon information and belief, Defendant Durrani is an employee, agent, servant, member or owner of Defendant CAST.

7. The amount in controversy exceeds the jurisdictional threshold of this Court.

8. The subject matter of the Complaint arises out of medical treatment by the Defendants in Hamilton County, Ohio. This Court is thus the proper venue to grant the Plaintiffs the relief they seek.

2

## II.    BACKGROUND

9.  Plaintiffs incorporate, adopt and re-allege as if fully restated herein, each and every allegation contained within the above paragraphs.

10. Plaintiff was being treated by Dr. Bradley T. Tinkle for neck pain, numbness and tingling in her face, hands and arms and headaches.

11. In 2009, Dr. Tinkle first mentioned the possibility that Plaintiff might have cervical instability as a result of a genetic condition known as Ehlers-Danlos Syndrome and ordered an MRI.

12. Dr. Tinkle advised that the 2009 MRI did not reveal instability.

13. In March of 2010, Dr. Tinkle ordered another MRI and a CT scan. He also referred Plaintiff to Defendant Durrani for evaluation.

14. The CT scan and MR films of March 23, 2010 revealed no evidence of atlantoaxial/ligamentous instability.

15. On or about March 25, 2010, Defendant Durrani evaluated Plaintiff.

16. Defendant Durrani determined that Plaintiff had a "tremendous amount of mobility" in the C1-C2 region on March 25, 2010.

17. Defendant Durrani told Plaintiff that she had atlantoaxial instability and advised Plaintiff that she needed to undergo surgery immediately on March 25, 2010.

18. When Defendant Durrani and/or his staff was unable to schedule immediate surgery, Plaintiff asked Dr. Tinkle on recommendations for other surgeons to perform the surgery.

19. Defendant Tinkle advised Plaintiff that Dr. Durrani was her only option, because no other local surgeons would treat patients with EDS.

3

20. On or about August 4, 2010, Defendant Durrani performed a C1-C2 posterior spinal instrumentation and a C1-C2 posterior spinal fusion on Plaintiff.

21. Defendant Durrani did not make his notations about the procedure until October 31, 2010.

22. Subsequent to the surgery, among other symptoms, Plaintiff began to experience increased pain in her head and neck, very limited range of motion, severe headaches, trouble swallowing and loss of vision.

23. Despite Plaintiff's requests, Defendant Durrani refused to order physical therapy.

24. On or about late March, 2011, Plaintiff informed her neurologist, Dr. Joseph Nicolas about her increasing post-surgical symptoms.

25. Dr. Nicolas contacted his colleague, Dr. Vincent Martin to inquire whether a 6 month MRI or CT scan was generally scheduled following a spinal fusion.

26. Dr. Martin advised Plaintiff that Defendant Durrani was in the process of researching ways to cure headaches, including performing surgeries such as the one undergone by Plaintiff.

27. When speaking with Dr. Martin, Plaintiff began to suspect that Defendant Durrani had performed surgery on her as a part of his experimental research to cure headaches.

28. Between April and September, 2011, Plaintiff's pain, headaches and other symptoms continued to increase in severity and intensity.

29. Dr. Nicolas ordered an MRI which was completed on or about May 9, 2011.

30. The May 9, 2011 MRI revealed no evidence of ligamentous laxity.

31. On or about September 9, 2011, Plaintiff was seen by Dr. Robert J. Bohinski for evaluation.

4

32. Dr. Bohinski reviewed the pre-surgical CT scan and MRI, as well as the post-surgical MRI ordered by Dr. Nicholas.

33. Dr. Bohinski advised Plaintiff that the pre-surgical radiologic films did not reveal evidence of pre-surgical instability.

34. On or about October, 2011, Plaintiff was referred to Dr. Carl Shapiro.

35. On or about November 7, 2011, Plaintiff was seen and evaluated by Dr. Shapiro.

36. Dr. Shapiro reviewed the pre-surgical radiological films, as well as the reports and advised Plaintiff that there was no evidence of atlanto-axial instability before the operation.

37. Dr. Shapiro advised Plaintiff that the surgery performed by Defendant Durrani was unnecessary.

## COUNT I – NEGLIGENCE OF DEFENDANT DURRANI

38. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

39. Defendant Dr. Abubakar Atiq Durrani owed Plaintiffs the duty to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

40. Defendant Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including, but not limited to improper selection for surgery, improper performance of the surgery and installation of

5

hardware, failure to obtain proper informed consent, improper follow-up care addressing a patient's concerns, and lax documentation.

41. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of Defendants, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred, and will continue to incur substantial medical expenses and treatment.

42. Defendant Durrani's actions were egregious, malicious and constituted aggravated and/or egregious fraud.

## COUNT II – BATTERY BY DEFENDANT DURRANI

43. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

44. Defendant Durrani committed battery against the Plaintiff by performing a surgery that was unnecessary, not indicated by Plaintiff's medical condition, and for which he did not properly obtain informed consent, by the failure to provide this information to Plaintiff.

45. Plaintiff would not have undergone the surgery if she knew that the surgery was unnecessary and not indicated and has suffered damages as a result including all damages outlined in Count I.

## COUNT III: FRAUD - DEFENDANT DURRANI

46. Plaintiff incorporates, adopts and alleges those allegations contained in the above paragraphs.

6

47. Defendant Duranni made material, false representations to Plaintiffs and their insurance company, both before and after the August 4, 2010 surgery, related to the care and treatment of Stephanie Herrin-Threm, as outlined in this Complaint.

48. Such false representations include, inter alia, stating that the surgery was imminently necessary; that further conservative treatment was unnecessary and futile; that the surgery would be simple; that the surgery was routine; that the surgery was not experimental; that the procedures and surgery billing to the insurance company was accurate and medically indicated; and that the surgery was successful; that the pre-surgical radiologic films indicted C1-C2 and related spinal structural instability.

49. Defendant Durrani knew or should have known such representations were false, and/or Defendant Durrani made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

50. Defendant Durrani made the misrepresentations with the intent of misleading Plaintiffs into relying upon them.

51. Plaintiffs justifiably relied upon the material misrepresentations of Defendant Durrani when making the decision to undergo surgery.

52. As a direct and proximate result of the aforementioned, Plaintiff did undergo surgery on August 4, 2010, which was paid for in whole or in part by their insurance company, and Plaintiffs sustained grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

7

## COUNT IV - NEGLIGENCE OF CAST

53. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

54. Defendant CAST owed Plaintiffs the duty to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

55. Defendant CAST breached its duty by and through its employees, in failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances through, among other things, the negligent diagnosis, medical mismanagement and mistreatment of Plaintiff.

56. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of Defendants, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

## COUNT V – VICARIOUS LIABILITY OF CAST

57. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

58. At all times relevant, Defendant Durrani was a shareholder, director, officer, agent or employee of CAST.

59. Defendant Durrani was acting within the scope of his agency when rendering care treatment and medical services to Plaintiff.

8

60. Defendant CAST is responsible for harm caused by acts of its agents and employees for conduct that was within the scope of employment under the theory of respondeat superior.

61. Defendant CAST is vicariously liable for the acts of Defendant Durrani alleged in this Complaint.

62. As a direct and proximate result of Defendant CAST's actions, Plaintiffs sustained harm as described in this Complaint.

63. CAST, as principal or master knowingly authorized, participated in, or ratified actions or omissions of Defendant Durrani.

## COUNT VI · NEGLIGENCE OF DEFENDANT TINKLE

64. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

65. Defendant Tinkle owed Plaintiffs the duty to exercise that degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

66. Defendant Tinkle breached his duty in failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances including, but not limited to medical mismanagement, the negligent referral of Plaintiff to Defendant Durrani, the failure to inform Plaintiff of Defendant Durrani's prior disciplinary proceedings at Children's Hospital, and/or the failure to disclose or provide Plaintiff with accurate information to enable her to make an informed decision when selecting a specialist.

9

67. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of Defendants, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and has incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VII – LOSS OF CONSORTIUM

68. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

69. At all times relevant, Plaintiffs Stephanie Herrin-Threm and Christopher Threm were married.

70. That as a result of the wrongful and negligent acts of each of the Defendants, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

71. That all the aforesaid injuries and damages were proximately caused by the negligence of the Defendants.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

73. Defendants intended to, and in fact, caused emotional distress to the Plaintiffs.

10

74. Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

75. Defendants' conduct was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress.

76. The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

**WHEREFORE**, Plaintiffs demand judgment against Defendants on all claims. Plaintiffs further request:

    **a.** Costs associated with the disbursement of this action;

    **b.** Interest;

    **c.** Punitive Damages, not to exceed $50,000,000.00 (fifty million dollars);

    **d.** Reasonable attorneys' fees;

    **e.** All compensatory damages, not to exceed $5,000,000.00 (five million dollars);

    **f.** Trial by jury; and

    **g.** All other relief this court deems fitting and proper.

Respectfully submitted,

\s\

Eric C. Deters (38050)
ERIC. C. DETERS & PARTNERS, PSC
5247 Madison Pike
Independence, KY 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
eric@ericdeters.com

**JURY DEMAND**

11

Plaintiff respectfully requests a trial by jury.

\s\ _____
Eric C. Deters (38050)

12

Eric C. Deters (0038050)

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
## CIVIL DIVISION

| | | |
|---|---|---|
| STEPHANIE HERRIN-THREM, et al. | : | Case No. |
| | : | |
| | : | Judge |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D. et al. | : | |
| | : | |
| Defendants | : | |

---

## MOTION FOR EXTENSION OF TIME TO FILE AN AFFIDAVIT OF MERIT

---

Come now the Plaintiffs, by and through Counsel, and move this Court to grant an extension of time to file an affidavit of merit as required under Ohio Rule of Civil Procedure 10(D)(2). The medical records are still being obtained and evaluated by an expert. The expert has indicated that he requires additional time to confirm the records and billing are complete and accurate. This process must be completed prior to the expert signing the affidavit of merit. This is being filed now because based on Counsel's experience in claims against Dr. Durrani, the nurse review and the preliminary document review with the expert indicate the claim is supported by Ohio law. Therefore, Plaintiffs respectfully request a ninety (90) day extension to file their affidavit of merit.

Respectfully submitted,

/s/ Eric C. Deters

Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, Kentucky 41051
(859) 363-1900
eric@ericdeters.com

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| STEPHANIE HERRIN-THREM<br>AND HER HUSBAND,<br>CHRISTOPHER THREM | : | Case No. |
| | : | Judge |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | **PLAINTIFF'S FIRST DISCOVERY TO**<br>**DR. DURRANI AND CAST SERVED**<br>**WITH THE COMPLAINT** |
| | | |
| ABUBAKAR ATIQ DURRANI, M.D., et al. | : | |
| | : | |

Come now the Plaintiffs, Stephanie Herrin Threm and Chris Threm, by and through counsel, hereby request that Defendants respond to the following First Set of Requests for Admission, Interrogatories and Requests for Production to Defendants Durrani and C.A.S.T. in accordance with the Ohio Rules of Civil Procedure. PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

## REQUESTS FOR ADMISSION

1. Admit that Defendant Durrani's privileges were suspended at West Chester Medical Center.
   **ANSWER:**

2. Admit that Defendant Durrani's privileges were terminated at Children's Hospital.
   **ANSWER:**

3. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Children's Hospital in lieu of having his privileges revoked.
   **ANSWER:**

1

4. Admit that Defendant Durrani received information from Children's Hospital indicating that if he did not voluntarily resign his privileges at Children's Hospital, then his privileges would be terminated.
   **ANSWER:**

5. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Children's Hospital.
   **ANSWER:**

6. Admit that Defendant Durrani's privileges were terminated at Christ Hospital.
   **ANSWER:**

7. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Christ Hospital in lieu of having his privileges revoked.
   **ANSWER:**

8. Admit that Defendant Durrani received information from Christ Hospital indicating that if he did not voluntarily resign his privileges at Christ Hospital, then his privileges would be terminated.
   **ANSWER:**

9. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Christ Hospital.
   **ANSWER:**

10. Admit that Defendant Durrani's privileges were terminated at Good Samaritan Hospital.
    **ANSWER:**

11. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Good Samaritan Hospital in lieu of having his privileges revoked.
    **ANSWER:**

12. Admit that Defendant Durrani received information from Good Samaritan Hospital indicating that if he did not voluntarily resign his privileges at Good Samaritan Hospital, then his privileges would be terminated.
    **ANSWER:**

13. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Good Samaritan Hospital.
    **ANSWER:**

2

14. Admit that on August 4, 2010, Dr. Durrani performed a C1-C2 posterior spinal
instrumentation and a C1-C2 posterior spinal fusion on Stephanie Herrin Threm.

**ANSWER:**

15. Admit that Defendant Durrani did not dictate his operative report of the August 4, 2010
surgery on Plaintiff until October 31, 2010.

**ANSWER:**

16. Admit that subsequent to the August 4, 2010 surgery, Plaintiff began to experience
increased pain in her head and neck, very limited range of motion, severe headaches,
trouble swallowing and loss of vision.

**ANSWER:**

17. Admit that there is no imaging (MRI, CT and/or X-ray) that occurred prior to August 4,
2010 that indicates ligamentous laxity at or near C1-C2.
**ANSWER:**

18. Admit that Stephanie Herrin Threm was not properly informed of the risks of surgery
prior to the August 4, 2010.
**ANSWER:**

## INTERROGATORIES

1. Identify the cumulative number of C1-C2 posterior spinal instrumentation procedures that
have ever been performed by Dr. Durrani.
**ANSWER:**

2. Identify the cumulative number of C1-C2 posterior spinal fusion surgeries that have ever
been performed by Dr. Durrani.
**ANSWER:**

3. Identify the cumulative number of patients Dr. Durrani has ever treated who were
diagnosed with EDS.
**ANSWER:**

4. Identify all hospitals, hospital facilities, surgical facilities, surgery centers, outpatient care
clinics and medical care clinics in which you have held privileges for the past twenty (20)

3

years. For each facility or institution listed, please identify the name, address, location, dates during which you held privileges and reasons for your resignation, revocation or termination of privileges.

**ANSWER:**

5. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.

A) West Chester Medical Center;
B) Children's Hospital Cincinnati;
C) Christ Hospital;
D) Good Samaritan Hospital.

**ANSWER:**

6. With respect to each explanation for each facility listed in Interrogatory 5, identify the person(s) with whom you interacted and/or received information concerning the change in privilege status, briefly explaining what you were told regarding your privilege(s), and furthermore, explain your response(s):

A) West Chester Medical Center:
    a. Person(s): _____
    b. What you were told: _____
    c. Response: _____
B) Children's Hospital Cincinnati:
    a. Person(s): _____
    b. What you were told: _____
    c. Response: _____
C) Christ Hospital:
    a. Person(s): _____
    b. What you were told: _____
    c. Response: _____
D) Good Samaritan Hospital:
    a. Person(s) _____
    b. What you were told: _____
    c. Response: _____

**ANSWER:**

4

7. State whether you have ever been to required to make a report to the Ohio Board of Medical Licensure and/or the National Practitioner Databank, settlement of any written claims or lawsuits made against you. If the answer is "Yes," please state the date the report was made, to whom the report was made, and a description of the claim or suit.

   **ANSWER:**

8. Identify all other hospitals and hospital facilities from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

   **ANSWER:**

9. Identify all surgical facilities, surgery centers, outpatient care facilities, clinics, and medical care facilities of any kind, from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

   **ANSWER:**

10. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against Defendants Durrani and/or CAST, and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

    **ANSWER:**

11. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against Defendant Durrani and/or CAST that have been brought to the attention of Dr. Durrani's and/or CAST's insurance company(ies), lawyers and/or representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this*

5

*discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

**ANSWER:**

12. Identify the exact number of Defendant Durrani's EDS patients who have undergone C1-C2 fusion surgery, but who have subsequently reported to Dr. Durrani that they suffer headaches.

**ANSWER:**

13. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

**ANSWER:**

14. Identify the number and type of surgeries Defendant Durrani performed on August 4, 2010.

**ANSWER:**

15. Identify the exact number of patients Defendant Durrani billed for medical services rendered on August 4, 2010.

**ANSWER:**

16. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani ever performed on Stephanie Herrin Threm.

**ANSWER:**

17. Identify all persons who were employed by Defendant Durrani and CAST on August 4, 2010 by name, position, current address, telephone number and whether each individual is still employed by Defendant Durrani and/or CAST.

**ANSWER**

18. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

**ANSWER:**

6

19. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:

    1. Details of each person's education, training, qualifications, and background in his or her field of expertise;

    2. The substance of the facts and opinions to which each such expert witness is expected to testify; and

    3. A summary of the grounds for each such opinion of each such expert witness.

**ANSWER:**

20. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

21. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

22. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Stephanie Herrin Threm in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

23. Please state whether you, your agents, attorneys, or employees have performed surveillance on Stephanie Herrin Threm in which you have made an audio or video recording and/or a transcript or notes of Stephanie Herrin Threm. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

24. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Stephanie Herrin Threm was negligent, failed to mitigate her damages,

and/or did not act with reasonable care in her own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

25. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

26. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

27. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Stephanie Herrin Threm that were present with Defendant Durrani during each occasion he interacted with Stephanie Herrin Threm.

**ANSWER:**

28. Identify each employee of you and CAST from March 1, 2009 - the present, by name, current address, telephone number, and provide the length of employment of each person identified by start date and termination of employment, and produce their complete employment and disciplinary files. For those persons identified who are no longer (or not currently) employed by you or CAST, state the reason(s) why the person is no longer an employee, whether the separation from employment was voluntary on the part of the employee, and produce their complete employment and disciplinary files.

**ANSWER:**

29. Identify each person(s) who provided medical care, medical treatment and/or medical related and/or support services of any kind whatsoever to Stephanie Herrin Threm at your direction, while in your presence, and/or while at CAST, including but not limited to medical care, medical advice, medical warnings, nursing care, pre-operative care, pre-operative information exchange, obtaining informed consent, ancillary services, laboratory analysis, pathology analysis, radiology analysis, obtaining history and physical, triage, therapy, rehabilitative services, and obtaining and/or verifying insurance information, and briefly described the care or service provided.

8

**ANSWER:**

30. Please separately identify the total number of surgeries Defendant Durrani performed in 2008, 2009, 2010 and 2011.

    **ANSWER:**

31. Please separately identify the total number of patients Defendant Durrani treated in 2008, 2009, 2010 and 2011.

    **ANSWER:**

32. Explain the reason(s) Defendant Durrani told Stephanie Herrin Threm the August 4, 2010 surgery was "necessary."

    **ANSWER:**

33. Why didn't Defendant Durrani inform Stephanie Herrin Threm that the August 4, 2010 surgery was unsuccessful?

    **ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Produce Dr. Durrani's tax returns for the years 2008 – present.
    **ANSWER:**

2.  Produce CAST's tax returns for the years 2008 – present time.
    **ANSWER:**

3.  Produce a copy of each insurance policy that may provide coverage related to this lawsuit
    **ANSWER:**

4.  Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Stephanie Herrin Threm THAT ARE CURRENTLY IN THE POSSESSION OF CAST AND/OR DR. DURRANI.

    **ANSWER:**

9

5. Please produce copies of all medical records of Stephanie Herrin Threm that were in your possession as of July 23, 2012.

    **ANSWER:**

6. Please produce the actual radiological films, x-rays or media (not just the reports) of Stephanie Herrin Threm that were in your possession as of August 4, 2010.

    **ANSWER:**

7. Please produce all documents and information not otherwise included in Stephanie Herrin Threm's "chart" or not heretofore requested or produced, which relate to the interaction of Stephanie Herrin Threm and Abubakar Durrani, M.D. and/or CAST, including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Stephanie Herrin Threm and Abubakar Durrani, M.D. and/or CAST was reviewed, analyzed and/or memorialized in any way.

    **ANSWER:**

8. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.

    **ANSWER:**

9. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Stephanie Herrin Threm including but not limited to all prior versions and/or iterations related to her surgery of July 23, 2012.

    **ANSWER:**

10. Please produce copies of all statements of any person related to Stephanie Herrin Threm which you have in your possession or control.

10

**ANSWER:**

11. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.

    **ANSWER:**

12. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.

    **ANSWER:**

13. Please produce copies of all correspondence between the Plaintiff and the Defendant, or between any agent of the Defendant and the Plaintiff.

    **ANSWER:**

14. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.

    **ANSWER:**

15. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.

    **ANSWER:**

16. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Stephanie Herrin Threm after her surgery on Aug. 4, 2010.

    **ANSWER:**

11

17. Please produce all documents which form the basis of the relationship between Stephanie Herrin Threm and the Defendants, or are otherwise related thereto.

   **ANSWER:**

18. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to the procedure(s), technique(s), product(s), device(s), equipment, and materials of the same type utilized by Defendant Durrani on Stephanie Herrin Threm.

   **ANSWER:**

19. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to, or use information derived or compiled, in whole or in part from the procedure(s), technique(s), product(s), device(s), equipment, and materials utilized by Defendants on Stephanie Herrin Threm.

   **ANSWER:**

20. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.

   **ANSWER:**

21. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.

   **ANSWER:**

22. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.

   **ANSWER:**

12

23. Produce all documents that relate to any suspension, revocation or termination of your privileges from:

   a. West Chester Medical Center;
   b. Children's Hospital Cincinnati;
   c. Christ Hospital;
   d. Good Samaritan Hospital
   e. Any other hospital, surgery center and/or medical care facility identified by you in response to this discovery.

   **ANSWER:**


24. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.

   **ANSWER:**


25. Produce the video surveillance audio, video and images files in electronic format, or as otherwise stored by you, for all dates that Stephanie Herrin Threm was present at all CAST locations.

   **ANSWER:**

26. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.

   **ANSWER:**

                                    Respectfully submitted,


                                    Eric C. Deters (38050)
                                    Eric C. Deters & Partners, P.S.C.
                                    5247 Madison Pike
                                    Independence, KY 41051
                                    (859) 363-1900

13

(859) 363-1444 (fax)
Eric@ericdeters.com

SERVED WITH COMPLAINT.

14

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| STEPHANIE HERRIN-THREM | : | Case No. |
| AND HER HUSBAND, | | |
| CHRISTOPHER THREM | : | Judge |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | | **PLAINTIFF'S FIRST DISCOVERY TO** |
| | | **DR. TINKLE SERVED WITH THE** |
| | | **COMPLAINT** |
| ABUBAKAR ATIQ DURRANI, M.D., et al. | : | |
| | : | |

Come now the Plaintiffs, Stephanie Herrin Threm and Chris Threm, by and through counsel, and hereby request that Defendant Dr. Tinkle respond to the following discovery in accordance with the Ohio Rules of Civil Procedure.

## REQUESTS FOR ADMISSION

1. Admit that there is no imaging (MRI, CT and/or X-ray) that occurred prior to August 4, 2010 that indicates ligamentous laxity at or near Stephanie Herrin Threm's C1-C2 vertebrae.
   **ANSWER:**

## INTERROGATORIES

1. Identify the cumulative number of patients Dr. Tinkle has ever treated who were diagnosed with EDS.
   **ANSWER:**

2. Identify all hospitals, hospital facilities, surgical facilities, surgery centers, outpatient care clinics and medical care clinics in which you have held privileges for the past twenty (20) years. For each facility or institution listed, please identify the name, address, location, dates during which you held privileges and reasons for your resignation, revocation or termination of privileges.
   **ANSWER:**

1

3. State whether you have ever been to required to make a report to the Ohio Board of Medical Licensure and/or the National Practitioner Databank, settlement of any written claims or lawsuits made against you. If the answer is "Yes," please state the date the report was made, to whom the report was made, and a description of the claim or suit.

**ANSWER:**

4. Identify all other hospitals and hospital facilities from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

5. Identify all surgical facilities, surgery centers, outpatient care facilities, clinics, and medical care facilities of any kind, from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

6. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against Dr. Tinkle and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

7. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against Dr. Tinkle and/or that have been brought to the attention of Dr. Tinkle's insurance company(ies), lawyers and/or representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a*

2

*protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

**ANSWER:**

8. Identify the exact number of Defendant Dr. Tinkle's EDS patients who have undergone C1-C2 fusion surgery.

**ANSWER:**

9. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

**ANSWER:**

10. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:
    1. Details of each person's education, training, qualifications, and background in his or her field of expertise;
    2. The substance of the facts and opinions to which each such expert witness is expected to testify; and
    3. A summary of the grounds for each such opinion of each such expert witness.

**ANSWER:**

11. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

12. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

13. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Stephanie Herrin Threm in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date

3

of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

14. Please state whether you, your agents, attorneys, or employees have performed surveillance on Stephanie Herrin Threm in which you have made an audio or video recording and/or a transcript or notes of Stephanie Herrin Threm. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

15. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Stephanie Herrin Threm was negligent, failed to mitigate her damages, and/or did not act with reasonable care in her own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

16. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

17. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

18. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Stephanie Herrin Threm that were present with Dr. Tinkle during each occasion he interacted with Stephanie Herrin Threm.

**ANSWER:**

19. Identify each person(s) who provided medical care, medical treatment and/or medical related and/or support services of any kind whatsoever to Stephanie Herrin Threm at your direction and/or while in your presence, including but not limited to medical care,

4

medical advice, medical warnings, nursing care, pre-operative care, pre-operative information exchange, obtaining informed consent, ancillary services, laboratory analysis, pathology analysis, radiology analysis, obtaining history and physical, triage, therapy, rehabilitative services, and obtaining and/or verifying insurance information, and briefly described the care or service provided.

**ANSWER:**

20. Is it Dr. Tinkle's opinion that the August 4, 2010 surgery by Dr. Durrani on Stephanie Herrin Threm was "necessary?" If "yes", explain the medical and factual basis for your answer.
**ANSWER:**

21. Is it Dr. Tinkle's opinion that the August 4, 2010 surgery by Dr. Durrani on Stephanie Herrin Threm was successful? If "yes", explain the medical and factual basis for your answer.
**ANSWER:**

22. Why didn't Dr. Tinkle inform Stephanie Herrin Threm that the August 4, 2010 surgery was unsuccessful?

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce a copy of each insurance policy that may provide coverage related to this lawsuit
**ANSWER:**

2. Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Stephanie Herrin Threm THAT ARE CURRENTLY IN THE POSSESSION OF DR. TINKLE.

**ANSWER:**

3. Please produce copies of all medical records of Stephanie Herrin Threm that were in your possession as of July 23, 2012.

**ANSWER:**

6. Please produce the actual radiological films, x-rays or media (not just the reports) of Stephanie Herrin Threm that were in your possession as of August 4, 2010.

**ANSWER:**

5

7. Please produce all documents and information not otherwise included in Stephanie Herrin Threm's "chart" or not heretofore requested or produced, which relate to the interaction of Stephanie Herrin Threm and Dr. Tinkle, including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Stephanie Herrin Threm and Dr. Tinkle was reviewed, analyzed and/or memorialized in any way.

**ANSWER:**

8. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.

**ANSWER:**

9. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Stephanie Herrin Threm including but not limited to all prior versions and/or iterations related to her surgery of July 23, 2012.

**ANSWER:**

10. Please produce copies of all statements of any person related to Stephanie Herrin Threm which you have in your possession or control.

**ANSWER:**

11. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.

**ANSWER:**

12. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.

**ANSWER:**

13. Please produce copies of all correspondence between the Plaintiffs and the Defendants, or between any agent of the Defendants and the Plaintiffs.

**ANSWER:**

14. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.

6

**ANSWER:**

15. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.

**ANSWER:**

16. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Stephanie Herrin Threm after her surgery on Aug. 4, 2010.

**ANSWER:**

17. Please produce all documents which form the basis of the relationship between Stephanie Herrin Threm and the Defendants, or are otherwise related thereto.

**ANSWER:**

18. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Dr. Tinkle to any person(s) or company which in any way relate to the procedure(s), technique(s), product(s), device(s), equipment, and materials of the same type utilized by Defendants on Stephanie Herrin Threm.

**ANSWER:**

19. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Dr. Durrani to any person(s) or company which in any way relate to, or use information derived or compiled, in whole or in part from the procedure(s), technique(s), product(s), device(s), equipment, and materials utilized by Defendants on Stephanie Herrin Threm.

**ANSWER:**

20. Produce a copy of any and all contracts, agreements, correspondence, and emails between Dr. Tinkle and any other Defendant in this case.

**ANSWER:**

21. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.

**ANSWER:**

7

22. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.

**ANSWER:**

Respectfully submitted,

Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

SERVED WITH COMPLAINT.

8

Laura Kranbuhl-McKee Complaint

Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| **LAURA KATHLEEN KRANBUHL-McKEE, AND HER HUSBAND, SAM McKEE IV** 105 NORTH 3RD STREET LOVELAND, OHIO | : : : | Case No. |
|  | : | Judge |
|  | : : : |  |
| Plaintiffs, | : : | **COMPLAINT & JURY DEMAND** |
|  | : : |  |
| **v.** | : : : |  |
| **ABUBAKAR ATIQ DURRANI, M.D.,** 4555 LAKE FOREST DR., Suite 150 CINCINNATI, OH 45242 (Serve via Certified Mail) | : : : : : |  |
| And | : : |  |
| **CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC.** 4555 Lake Forest Drive, Suite 150 Cincinnati, Ohio 45242 | : : : : : |  |
| SERVE: CT CORPORATION SYSTEM 1300 EAST 9TH STREET, SUITE 1010 CLEVELAND, OHIO 44114 (Serve via Certified Mail) | : : : |  |
| And | : : |  |
| **WEST CHESTER HOSPITAL, LLC** 7700 UNIVERSITY DRIVE WEST CHESTER, OH 45069 | : : : |  |
| SERVE: GH&R BUSINESS SVCS., INC. 511 WALNUT STREET 1900 FIFTH THIRD CENTER CINCINNATI, OH 45202 | : : : |  |

1

And                                        :
                                           :
**UC HEALTH**                              :
7700 UNIVERSITY DRIVE                      :
WEST CHESTER, OH 45069

SERVE:  CT CORPORATION SYSTEM              :
1300 EAST 9TH ST. STE 1010
CLEVELAND, OH 44114                         :
(SERVE VIA CERTIFIED MAIL)
                                           :
            Defendants.                    :

Now comes Plaintiffs, Laura Kranbuhl-McKee and Sam McKee, and for their

Complaint with Jury Demand against the Defendants, states as follows:

## PARTIES, JURISDICTION AND VENUE

1. The incidents giving rise to this action and the subject matter of the Complaint

   arise out of medical treatment, acts and omissions, and conduct that occurred in

   Butler County, Ohio, Hamilton County, Ohio, and Kenton County, Kentucky.

2. At all times relevant, Plaintiffs Laura Kranbuhl-McKee ("Plaintiff") was an

   individual resident and citizen of Clermont County, Ohio.

3. At all times relevant, Plaintiffs Sam McKee IV ("Plaintiff") was an individual

   resident and citizen of Clermont County, Ohio.

4. Laura Kranbuhl-McKee is married to Sam McKee IV.

5. At all times relevant, Defendant Abubakar Atiq Durrani, M. D. ("Dr. Durrani")

   was licensed to and did in fact practice medicine in the State of Ohio and

   Kentucky.

6. At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST"),

   was licensed to and did in fact perform medical services in the State of Ohio and

2

the Commonwealth of Kentucky, and was and is a corporation authorized to transact business in the both states.

7. At all time relevant, West Chester Hospital ("West Chester"), registered at the time of the incident as West Chester Medical Center, was a corporation authorized to transact business and perform medical services in the State of Ohio.

8. At all times relevant, UC Health was a corporation authorized to transact business and manage medical services in the State of Ohio.

9. The amount in controversy exceeds the jurisdictional threshold of this Court.

10. Plaintiffs reserve the right to file an Amended Complaint as this Complaint is being filed, inter alia, to preserve possible statutes of limitation, and remedies under law.

## BACKGROUND

11. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

12. On or about October 2010, Laura Kranbuhl-McKee first began treatment with Dr. Durrani at CAST.

13. On or about October 2010, Laura Kranbuhl-McKee was a covered Ohio Medicaid recipient.

14. Dr. Durrani told Laura Kranbuhl-McKee on her first office visit that she needed to have surgery.

15. On November 10, 2010 Dr. Durrani performed spinal fusion surgery on Laura Kranbuhl-McKee, fusing T-12 - L3, and installing 2 rods and several screws.

16. No conservative treatment options were tried, discussed with, and/or recommended to Plaintiffs prior to Dr. Durrani telling Laura Kranbuhl-McKee she needed surgery.

17. Dr. Durrani characterized the need for the first surgery as urgent, and that Laura Kranbuhl-McKee had no other choice but to undergo surgery,

18. On or about November 10, 2010, Dr. Durrani performed spinal fusion surgery on Laura Kranbuhl-McKee at West Chester Hospital [the "first surgery"].

19. Immediately following the first surgery, Laura Kranbuhl-McKee began experiencing extreme bilateral pain down both legs, hip pain, and back pain that had not been present before the first surgery.

20. Laura Kranbuhl-McKee had not experienced these symptoms nor this level of pain and discomfort, in her legs and her back prior to the first surgery.

21. Following the first surgery, this new pain and symptomolgy never resolved or subsided.

22. Laura Kranbuhl-McKee continued to complain to Dr. Durrani at his offices at CAST that since the first surgery, the pain had become so extreme, she couldn't bear it.

23. Laura Kranbuhl-McKee continued to treat with Dr. Durrani at CAST from 2010 - 2012.

24. On or about March 16, 2012, Dr. Durrani performed a second (revision) surgery to remove the (R) right side rod he had implanted into Laura Kranbuhl-McKee.

25. Dr. Durrani told Plaintiffs the right side rod was causing her pain, and that it needed to be removed.

26. After the second surgery, Laura Kranbuhl-McKee experienced some relief of her back pain on the right side, but her bilateral leg pain persists, as does her hip and constant pain.

27. At all times relevant, at all follow up appointments at CAST, Dr. Durrani assured Plaintiff that it was "just a matter of time" and that when she was finally healed from her surgeries, her pain and immobility would resolve, and her condition would dramatically improve.

28. Prior to the first surgery, Dr, Durrani marketed the surgery as "minimally invasive" and promised that the scarring would consist of tiny, 1" scars. In reality, however, the scar Dr. Durrani caused were very long down the middle of Laura Kranbuhl-McKee's back, and unsightly.

29. Upon information and belief Defendants used BMP-2 bone graft on Laura Kranbuhl-McKee from T-12 - L3, and during one and/or both surgeries without her informed consent.

30. The FDA has not approved BMP-2 for use in T12, L1, L2 and/or L3.

31. The FDA has specifically warned doctors not to use BMP-2 in thoracic spine surgery.

32. Defendants never explained to the Plaintiffs that the surgeries would be an experiment.

33. The BMP-2 used on Laura Kranbuhl-McKee was manufactured by Medtronic, Inc., and was marketed as INFUSE BMP-2.

34. Dr. Durrani is a consultant for Medtronic.

35. Defendants never informed Plaintiffs that Dr. Durrani was a consultant for Medtronic and that Dr. Durrani received substantial financial compensation from Medtronic.

36. At all times relevant, Dr. Durrani was in exclusive control of amount and ratio of BMP-2 bone graft that he personally "mixed up".

37. At all times relevant, Dr. Durrani was responsible for the selection, modification, bending, cutting, sizing and placement of the rods, screws and hardware he implanted into Laura Kranbuhl-McKee.

38. Since the surgeries by Dr. Durrani, Plaintiff now suffers pain, impairment, and emotional damages that she did not have prior to surgery by Dr. Durrani.

39. Laura Kranbuhl-McKee is now 34 years old, but far less mobile, and in much more pain than before surgery with Dr. Durrani. Her condition is embarrassing and emotionally draining, and painful.

40. A substantial part of Laura Kranbuhl-McKee's medical expenses were paid for by Medicaid and her health insurer.

## COUNT I: NEGLIGENCE – DOCTOR DURRANI & CAST

41. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

42. Defendants owed Plaintiffs, the duty to exercise the degree of skill, care, and diligence of an ordinary prudent health care provider would have exercised under like or similar circumstances.

43. Defendants breached his duty causing damages by failing to exercise the requisite degree of skill, care and diligence that an ordinary prudent health care provider

would have exercised under same or similar circumstances through, among other things, the negligent surgery, improper diagnosis, medical mismanagement and mistreatment of Laura Kranbuhl-McKee, including but not limited to unnecessary surgery, failed surgery, improper performance of surgery, and improper follow up care addressing the patient's concerns.

44. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II: NEGLIGENCE - WEST CHESTER HOSPITAL & UC HEALTH

45. Plaintiffs incorporates by reference each and every allegation in the paragraphs above

46. Defendants owed the Plaintiffs the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

47. Defendants breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiffs.

7

48. As a direct and proximate result of the aforementioned acts and omissions by the Defendants, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABLITY - CAST, WEST CHESTER HOSPITAL & UC HEALTH

49. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

50. At all times relevant, Defendant Dr. Durrani was a staff physician, agent, and/or employee of CAST, and/or West Chester Hospital, which is owned and/or managed by UC Health.

51. Upon information and belief, Dr. Durrani is a shareholder, owner, director and/or member manager of CAST and West Chester Hospital, and therefore has a direct financial motive and interest in CAST, West Chester Hospital and/or UC Health profits.

52. Defendant Durrani was performing within the scope of his employment, agency relationship, and/or for the financial gain of the Defendants when dealing with the Plaintiffs.

53. Defendants are responsible for harm caused by acts of employees, agents and owners which conduct occurred within the scope of employment under the theory of respondeat superior, ostensible agency, and/or vicarious liability.

8

54. Defendants are liable for the negligent acts and omissions of Defendant Durrani alleged in this Complaint.

55. As a direct and proximate result of these Defendants acts and omissions by and through its agents and/or employees, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT V: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION - CAST, WEST CHESTER HOSPITAL & UC HEALTH

56. Plaintiffs incorporates by reference each and every allegation contained within the above paragraphs and further state:

57. Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

58. Defendants were in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiffs to exercise said control.

59. Defendants provided Dr. Durrani, inter alia, financial support, control, medical facilities, billing and insurance payment support, staff support, medicines, and tangible items for use on patients.

60. Defendants West Chester Hospital, UC Health and Dr. Durrani participated in experiments using BMP-2 bone graft on patients, including the Plaintiffs, without obtaining proper informed consent causing harm to Plaintiffs.

9

61. Defendants knew, or had reason to know, that Dr. Durrani had his privileges terminated and/or refused at Christ Hospital, Children's Hospital, Good Samaritan Hospital, Deaconess Hospital, and St. Elizabeth Hospitals prior to West Chester Hospital and UC Health providing Dr. Durrani privileges at the facility.

62. West Chester Hospital and UC Health currently continue to permit Dr. Durrani to admit patients, and to perform surgery at West Chester Hospital.

63. CAST continues to employ Dr. Durrani.

64. Defendants breached their duty to Plaintiffs, inter alia, by not controlling the actions of the Dr. Durrani and doctors, nurses, staff, and those with privileges, during the medical treatment of Laura Kranbuhl-McKee at CAST and West Chester Hospital.

65. As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges by West Chester Hospital and/or UC Health, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT VI: BATTERY - DEFENDANT DURRANI

66. Plaintiffs incorporates, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

67. Defendant Durrani committed battery against the Plaintiffs Laura Kranbuhl-McKee by performing a surgery that was unnecessary, contraindicated for

Plaintiffs's medical condition, and for which he did not properly obtain informed consent, inter alia, by using BMP-2 in ways and surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiffs.

68. Plaintiffs would not have agreed to the surgeries if they knew that the surgeries were unnecessary, not approved by the FDA, and not indicated.

69. As a direct and proximate result of the aforementioned battery by Defendant, Plaintiffs were caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VII: FRAUD - DEFENDANT DURRANI, CAST, WEST CHESTER HOSPITAL & UC HEALTH

70. Plaintiffs incorporates, adopts and alleges those allegations contained in the above paragraphs.

71. Defendants made material, false representations to Plaintiffs, to Medicaid, and Plaintiffs's insurance company related to Laura Kranbuhl-McKee's care and treatment, as outlined in this Complaint.

72. Such false representations include, inter alia, stating that the surgery was imminently necessary; that Dr. Durrani "could fix" Laura Kranbuhl-McKee; that conservative treatment was unnecessary and futile; that the surgery would be simple; that Laura Kranbuhl-McKee would be walking normally within days after each surgery; that the procedures and surgery billing to the insurance company

11

was accurate and medically indicated; that the surgeries were successful; that
Laura Kranbuhl-McKee was medically stable and ready to be discharged.

73. Defendants knew or should have known such representations were false, and/or
made the misrepresentations with such utter disregard and recklessness as to
whether they were true or false that knowledge of their falsity may be inferred.

74. Defendants made the misrepresentations both before and after the surgeries with
the intent of misleading Plaintiffs and third parties into relying upon them.

75. Plaintiffs and the insurers justifiably relied upon the material misrepresentations
of Defendants when making the decision to undergo and pay for the surgeries.

76. As a direct and proximate result of the aforementioned, Plaintiffs Laura Kranbuhl-
McKee did undergo multiple surgeries which were paid for in whole or in part by
Medicaid and her insurance company, and sustained grievous injuries, paralysis,
new and different pain, prolonged pain and suffering, emotional distress,
humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform
usual and customary activities and Plaintiffs has incurred and will continue to
incur substantial medical expenses and treatment.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiffs incorporates adopt and re-allege as if fully restated herein, those
allegations contained in the above paragraphs.

78. Defendants intended to, and in fact, caused emotional distress to the Plaintiffs.

79. Defendants' conduct was so extreme and outrageous as to go beyond the bounds
of decency and was such that the conduct can be considered utterly intolerable in
a civilized society.

80. Defendants' conduct was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress.

81. The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all claims. Plaintiffs further request:

1. Past medical bills;
2. Future medical bills;
3. Lost income and benefits;
4. Lost future income and benefits;
5. Loss of ability to earn income;
6. Past pain and suffering;
7. Future pain and suffering;
8. Plaintiffss seek a finding that their injuries are catastrophic under Ohio Rev. Code §2315.18;
9. All incidental costs and expenses incurred as a result of their injuries;
10. The damages to their credit as a result of their injuries;
11. Loss of consortium;
12. Punitive damages;
13. Costs;
14. Attorneys' fees;
15. Interest;
16. All property loss;
17. All other relief to which they are entitled to.

Based upon 1-17 itemizations of damages, the damages sought exceed the minimal jurisdictional amount of this court.

Respectfully submitted,

13

\s\

Eric C. Deters (38050)
**ERIC. C. DETERS &
PARTNERS, PSC**
**5247 Madison Pike**
**Independence, KY 41051**
**Phone: (859) 363-1900**
**Fax: (859) 363-1444**
**eric@ericdeters.com**

## JURY DEMAND

Plaintiffs hereby respectfully request trial by jury on all issues.

Respectfully submitted,

Eric C. Deters (0038050)
Attorney for Plaintiffs
ERIC C. DETERS & PARTNERS, P.S.C.
5247 Madison Pike
Independence, KY 41051-7941
Phone: 859-363-1900 Fax: 859-363-1444
Email: eric@ericdeters.com

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

LAURA KATHLEEN
KRANBUHL-McKEE, AND HER
HUSBAND, SAM McKEE IV

|  |  |  |
|---|---|---|
|  | : | Case No. |
|  | : | Judge |
|  | : |  |
| Plaintiff, | : | **PLAINTIFFS' FIRST DISCOVERY** |
|  | : | **TO WEST CHESTER HOSPITAL AND** |
|  | : | **UC HEALTH SERVED WITH** |
|  | : | **COMPLAINT** |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| ABUBAKAR ATIQ DURRANI, M.D., et al.: |  |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |

Come now the Plaintiffs, by and through counsel, hereby request that Defendants respond to the following discovery in accordance with the Ohio Rules of Civil Procedure.

PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

## REQUESTS FOR ADMISSION

1. Admit that Dr. Durrani has an ownership interest in West Chester Hospital Medical Center.
   ANSWER:

2. Admit that you have made reports to the Ohio Board of Medical Licensure regarding claims for medical negligence relating to care or treatment provided by Defendant Durrani to patients at your facility.

**ANSWER:**

3. Admit that you have made reports to the National Practitioner Databank regarding claims for medical negligence relating to care or treatment provided by Defendant Durrani to patients at your facility.
   **ANSWER:**

4. Admit that you have made reports to the National Practitioner Databank relating to Defendant Durrani.
   **ANSWER:**

5. Admit that you did not obtain a report from the National Practitioner Databank prior to granting Defendant Durrani privileges to practice at your facility.
   **ANSWER:**

6. Admit that Dr. Durrani used BMP-2 on Laura Kranbuhl-McKee at West Chester Hospital.
   **ANSWER:**

## INTERROGATORIES

1. Identify the process, including all terms and conditions, by which Defendant Durrani had his privileges suspended at West Chester Hospital.
**ANSWER:**

2. Identify what information was gathered by you with respect to the selection of Dr. Abubakar Atiq Durrani prior to granting him privileges at West Chester Hospital.
**ANSWER:**

3. Identify what information was gathered by you with respect to the retention of Dr. Abubakar Atiq Durrani after West Chester Hospital granted him privileges at the hospital.
**ANSWER:**

4. Identify the materials and information upon which West Chester Hospital and/or UC Health based its decision to hire, retain, and/or grant privileges to Dr. Abubakar Atiq Durrani.
**ANSWER:**

5. Identify the materials and information upon which West Chester Hospital and/or UC Health based its decision to retain Dr. Abubakar Atiq Durrani as a physician at West Chester Hospital.

**ANSWER:**

6. Identify all actions you took regarding Dr. Abubakar Atiq Durrani in furtherance of, or related to your duty to grant and continue such privileges only to competent physicians.
**ANSWER:**

7. Identify the date, the source, and the author, and provide a brief description of every document contained in the credentialing file of Dr. Abubakar Atiq Durrani so that Plaintiffs may make a meaningful determination whether ORC 2305.252 applies to each document.
**ANSWER:**

8. Identify and produce all documents that can be obtained from their original sources, but which are otherwise contained in the credentialing file of Dr. Abubakar Atiq Durrani.
**ANSWER:**

9. With respect to Dr. Abubakar Atiq Durrani:
    1. Produce his application for appointment and privileges at West Chester Hospital;
    2. Identify and produce all information gathered by West Chester Hospital to confirm the information contained in the application for privileges;
    3. Identify and produce all information gathered by West Chester Hospital during the course of Dr. Durrani's appointment relating to quality of care and professional ethics; and
    4. Identify all Board and/or Management decisions with respect to appointments and privileges of Dr. Durrani at West Chester Hospital.
**ANSWER:**

10. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.
    A) West Chester Medical Center;
    B) Children's Hospital Cincinnati;
    C) Christ Hospital;
    D) Good Samaritan Hospital.

**ANSWER:**

11. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against you and Dr. Durrani and/or CAST, and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

12. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against you and Dr. Durrani and/or CAST, and/or that have been brought to the attention of you, your insurance company(ies), your lawyers and/or your representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*

**ANSWER:**

13. Identify the exact number of complaints, including but not limited to patient complaints, that you have received concerning Dr. Durrani related to failed surgeries, unnecessary surgeries, malpractice, negligence, fraud and/or hardware failure.

**ANSWER:**

14. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

**ANSWER:**

15. Identify all surgical procedures – *by name and CPT billing code* – that Defendant Durrani ever performed on Laura Kranbuhl-McKee.

**ANSWER:**

16. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

**ANSWER:**

17. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:

    1. Details of each person's education, training, qualifications, and background in his or her field of expertise;

    2. The substance of the facts and opinions to which each such expert witness is expected to testify; and

    3. A summary of the grounds for each such opinion of each such expert witness.

**ANSWER:**

18. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

19. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

20. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Laura Kranbuhl-McKee in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

21. Please state whether you, your agents, attorneys, or employees have performed surveillance on Laura Kranbuhl-McKee in which you have made an audio or video recording and/or a transcript or notes of Laura Kranbuhl-McKee. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

22. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Laura Kranbuhl-McKee was negligent, failed to mitigate her damages, and/or did not act with reasonable care in his own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

23. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

24. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

25. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Laura Kranbuhl-McKee that were present with Defendant Durrani during each occasion he interacted with Laura Kranbuhl-McKee.

**ANSWER:**

26. Does West Chester Hospital have any policies or procedures for informing patients when it is suspected that an adverse event such as a hardware failure has occurred during and/or after surgery? And if so, produce a copy of the policy.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all documents that support your defense that Dr. Durrani properly obtained informed consent from Laura Kranbuhl-McKee concerning the use of BMP-2.
**ANSWER:**

2. Produce a copy of each insurance policy that may provide coverage related to this lawsuit.
**ANSWER:**

3. Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.
**ANSWER:**

4. Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Laura Kranbuhl-McKee including but not limited to all prior versions and/or iterations of all billing records.
**ANSWER:**

5. Please produce copies of all statements of any person related to Laura Kranbuhl-McKee which you have in your possession or control.
**ANSWER:**

6. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.
**ANSWER:**

7. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.
**ANSWER:**

8. Please produce copies of all correspondence between the Plaintiffs and the Defendants, or between any agent of the Defendants and the Plaintiffs.
**ANSWER:**

9. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.
**ANSWER:**

10. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.
**ANSWER:**

11. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Laura Kranbuhl-McKee after her surgeries.
**ANSWER:**

12. Please produce all documents which form the basis of the relationship between Laura Kranbuhl-McKee and the Defendants, or are otherwise related thereto.
**ANSWER:**

13. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.
**ANSWER:**

14. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.
**ANSWER:**

15. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.
**ANSWER:**

16. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.
**ANSWER**:

17. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
**ANSWER**:

Respectfully submitted,

_____
Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

LAURA KATHLEEN
KRANBUHL-McKEE, AND HER
HUSBAND, SAM McKEE IV

|   |   |   |
|---|---|---|
| | : | Case No. |
| | : | Judge |
| | : | |
| Plaintiff, | : | **PLAINTIFFS' FIRST DISCOVERY** |
| | | **TO DR. DURRANI & CAST, INC.** |
| | : | **SERVED WITH COMPLAINT** |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ABUBAKAR ATIQ DURRANI, M.D., et al. | : | |
| | : | |
| Defendants. | : | |

Come now the Plaintiffs, by and through counsel, hereby request that Defendants respond to the following First Set of Requests for Admission, Interrogatories and Requests for Production to Defendants Defendants Durrani and C.A.S.T. in accordance with the Ohio Rules of Civil Procedure.

PLEASE BE ADVISED THAT REFERENCING DOCUMENTS 'PREVIOUSLY FURNISHED TO PLAINTIFF'S COUNSEL' IN OTHER LITIGATION AND/OR 'COLLATERAL LITIGATION' IS NON-RESPONSIVE AND INSUFFICIENT. YOU ARE REQUIRED TO PRODUCE THE DOCUMENTS FOR THIS CASE, EVEN THOUGH SIMILAR, OR EVEN THE SAME DOCUMENTS MAY HAVE ALREADY BEEN PRODUCED IN OTHER LITIGATION.

### REQUESTS FOR ADMISSION

1. Admit that Defendant Durrani's privileges were suspended at West Chester Medical Center.
   **ANSWER:**

2. Admit that Defendant Durrani's privileges were terminated at Children's Hospital.
   **ANSWER:**

3. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Children's Hospital in lieu of having his privileges revoked.
   **ANSWER:**

4. Admit that Defendant Durrani received information from Children's Hospital indicating that if he did not voluntarily resign his privileges at Children's Hospital, then his privileges would be terminated.
   **ANSWER:**

5. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Children's Hospital.
   **ANSWER:**

6. Admit that Defendant Durrani's privileges were terminated at Christ Hospital.
   **ANSWER:**

7. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Christ Hospital in lieu of having his privileges revoked.
   **ANSWER:**

8. Admit that Defendant Durrani received information from Christ Hospital indicating that if he did not voluntarily resign his privileges at Christ Hospital, then his privileges would be terminated.
   **ANSWER:**

9. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Christ Hospital.
   **ANSWER:**

10. Admit that Defendant Durrani's privileges were terminated at Good Samaritan Hospital.
    **ANSWER:**

11. Admit that Defendant Durrani was given an option of voluntarily resigning his privileges at Good Samaritan Hospital in lieu of having his privileges revoked.
    **ANSWER:**

12. Admit that Defendant Durrani received information from Good Samaritan Hospital indicating that if he did not voluntarily resign his privileges at Good Samaritan Hospital, then his privileges would be terminated.
    **ANSWER:**

13. Admit that Defendant Durrani was required to defend his privileges before the Medical Executive Committee of Good Samaritan Hospital.
**ANSWER:**

14. Admit that Laura Kranbuhl-McKee was not properly informed of the use of BMP-2 in her surgeries. If you deny, produce the informed consent paperwork wherein you obtained informed consent from Laura Kranbuhl-McKee to use BMP-2.
**ANSWER:**

## INTERROGATORIES

1. Identify all hospitals, hospital facilities, surgical facilities, surgery centers, outpatient care clinics and medical care clinics in which you have held privileges for the past twenty (20) years. For each facility or institution listed, please identify the name, address, location, dates during which you held privileges and reasons for your resignation, revocation or termination of privileges.
**ANSWER:**

2. Identify all dates upon which Defendant Durrani's privileges ended at the following institutions. For each institution, please identify the beginning and ending dates of privileges, and explain the reason(s) Dr. Durrani no longer has privileges at the facility(ies). If any suspension occurred during the privilege tenure, identify the length of the suspension and the reason(s) therefore.
A) West Chester Medical Center;
B) Children's Hospital Cincinnati;
C) Christ Hospital;
D) Good Samaritan Hospital.

**ANSWER:**

3. With respect to each explanation for each facility listed in Interrogatory 2, identify the person(s) with whom you interacted and/or received information concerning the change in privilege status, briefly explaining what you were told regarding your privilege(s), and furthermore, explain your response(s):

A) West Chester Medical Center:
    a.  Person(s):_____
    b.  What you were told:_____
    c.  Response:_____
B) Children's Hospital Cincinnati:
    a.  Person(s):_____
    b.  What you were told:_____

       c.  Response: _____

C) Christ Hospital:
       a.  Person(s):_____
       b.  What you were told:_____
       c.  Response:_____

D) Good Samaritan Hospital:
       a.  Person(s)_____
       b.  What you were told:_____
       c.  Response:_____

**ANSWER:**

4. State whether you have ever been to required to make a report to the Ohio Board of Medical Licensure and/or the National Practitioner Databank, settlement of any written claims or lawsuits made against you. If the answer is "Yes," please state the date the report was made, to whom the report was made, and a description of the claim or suit.

**ANSWER:**

5. Identify all other hospitals and hospital facilities from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

6. Identify all surgical facilities, surgery centers, outpatient care facilities, clinics, and medical care facilities of any kind, from which your privileges have been terminated and/or suspended; provide the dates of termination or suspension; and furthermore, explain the reason(s) for termination or suspension, identifying whether or not the termination or suspension was voluntary or involuntary, and also identifying the factual, medical and/or legal basis for the termination or suspension.

**ANSWER:**

7. Identify – *by Court, jurisdiction, case number, and all party names* – all CIVIL LAWSUITS that have been brought against Defendants Durrani and/or CAST, and further provide a brief summary of the allegations and claims against each so that Plaintiffs can make a determination of whether the other lawsuits are substantially similar to the present lawsuit.

**ANSWER:**

8. Identify – *by attorney name and date of notice* – all NON-LITIGATED CLAIMS that have been made against Defendant Durrani and/or CAST that have been brought to the attention of Dr. Durrani's and/or CAST's insurance company(ies), lawyers and/or

representatives, including but not limited to the receipt of "180 day" letters, and further provide a brief summary of the claims and demands made against you so that Plaintiffs can make a determination of whether the issues and claims are substantially similar to the present lawsuit.

*Please Note: To the extent your response to this Interrogatory may require the disclosure of private information such as former patient names, you can submit the information for an in camera review and/or contact Plaintiffs' counsel BEFORE the time for answering this discovery has passed so that counsel can meet and confer about the terms and conditions of a protective order to ensure patient privacy. However completely avoiding answering this question with a claim of or objection based on "privacy" without first contacting Plaintiffs' counsel and attempting to meet and confer will result in a Motion pursuant to CR 37.*
**ANSWER:**

9. Identify the exact number of Defendant Durrani's patients that have had screws come loose from the original surgical implant location.

   **ANSWER:**

10. Identify the number of Defendant Durrani's patients that have had surgically implanted hardware fail and/or come loose from the original surgical implant location.

    **ANSWER:**

11. Identify all surgical procedures – *by name <u>and</u> CPT billing code* – that Defendant Durrani ever performed on Chrsitine Geralds.

    **ANSWER:**

12. What is the current name, address, social security number and date of birth of the person(s) answering these Interrogatories, and, if applicable, any other or prior names (maiden, married, etc.) used by or by which the answerer has been known.

    **ANSWER:**

13. Please identify fully (give name, address, phone number) all experts whom you intend to call as a witness to testify at the trial of this matter, and with respect to each expert witness, provide:

    1. Details of each person's education, training, qualifications, and background in his or her field of expertise;
    2. The substance of the facts and opinions to which each such expert witness is expected to testify; and
    3. A summary of the grounds for each such opinion of each such expert witness.

    **ANSWER:**

14. Please state whether any expert (whether listed in your answer to the preceding Interrogatory or not) has submitted a written report concerning facts or opinions related to this action, and if so, produce a copy of the report.

**ANSWER:**

15. If the preceding Interrogatory was answered affirmatively, please state the name of the expert, the date of the report and the name and address of the person having custody of the report. Please attach a copy of each report listed in your answers to this discovery, or within ten (10) days of receipt of the report if you receive the report after responding herein.

**ANSWER:**

16. Please state whether you, your agents, attorneys, or representatives have had any conversations or meetings with Laura Kranbuhl-McKee in which you have made an audio or video recording and/or a transcript or notes of the meeting. If so, give the date of each meeting, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes of the meeting or conversations.

**ANSWER:**

17. Please state whether you, your agents, attorneys, or employees have performed surveillance on Laura Kranbuhl-McKee in which you have made an audio or video recording and/or a transcript or notes of Chrsitine Geralds. If so, give the date of each incident of surveillance, the names and addresses of those present and provide a copy of any recording (audio or video) or transcript or notes.

**ANSWER:**

18. Please identify, by names, addresses, and occupations or professions of all persons who have stated orally or in writing – AS OF THE DATE THIS DISCOVERY WAS SERVED – that Laura Kranbuhl-McKee was negligent, failed to mitigate her damages, and/or did not act with reasonable care in her own care and treatment, and briefly describe the factual reason(s) for the basis of the belief(s).

**ANSWER:**

19. If you, your attorney, or anyone acting on your behalf, have statements or recordings from any witnesses other than yourself, identify by name, address and telephone number each such witness, the date of said statement, the substance of said statement, and state whether such statement was written or oral and the method by which the statement was elicited, and produce a copy of the statement or recording.

**ANSWER:**

20. Please identify, list and produce a copy of all policies of insurance that may provide coverage related to the claims or defenses in this lawsuit, the extent and duration of the

coverage, the amount of coverage, and identify whether the insurance has expressed a "reservation of rights" to you.

**ANSWER:**

21. Identify the current address, title/position and telephone number of all persons that are "found in the medical records" of Laura Kranbuhl-McKee that were present with Defendant Durrani during each occasion he interacted with Laura Kranbuhl-McKee.

**ANSWER:**

22. Identify each employee of you and CAST from March 1, 2009 - the present, by name, current address, telephone number, and provide the length of employment of each person identified by start date and termination of employment, and produce their complete employment and disciplinary files. For those persons identified who are no longer (or not currently) employed by you or CAST, state the reason(s) why the person is no longer an employee, whether the separation from employment was voluntary on the part of the employee, and produce their complete employment and disciplinary files.

**ANSWER:**

23. Identify each person(s) who provided medical care, medical treatment and/or medical related and/or support services of any kind whatsoever to Laura Kranbuhl-McKee at your direction, while in your presence, and/or while at CAST, including but not limited to medical care, medical advice, medical warnings, nursing care, pre-operative care, pre-operative information exchange, obtaining informed consent, ancillary services, laboratory analysis, pathology analysis, radiology analysis, obtaining history and physical, triage, therapy, rehabilitative services, and obtaining and/or verifying insurance information, and briefly described the care or service provided.

**ANSWER:**

24. Please separately identify the total number of surgeries Defendant Durrani performed in 2008, 2009, 2010 and 2011.

**ANSWER:**

25. Please separately identify the total number of patients Defendant Durrani treated in 2008, 2009, 2010 and 2011.

**ANSWER:**

26. Explain the reason(s) Defendant Durrani told Laura Kranbuhl-McKee her surgeries were "necessary."

**ANSWER:**

27. Does CAST have any policies or procedures for informing patients when it is suspected that an adverse event such as an infection has occurred during surgery? And if so, produce a copy of the policy.

**ANSWER**:

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Produce Dr. Durrani's tax returns for the years 2008 – present.
**ANSWER:**

2.  Produce CAST's tax returns for the years 2008 – present time.
**ANSWER:**

3.  Produce a copy of each insurance policy that may provide coverage related to this lawsuit
**ANSWER:**

4.  Please produce a complete, authenticated, certified, bates stamped copy of all medical records for Laura Kranbuhl-McKee THAT ARE CURRENTLY IN THE POSSESSION OF CAST AND/OR DR. DURRANI.
**ANSWER:**

5.  Please produce copies of all medical records of Laura Kranbuhl-McKee that were in your possession as of her first surgery.
**ANSWER:**

6.  Please produce the actual radiological films, x-rays or media (not just the reports) of Laura Kranbuhl-McKee that are in your possession.
**ANSWER:**

7.  Please produce all documents and information not otherwise included in Laura Kranbuhl-McKee's "chart" or not heretofore requested or produced, which relate to the interaction of Laura Kranbuhl-McKee and Abubakar Durrani, M.D. and/or CAST, including but not limited to consent forms, preauthorization, billing records, insurance paperwork, reimbursement and payment paperwork, hand written notes, dictation, recordings, modified, altered and/or amended operative notes or reports, memos, notes, peer review, and any instance in which the interaction of Laura Kranbuhl-McKee and Abubakar Durrani, M.D. and/or CAST was reviewed, analyzed and/or memorialized in any way.
**ANSWER:**

8.  Please produce copies of all documents, demonstrative evidence and/or photographs that you intend to introduce as evidence at trial of this lawsuit, or for any other purpose at trial or for depositions in this matter.
**ANSWER:**

9.  Please produce a certified, authenticated, certified, bates stamped complete set of billing records of Laura Kranbuhl-McKee including but not limited to all prior versions and/or iterations.
**ANSWER:**

10. Please produce copies of all statements of any person related to Laura Kranbuhl-McKee which you have in your possession or control.
    **ANSWER:**

11. Please produce a copy of the curriculum vitae for all expert witnesses whom you intend to call at the trial of this matter.
    **ANSWER:**

12. Please produce a copy of all written opinions of any experts which you intend to call as witnesses in the trial of this matter.
    **ANSWER:**

13. Please produce copies of all correspondence between the Plaintiffs and the Defendant, or between any agent of the Defendant and the Plaintiffs.
    **ANSWER:**

14. Please produce for copying any written or recorded statements identified in this discovery, or in your responses to this discovery.
    **ANSWER:**

15. Please produce all memoranda, notes, diaries, calendars, logs, or other documents known to the Defendant which contains information related in any way to the allegations of the Complaint in this litigation, or to your Answer, including but not limited to any phone log or messages.
    **ANSWER:**

16. Please produce all documents which memorialize your efforts to care for, follow up, or provide post-operative care to Laura Kranbuhl-McKee after her surgeries.
    **ANSWER:**

17. Please produce all documents which form the basis of the relationship between Laura Kranbuhl-McKee and the Defendants, or are otherwise related thereto.
    **ANSWER:**

18. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to the procedure(s), technique(s), product(s), device(s), equipment, and materials of the same type utilized by Defendant Durrani on Laura Kranbuhl-McKee.
    **ANSWER:**

19. Produce a copy of any and all publications, presentations, literature, research, and any and all materials published and/or submitted by Defendant Atiq Durrani to any person(s) or company which in any way relate to, or use information derived or compiled, in whole or in part from the procedure(s), technique(s), product(s), device(s), equipment, and materials utilized by Defendants on Laura Kranbuhl-McKee.

**ANSWER:**

20. Produce a copy of any and all contracts or agreements between Defendant Durrani and any other Defendant in this case.
    **ANSWER:**

21. Please produce a copy of any and all applications for privileges that Defendant Durrani has made to any hospital, surgical center or other healthcare institution or provider in the last ten (10) years, including any and all attachments to such application.
    **ANSWER:**

22. Please produce a copy of Defendant Durrani's application for medical and/or staff privileges at West Chester Hospital, including all attachments to such application.
    **ANSWER:**

23. Produce all documents that relate to any suspension, revocation or termination of your privileges from:
    a. West Chester Medical Center;
    b. Children's Hospital Cincinnati;
    c. Christ Hospital;
    d. Good Samaritan Hospital
    e. Any other hospital, surgery center and/or medical care facility identified by you in response to this discovery.

    **ANSWER:**

24. Produce any and all policy or procedure manuals that relate in any way to any of the issues in this case.
    **ANSWER:**

25. Produce the video surveillance audio, video and images files in electronic format, or as otherwise stored by you, for all dates that Laura Kranbuhl-McKee was present at all CAST locations.
    **ANSWER:**

26. Produce a privilege log – identifying all documents over which you claim any privilege related to these discovery requests – by author, date, and recipient, and furthermore, identify the specific basis for your claim of privilege.
    **ANSWER:**

Respectfully submitted,

Eric C. Deters (38050)

Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com



MARY L. SWAIN                                              CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME _Ct Corporation System_
ADDRESS _1300 East 9th Street_
_Suite 1010_
CITY _Cleveland_ STATE _OH_ ZIP _44114_

Today's Date: _2/28/13_                  Case No.: _____

Plaintiff: _McKee et_        -VS-     Defendant: _Abubakar Atiq Durrani, M.D et al_

PRECIPE FOR SERVICE
COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ☐ Ordinary Mail
- ☑ Certified Mail
- ☐ Appointed Process Server
- ☐ Personal Service by Butler County Sheriff
- ☐ Foreign County Sheriff
- ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

_All Filings — Complaint + Jury Demand_
_w/ Discovery Demand_

REQUESTING ATTORNEY:
NAME _Eric Deters (38050)_
ADDRESS _5247 Madison Pike_
CITY _Independence_ STATE _KY_ ZIP _41051_
PHONE _859-363-1900_

MARY L. SWAIN



CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME _CT Corporation System_
ADDRESS _1300 East 9th Street_
_Suite 1010_
CITY _Cleveland_          STATE _OH_    ZIP _44114_

Today's Date: _2/28/13_                    Case No.: _____

Plaintiff: _McKee  et_          -VS-   Defendant: _Abyubakar Atiq_
                                                   _Durrani, M.D. et al_

## PRECIPE FOR SERVICE
### COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

❑ Ordinary Mail                ❑ Personal Service by Butler County Sheriff
☑ Certified Mail               ❑ Foreign County Sheriff
❑ Appointed Process Server     ❑ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

_ALL Filings  — Complaint & Jury Demand_
_w/ Discovery Demand_

REQUESTING ATTORNEY:
NAME: _Eric Deters (38050)_
ADDRESS: _5247 Madison Pike_
CITY _Independence_   STATE _KY_  ZIP _41051_
PHONE: _859-363-1900_

MARY L. SWAIN    CLERK OF COURTS

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME Abubaka Durrani, M.D.
ADDRESS 4555 Lake Forest Dr.
Suite 150
CITY Cincinnati  STATE OH  ZIP 45242

Today's Date: 2|28|13

Case No.: _____

Plaintiff: McKee, et al  -VS-  Defendant: Abubakar Atiq Durrani, M.D. et al

## PRECIPE FOR SERVICE
## COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO

TYPE OF SERVICE:

- ☐ Ordinary Mail
- ☑ Certified Mail
- ☐ Appointed Process Server
- ☐ Personal Service by Butler County Sheriff
- ☐ Foreign County Sheriff
- ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

All filings  Complaint & Jury Demand
w/ Discovery Demand

REQUESTING ATTORNEY:
NAME: Eric Deters (380 sp.)
ADDRESS: 5247 Madison Pike
CITY Independence  STATE KY  ZIP 41051
PHONE: 859) 363-1900

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

**MARY L. SWAIN**  <u>CLERK OF COURTS</u>

PROVIDE SERVICE TO THIS INDIVIDUAL:
NAME _GH & R Business Svcs_
ADDRESS _511 Walnut Street_
_1900 Fifth Third Center_
CITY _Cincinnati_ STATE _OH_ ZIP _45202_

Today's Date: _2/28/13_          Case No.: _____

Plaintiff: _McKee, et al_     -VS-     Defendant _Abubakar Durrani MD_
                                                        _et al_

**PRECIPE FOR SERVICE**
**COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**

TYPE OF SERVICE:

- ☐ Ordinary Mail      ☐ Personal Service by Butler County Sheriff
- ☑ Certified Mail      ☐ Foreign County Sheriff
- ☐ Appointed Process Server  ☐ Residence Service

THE CLERK OF COURTS IS INSTRUCTED TO SERVE THE FOLLOWING DOCUMENTS:

_All filings    Complaint + Jury Demand_
_w/ Discovery Demand_

REQUESTING ATTORNEY:
NAME: _Eric Peters (38050)_
ADDRESS: _5247 Madison Pike_
CITY _Independence_ STATE _KY_ ZIP _41051_
PHONE: _859 363 1900_

GOVERNMENT SERVICES CENTER ● 315 HIGH STREET ● SUITE 550 ● HAMILTON, OHIO 45011-6016

BUTLER COUNTY CLERK OF COURTS
www.butlercountyclerk.org

```
✳ ✳ ✳  Communication Result Report ( Feb. 28. 2013  5:40PM ) ✳ ✳ ✳
```
                                                                    1}
                                                                    2}

Date/Time: Feb. 28. 2013  5:01PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 1151 | Memory TX | 15138873966 | P. 39 | OK | |

```
--------------------------------------------------------------------------------
Reason for error
    E. 1) Hang up or line fail             E. 2)  Busy
    E. 3) No answer                        E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size
```

IN THE COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO
: CASE NO:

LAURA KATHLEEN
KRANBUHL-McKEE, AND HER
HUSBAND, SAM McKEE IV
Plaintiff, :
vs. :                                    DOCKET STATEMENT

ABUBAKAR ATIQ DURRANI, M.D., et al
Defendant :
: : : : : : : :
Type of Claim
( x ) Professional Tort
( ) Product Liability
( ) Other Torts
( ) Workers Compensation
( ) Foreclosure
( ) Administrative Appeal
( ) Other Civil
Do you know any reason this matter should not be set for report within one hundred
eighty (180) days of this date? Yes_____No _x____
If yes, what are the grounds?

February 28, 2013                    Eric C. Deters (38056)
                                     Attorney for Plaintiffs
                                     ERIC C. DETERS & PARTNERS
                                     5247 Madison Pike
                                     Independence, KY 41051
                                     Phone: 859.363.1900
                                     Fax: 859.363.1444
                                   . Email: eric@ericdeters.com

**IN THE COURT OF COMMON PLEAS, BUTLER COUNTY, OHIO**
: CASE NO:


LAURA KATHLEEN
KRANBUHL-McKEE, AND HER
HUSBAND, SAM McKEE IV
Plaintiff, :
vs. :                                          **DOCKET STATEMENT**

ABUBAKAR ATIQ DURRANI, M.D., et al
Defendant :
: : : : : : :
Type of Claim
( x ) Professional Tort
( ) Product Liability
( ) Other Torts
( ) Workers Compensation
( ) Foreclosure
( ) Administrative Appeal
( ) Other Civil
Do you know any reason this matter should not be set for report within one hundred
eighty (180) days of this date? Yes_____No__x____
If yes, what are the grounds?

_____       _____

February 28, 2013                              Eric C. Deters (38050)
                                               Attorney for Plaintiffs
                                               ERIC C. DETERS & PARTNERS
                                               5247 Madison Pike
                                               Independence, KY 41051
                                               Phone: 859.363.1900
                                               Fax: 859.363.1444
                                               Email: eric@ericdeters.com

Eric C. Deters (0038050)

## IN THE COURT OF COMMON PLEAS
## BUTLER COUNTY, OHIO
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| LAURA KATHLEEN | : | |
| KRANBUHL-McKEE, AND HER | : | |
| HUSBAND, SAM McKEE IV | : | |
|  | : | Judge |
|  | : | |
|  | : | |
| Plaintiffs, | : | : |
|  | : | |
| v. | : | |
|  | : | |
| ABUBAKAR ATIQ DURRANI, M.D., et al: | |
|  | | |
| Defendants. | | |

---

### MOTION FOR EXTENSION OF TIME TO FILE AN AFFIDAVIT OF MERIT

Come now the Plaintiffs, by and through Counsel, and move this Court to grant an extension of time to file an affidavit of merit as required under Ohio Rule of Civil Procedure 10(D)(2). Dr. Durrani and CAST have failed to timely produce complete and accurate medical and billing records of similarly situated Plaintiffs, and Plaintiffs herein and their consultants require additional time to confirm the records and billing are complete, and for the Plaintiffs' medical expert to complete the review of the records. This process must be completed prior to the expert signing the affidavit of merit. This is being filed now to preserve all applicable statutes of limitation, and based on Counsel's experience in claims against Dr. Durrani, the nurse review and the preliminary document review with the expert indicate the claim is supported by Ohio law. Plaintiffs respectfully request a ninety (90) day extension to file their affidavit of merit.

Respectfully submitted,

/s/ Eric C. Deters
Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, Kentucky 41051
(859) 363-1900
eric@ericdeters.com

# Timothy Marshall Complaint

FILED

**IN THE COURT OF COMMON PLEAS**
2013 FEB 19 PM 4: 47
**BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

TIMOTHY MARSHALL, AND HIS WIFE
SHELLY MARSHALL
60 Jones Road
Corinth, Kentucky 41010

     Plaintiffs,

v.

ABUBAKAR ATIQ DURRANI, M.D.,
4555 LAKE FOREST DR., Suite 150
CINCINNATI, OH 45242
(Serve via Certified Mail)

And

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.
652 RODEO DRIVE
ERLANGER, KY 41018-1279

SERVE: JULIE HARTMANN
650 RODEO DRIVE
ERLANGER, KY 41018-1279
(Serve via Certified Mail)

And

WEST CHESTER HOSPITAL, LLC
7700 UNIVERSITY DRIVE
WEST CHESTER, OH 45069

SERVE: GH&R BUSINESS SVCS., INC.
511 WALNUT STREET
1900 FIFTH THIRD CENTER
CINCINNATI, OH 45202

And

UC HEALTH

Case No.

Judge

**COMPLAINT & JURY DEMAND**

FILED BUTLER CO.
COURT OF COMMON PLEAS
FEB 19 2013
MARY L. SWAIN
CLERK OF COURTS

IMAGED

Serve: CT Corporation System          :
1300 East 9th St. Ste 1010            :
Cleveland, OH 44114                    :
(Serve via Certified mail)

        Defendants.                   :

---

Comes now Plaintiff, Timothy Marshall, and for his Complaint and jury demand states as follows:

## JURISDICTION & VENUE

1.      At all times relevant, Plaintiff, Timothy Marshall (hereinafter "Mr. Marshall", was a resident of and domiciled in the Commonwealth of Kentucky.

2.      At all times relevant, Plaintiff, Sally Marshall (hereinafter "Mrs. Marshall", was a resident of and domiciled in the Commonwealth of Kentucky.

3.      At all times relevant, Timothy Marshall was married to Shelly Marshall.

4.      At all times relevant, Defendant Dr. Abubakar Atiq Durrani (hereinafter "Dr. Durrani") was licensed to and did in fact practice medicine in the State of Ohio.

5.      At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio.

6.      At all times relevant, West Chester Hospital, LLC (hereinafter "West Chester Hospital"), was a corporation authorized to transact business and perform medical services in the State of Ohio and operating under the trade name West Chester Hospital.

7.      At all times relevant, Defendant UC Health Inc., was a duly licensed corporation

which included, owned, operated and/or managed multiple hospitals including, but not limited to West Chester Hospital, and which shared certain services, profits, and liabilities of hospitals including West Chester.

8.     At all times relevant herein, West Chester Medical Center, Inc., aka West Chester Hospital held itself out to the public, and specifically to Plaintiffs, as a hospital providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

9.     The amount in controversy exceeds the jurisdictional threshold of this Court.

10.    The subject matter of the Complaint arises out of medical treatment by the Defendants in Bulter County, Ohio. This Court is thus the proper venue to grant the Plaintiff the relief he seeks.

## BACKGROUND

11.    Plaintiff incorporates by reference each and every allegation contained within the above paragraphs.

12.    In July of 2012, Mr. Marshall consulted with Dr. Durrani because he was having back pain.

13.    Dr. Durrani subsequently recommended immediate surgery for lumbar spinal stenosis and spondylosis, degenerative lumbar scoliosis, and symptoms of neurogenic claudication.

14.    Mr. Marshall relied on Dr. Durrani's assessment and elected to have back surgery on July 23, 2012.

15.    On July 23, 2012, Dr. Durrani performed the surgery at West Chester Hospital

and, at the time, Mr. Marshall was 6'2'' tall and weighed 422 pounds.

16.  During the course of the surgery, a code blue was called twice.

17.  Following surgery, Mr. Marshall also experienced renal failure and hypotension.

18.  Mr. Marshall remained hospitalized following the surgery and on July 27, 2012 he was placed on continuous renal replacement therapy.

19.  A neurology consult on August 2, 2012, diagnosed Mr. Marshall with encephalopathy and was confirmed on August 4, 2012 through electroencephalogram.

20.  On August 15, 2012, Mr. Marshall was discharged from West Chester Hospital and was admitted to HealthSouth Drake rehabilitation.

21.  On August 26, 2012, Mr. Marshall was transferred back to West Chester Hospital due to an increase in drainage from the surgical site, a fever of 102.8, and blood pressure of 108/53.

22.  Dr. Durrani performed a second surgery on August 27, 2012 for irrigation and debridement of the lumbar wound and placement of a deep drain in the lumbar wound.

23.  Mr. Marshall returned to West Chester Hospital on September 4, 2012 and was diagnosed on September 5, 2012 with Methicillin-resistant Staphylococcus aureus ("MRSA") and Methicillin-sensitive Staphylococcus aureus ("MSSA").

24.  Upon information and belief, Dr. Durrani's dog "Hank" also had MRSA at or near the same time as it was transferred to Mr. Marshall.

25.  On September 23, 2012, Mr. Marshall was again admitted to West Chester Hospital for pancytopenia, secondary to antibiotic use and/or infection.

26.     Mr. Marshall returned to West Chester Hospital on October 19, 2012 with increased incisional drainage and fluid collection throughout his lumbar spine area on the dorsal side.

27.     On October 22, 2012, Mr. Marshall underwent yet another operation for irrigation and debridement of the lumbar wound and evacuation of the fluid collection. Two drains were placed.

28.     Defendant Durrani is an employee, agent, servant, member or owner of Defendant CAST, where Mr. Marshall was treated during the course of events described above.

29.     "Hank" was present at all office visits at CAST wherein Dr. Durrani cared for and treated Mr. Marshall.

30.     Upon information and belief, West Chester Hospital has received other complaints about Dr. Durrani.

## COUNT I - NEGLIGENCE OF DOCTOR DURRANI

31.     Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs.

32.     Defendant Dr. Durrani owed his patient, Mr. Marshall, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

33.     Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Mr.

Marshall, including but not limited to improper selection for surgery, improper performance of the surgery, and improper follow up care addressing a patient's concerns.

34. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant Dr. Durrani, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT II - NEGLIGENCE OF CAST

35. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

36. Defendant CAST owed its patient, Mr. Marshall, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

37. Defendant CAST breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Mr. Marshall.

38. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant CAST, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress,

humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III - VICARIOUS LIABILITY OF CAST

39.     Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

40.     At all times relevant, Defendant Dr. Durrani was a shareholder, director, officer, agent, and/or employee of CAST.

41.     Defendant Dr. Durrani was performing within the scope of his employment with CAST during the care and treatment of Mr. Marshall.

42.     Defendant CAST is responsible for harm caused by acts of its employees for conduct that was within the scope of employment under the theory of respondeat superior.

43.     Defendant CAST is vicariously liable for the negligent acts of Defendant Dr. Durrani alleged in this Complaint.

44.     As a direct and proximate result of Defendant CAST's acts and omissions, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT IV – NEGLIGENT HIRING,  RETENTION, CREDENTIALING & SUPERVISION BY CAST, WEST CHESTER HOSPITAL & UC HEALTH

45.     Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

46.     Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

47.     Defendants were in a unique position to control, monitor and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiffs to exercise said control.

48.     Upon information and belief, Defendant Durrani had medical privileges terminated, revoked, suspended or acted upon negatively at his places of previous employment or places at which he held privileges, as a result of misconduct, substandard care, medical negligence and/or negative outcomes, including Children's Hospital and Christ Hospital.

49.     Defendants owed a duty to its patients to exercise reasonable care in the hiring, selection, retention, supervision, monitoring, oversight and granting of privileges to physicians.

50.     Defendants breached their duties by hiring and/or granting privileges to Defendant Durrani and allowing Defendant Durrani to maintain privileges, when they knew or should have known that Defendant Durrani was incompetent and/or that his privileges had been terminated, revoked, suspended or acted upon negatively at one or more of his previous places of employment or places at which he held privileges.

51.     Defendants also breached this duty to Plaintiffs by not controlling the actions of the residents, doctors, nurses, and those with privileges, during his medical treatment.

52.     As a direct and proximate result of the failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges at CAST and West Chester Hospital, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment. severe and grievous injuries.

## COUNT V – BATTERY BY DEFENDANT DURRANI

53.     Plaintiffs incorporate, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

54.     Defendant Durrani committed battery against Mr. Marshall by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent for Mr. Marshall, and by the failure to provide this information to Plaintiffs.

55.     Plaintiffs would not have agreed to the surgery if they knew that the surgery was unnecessary and not indicated.

56.     As a direct and proximate result of the aforementioned battery by Defendant, Plaintiffs were caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VI – FRAUD BY DURRANI, WEST CHESTER HOSPITAL & UC HEALTH

57.     Plaintiffs incorporate, adopt and allege those allegations contained in the above

paragraphs.

58.     Defendants made material, false representations to Plaintiffs and their insurance
        company related to Mr. Marshall's care and treatment, as outlined in this
        Complaint.

59.     Such false representations include, inter alia, stating that the surgery was
        imminently necessary; that further conservative treatment was unnecessary and
        futile; that the surgery would be simple; that Mr. Marshall would be walking
        immediately after the surgery; that the procedures and surgery billing to the
        insurance company was accurate and medically indicated; that the surgery was
        successful; that Mr. Marshall was medically stable and ready to be discharged.

60.     Defendants knew or should have known such representations were false, and/or
        made the misrepresentations with such utter disregard and recklessness as to
        whether they were true or false that knowledge of their falsity may be inferred.

61.     Defendants made the misrepresentations both before and after July 23, 2012 with
        the intent of misleading Plaintiffs and their insurance company into relying upon
        them.

62.     Plaintiffs and their insurance company justifiably relied upon the material
        misrepresentations of Defendants when making the decision to undergo and pay
        for the surgery performed on July 23, 2012.

63.     As a direct and proximate result of the aforementioned, Mr. Marshall did undergo
        surgery on July 23, 2012, which was paid for in whole or in part by the Marshall's
        insurance company, and sustained grievous injuries, paralysis, new and different
        pain, prolonged pain and suffering, emotional distress, humiliation, discomfort,

loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64.     Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

65.     Defendants intended to, and in fact, caused emotional distress to the Plaintiffs.

66.     Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

67.     Defendants' conduct was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress.

68.     The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT VIII – VICARIOUS LIABILITY OF WEST CHESTER HOSPITAL & UC HEALTH

69.     Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

70.     At all times relevant, Dr. Durrani was an agent, employee, and/or performed services at the direction of, and/or for the benefit of West Chester Hospital AND UC Health.

71.     Dr. Durrani was performing within the scope of his employment when dealing

with the Plaintiffs and their insurance company regarding the care of Mr.

Marshall.

72.     Defendants are responsible for harm caused by acts of its agents and employees

for conduct that were within the scope of employment under the theory of

respondeat superior.

73.     Defendants are vicariously liable for the acts and omissions of Defendant Dr.

Durrani as alleged in this Complaint.

74.     As a direct and proximate result of the acts and omissions of West Chester

Hospital and UC Health, Plaintiffs sustained grievous injuries, paralysis, new and

different pain, prolonged pain and suffering, emotional distress, humiliation,

discomfort, loss of enjoyment of life, and loss of ability to perform usual and

customary activities and Plaintiffs have incurred and will continue to incur

substantial medical expenses and treatment.

## COUNT IX – LOSS OF CONSORTIUM & MEDICAL EXPENSES

75.     Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those

allegations contained in the above paragraphs.

76.     At all times relevant, Plaintiffs Timothy Marshall and Shelly Marshall were

married.

77.     That as a result of the wrongful acts and omissions of the Defendants, Plaintiffs

were caused to suffer, and will continue to suffer in the future, loss of consortium,

loss of society, loss of affection, loss of assistance, and loss of conjugal

fellowship, all to the detriment of Plaintiffs' marital relationship.

78.     That all the aforesaid injuries and damages were proximately caused by the acts

and omissions of the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demands judgment against Defendants on all claims.

Plaintiffs further request:

1.          Costs associated with the disbursement of this action;

2.          Interests;

3.          Punitive damages, not to exceed $50,000,000.00 (fifty million dollars);

4.          Reasonable attorney's fees;

5.          All compensatory damages, not to exceed $5,000,00.00 (five million dollars);

6.          Trial by jury; and

7.          All other relief this court deems fitting and proper.

Respectfully submitted,

Eric C. Deters (38050)
Eric C. Deters & Partners, P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900
(859) 363-1444 (fax)
Eric@ericdeters.com

## JURY DEMAND

Plaintiffs respectfully request a trial by jury.

Eric C. Deters (38050)



# ERIC C. DETERS & PARTNERS, P.S.C.

Attorneys Licensed in
Kentucky, Ohio, Indiana and Florida

Thomas J. Seel
Robert N. Trainor
Andrew W. Green
Mark C. Eppley
Robert L. Raper
Edward A. Clark
Irene Frankenhoff
Larisa I. Schneider
James Y. Moore

Stephanie L. Collins
Crystal D. Pomer
Christopher D. Roach
Brian M. Cable
Jesse A. Shore
Alexander M. Schoultheis
Alise M. Pilson
Gabriel P. Smith
Barrett G. Freeman

Chuck Holbrook (Investigator)
Chad Feller (Investigator)
Kim Moore (Nurse)
Doug Hunter (Worker's Comp Paralegal)
Josh Robinson (Litigation Paralegal)

**Reply To:**

February 19, 2013

Butler County Court of Common Pleas
315 High Street, 5th Floor
Hamilton, Ohio 45011

    **RE:**   **TIMOTHY MARSHALL, et al. V. ABUBAKAR ATIQ DURRANI, M.D., et al.**

Court Clerk:

    Enclosed is an original and two copies of the **Complaint with Jury Demand** for the above-stated case. Please file the original and return the extra file stamped copy in the self-addressed, stamped envelope.

    We would like the Defendants served by certified mail.

    Also enclosed is a check for $400.00 in payment of the filing fee, jury demand fee and certified mail fees.

    Thank you.

                Sincerely,

                Loretta Little
                Assistant to Eric C. Deters

/ll

Encl.

Q:\Marshall, Timothy\Ltr. Clerk 2-19-13.wpd



5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444
1.866.960.HURT
eric@ericdeters.com

19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084
www.ericdeters.com

# Julie Martin, and her husband Stanley Martin Complaint

FILED

Eric C. Deters (0038050)

2013 FEB 19 PM 4: 47

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO
CIVIL DIVISION

MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS

JULIE MARTIN, AND HER HUSBAND,       :
STANLEY J. MARTIN                    :     Case No.
3959 Ashmont Dr.                     :
Erlanger, KY 41018                   :     Judge
                                     :
         Plaintiffs,                 :
                                     :     **COMPLAINT & JURY DEMAND**
                                     :
v.                                   :
                                     :
                                     :
ABUBAKAR ATIQ DURRANI, M.D.,         :     FILED BUTLER CO.
4555 LAKE FOREST DR., Suite 150      :     COURT OF COMMON PLEAS
CINCINNATI, OH 45242                 :
(Serve via Certified Mail)           :     FEB 19 2013
                                     :
And                                  :     MARY L. SWAIN
                                     :     CLERK OF COURTS
CENTER FOR ADVANCED SPINE            :
TECHNOLOGIES, INC.                   :
652 RODEO DRIVE                      :
ERLANGER, KY 41018-1279              :
                                     :
SERVE: JULIE HARTMANN                :
650 RODEO DRIVE                      :
ERLANGER, KY 41018-1279              :
(Serve via Certified Mail)           :
                                     :
And                                  :
                                     :
WEST CHESTER HOSPITAL, LLC           :
7700 UNIVERSITY DRIVE                :
WEST CHESTER, OH 45069               :
                                     :
SERVE: GH&R BUSINESS SVCS., INC.     :
511 WALNUT STREET                    :
1900 FIFTH THIRD CENTER              :
CINCINNATI, OH 45202                 :
                                     :
And                                  :
                                     :
UC HEALTH                            :

1

Serve:  CT Corporation System          :
1300 East 9th St. Ste 1010             :
Cleveland, OH 44114                    :          2 :13  22  0522
(Serve via Certified mail)
                                       :
       Defendants.                     :

Now comes Plaintiffs, JULIE and STANLEY MARTIN, and for their Complaint

with Jury Demand, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.  The incident giving rise to this action occurred in Butler County, Ohio.

2.  At all times relevant, Plaintiff Julie Martin ("Plaintiff") was an individual resident
    and citizen of Kenton County, Kentucky.

3.  At all times relevant, Defendant Dr. Abubakar Atiq Durrani ("Durrani") was
    licensed to and did in fact practice medicine in the State of Ohio and Kentucky.

4.  At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST"),
    was licensed to and did in fact perform medical services in the State of Kentucky,
    and was and is a corporation authorized to transact business in the State of
    Kentucky.

5.  At all time relevant, West Chester Hospital ("West Chester"), registered at the
    time of the incident as West Chester Medical Center, was a corporation
    authorized to transact business and perform medical services in the State of Ohio.

6.  At all times relevant herein, UC Health, Inc. ("UC Health") is and was a duly
    licensed corporation organized and existing under the laws of the State of Ohio
    and having its principal place of business located in the City of Cincinnati,
    County of Hamilton, State of Ohio. The statutory agent for UC Health, Inc. is CT

2

Corporation System, whose mailing address is 1300 East Ninth Street, Cleveland, Ohio 44114.

7.  At all times relevant, Defendant UC Health Inc., was a duly licensed corporation which included, owned, operated and/or managed multiple hospitals including, but not limited to West Chester Hospital, and which shared certain services, profits, and liabilities of hospitals including West Chester.

8.  At all times relevant herein, West Chester Medical Center, Inc., aka West Chester Hospital held itself out to the public, and specifically to Plaintiffs, as a hospital providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

9.  The amount in controversy exceeds the jurisdictional threshold of this Court.

10. The subject matter of the Complaint arises out of medical treatment by the Defendants in Butler and Hamilton County, Ohio and Kenton County, Kentucky.

## BACKGROUND

11. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

12. On or about December 13, 2011, Plaintiff visited with Durrani at CAST complaining of lower back pain radiating to her left leg.

13. Plaintiff stated that she had tried non-surgical treatments for the constant pain, but to no avail.

14. On or about December 23, 2011, a non-contrast MRI of the Lumbar Spine was done on Plaintiff showing a shallow protrusion and mild degeneration at L5-S1.

3

15. This MRI showed the disc protrusion primarily in the left foramen and narrowing of the left foramen mildly.

16. On or about January 3, 2012, Plaintiff visited Durrani and Plaintiff was told the MRI showed severe degenerative disc disease at L5-S1 with lumbar spinal stenosis.

17. Durrani told Plaintiff the left foramina were completely blocked causing severe foraminal stenosis.

18. A surgery was scheduled by the Plaintiff with Durrani as a result of this information, with surgery date scheduled for January 27th, 2012.

19. Plaintiff later believed that the x-ray she was shown on January 3, 2012 was not her x-ray, but instead that of another individual.

20. On or about January 27, 2012, Plaintiff underwent a Transformal Lumbar Interbody Fusion of L5-S1 performed by Durrani at West Chester Hospital in Butler County, Ohio.

21. Durrani operative notes after the surgery state that surgery was performed due to degenerative spondylolisthesis, however the MRI report on December 23, 2011 do not mention anything regarding severe stenosis or severe spondylolisthesis.

22. On or about January 31, 2012 Plaintiff had a post operative visit with Durrani and physical therapy was started.

23. On or about February 23, 2012 Plaintiff went to CAST in Erlanger for physical therapy.

24. During physical therapy, the CAST receptionist was called in to assist the physical therapists without Plaintiff's consent.

4

25. Plaintiff sustained injury as a result of this physical therapy at CAST.

26. On or about April 17th, 2012 Plaintiff visited Durrani complaining of pain over her right sacroiliac joint (SI).

27. As a result of this complaint by Plaintiff, Durrani ordered two SI joint injections on the right side.

28. On or about May 10, 2012, Plaintiff received right SI injections (without x-ray) from Dr. Tayeb of CAST in Erlanger, KY.

29. On or about May 15, 2012, Plaintiff visited Durrani stating that there was no relief from the SI joint injection.

30. Durrani ordered a repeat MRI (non-contrast) as a result of Plaintiff's visit.

31. On or about May 17, 2012, a second non-contrast MRI in a mobile tractor trailer was done on Plaintiff showing fixation hardware.

32. The second MRI performed on May 17, 2012 noted that the nerve opening was somewhat difficult to visualize due to metallic artifacts, but there did appear to be a high grade spinal stenosis narrowing.

33. On or about May 18, 2012 Plaintiff lost control of her bladder while at work due to pain.

34. On or about May 22, 2012, Plaintiff visited Durrani again complaining of pain.

35. Durrani felt that her symptoms were due to a severe vitamin D deficiency, for which she was currently getting treated for.

36. Durrani took the Plaintiff off of work as a result of Plaintiff and her husband's concerns that work was making the pain worse.

37. On or about May 25, 2012, Plaintiff went to her family doctor in an attempt to find a second opinion.

38. As a result of Plaintiff's visit, Plaintiff scheduled a visit Dr. Schnerler, a neurologist.

39. On or about June 5, 2012, Plaintiff visited Dr. Schnerler, who immediately suggested a neurosurgeon, Dr. Howes for a consultation.

40. On or about June 14, 2012, Plaintiff visited Dr. Howes, who stated that the two previous MRI's should have been done with contrast.

41. On or about June 18, 2012, Plaintiff consulted with pain specialist Dr. Carl Shapiro, D.O. complaining of continued lower back pain and right groin pain that has increased since the surgery.

42. Plaintiff stated to Dr. Shapiro that she has fallen several times since the surgery and had bladder inconsistency.

43. It was about this time that Plaintiff discovered the initial surgery she underwent may have been unnecessary.

44. Dr. Shapiro, after reviewing the prior MRI's and noting that it was unusual for the MRIs not to have been done in contract, ordered an Electromyogram (EMG) of Plaintiff.

45. On or about June 19, 2012, an MRI with and without contrast was ordered by Dr. Howes, D.O.

46. The MRI on June 19, 2012 indicated that the bone graft had displaced posteriorly or could be related to the bone stimulation material that was used.

6

47. Plaintiff believes that bone morphogenetic protein may have been used by Defendant Durrani.

48. On or about June 25, 2012, an EMG was completed showing abnormal results and Plaintiff was scheduled for a neurosurgical second opinion.

49. On or about June, 27, 2012, Plaintiff underwent another SI injection with x-ray from Dr. Shapiro as a result of pain.

50. On or about July 2, 2012, Plaintiff visited Dr. Gregory Howes, D.O. to review findings and Plaintiff is told she now has a bony overgrowth into the foramen and canal.

51. Plaintiff was told to continue conservative treatment and that revision surgery should be done as a last resort.

52. On or about July 23, 2012, Plaintiff consulted with Dr. William Tobler of the Mayfield Clinic.

53. Dr. Tobler diagnosed Plaintiff with lumbar radiculopathy, lower back pain from nerve irritation caused by damage to the discs between the vertebrae, and he requested to see the pre-op MRI from St. Elizabeth done on December 23, 2011 and a copy of Plaintiff's operative note.

54. Dr. Tobler ordered a CT Scan, x-ray, and MRI with contrast citing that revision surgery would be necessary.

55. Dr. Tobler stated the CT/MRI showed retropulsion of graft/cage.

56. On or about September 4, 2012, Dr. Tobler reviewed the pre-op MRI and operative note, stating that he saw where it said "severe stenosis and severe spondylolisthesis" and that he *"did not see these findings"*.

7

57. On or about October 22, 2012, Plaintiff underwent revision surgery at Christ Hospital by Dr. Tobler.

58. Plaintiff revision surgery took an estimated fifteen hours, several hours longer than originally anticipated two to three hour surgery.

59. Plaintiff recovery time in the hospital took an estimated three weeks, with one week being intensive physical therapy.

## COUNT I: NEGLIGENCE – DOCTOR DURRANI

60. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

61. Defendant Durrani owed his patient, Julie Martin, the duty to exercise the degree of skill, care, and diligence of an ordinary prudent health care provider would have exercised under like or similar circumstances.

62. Defendant Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence that an ordinary prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent diagnosis, medical mismanagement and mistreatment of Julie Martin, including but not limited to unnecessary surgery, improper performance of surgery, and improper follow up care addressing a patient's concerns.

63. As a direct and proximate result of the aforementioned acts and omissions by the Defendant, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

8

02 0522

## COUNT II: NEGLIGENCE - CAST

64. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

65. Defendant CAST owed its patient, Julie Martin, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

66. Defendant CAST breached that duty by failing to exercise the requisite degree of skill, care, and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical mismanagement, negligent diagnosis and mistreatment of Plaintiff.

67. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT III: VICARIOUS LIABLITY - CAST

68. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

69. At all times relevant, Defendant Dr. Durrani was a shareholder, director, officer, agent, and/or employee of CAST.

9

70. Defendant Durrani was performing within the scope of his employment when dealing with the Plaintiff.

71. Defendant CAST is responsible for harm caused by acts of employees for conduct that was within the scope of employment under the theory of respondeat superior.

72. Defendant CAST is vicariously liable for the negligent acts of Defendant Durrani alleged in this Complaint.

73. As a direct and proximate result of these acts and omissions, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT IV: NEGLIGENT HIRING, RETENTION, CREDENTIALING & SUPERVISION – CAST, WEST CHESTER HOSPITAL & UC HEALTH

74. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

75. Defendants were responsible for the hiring, credentialing, screening, oversight, and conduct of its residents, doctors, nurses and those doctors with privileges at the Hospital.

76. Defendants were in a unique position to control, monitor, and oversee the conduct and consequences of the residents, doctors, nurses and those with privileges, and owed a duty to Plaintiffs to exercise said control.

77. Upon information and belief, Defendant Durrani had medical privileges terminated, revoked, suspended or acted upon negatively at his places of previous employment or places at which he held privileges, as a result of misconduct,

10

substandard care, medical negligence and/or negative outcomes, including 2 Children's Hospital and Christ Hospital.

78. Defendants owed a duty to its patients to exercise reasonable care in the hiring, selection, retention, supervision, monitoring, oversight and granting of privileges to physicians.

79. Defendants breached their duties by hiring and/or granting privileges to Defendant Durrani and allowing Defendant Durrani to maintain privileges, when they knew or should have known that Defendant Durrani was incompetent and/or that his privileges had been terminated, revoked, suspended or acted upon negatively at one or more of his previous places of employment or places at which he held privileges.

80. Defendants also breached this duty to Plaintiffs by not controlling the actions of the residents, doctors, nurses, and those with privileges, during the medical treatment of Julie Martin.

81. As a direct and proximate result of the acts and omissions described herein, including but not limited to failure to properly supervise medical treatment by the residents, doctors, nurses, and those with privileges at CAST and West Chester Hospital, Plaintiffs sustained severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of the ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT V: BATTERY - DEFENDANT DURRANI

11

82. Plaintiff incorporate, adopt and allege as if fully restated herein, those allegations contained in the above paragraphs.

83. Defendant Durrani committed battery against the Plaintiff Julie Martin by performing a surgery that was unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent for Julie Martin, and by the failure to provide this information to Plaintiff.

84. Plaintiff would not have agreed to the surgery if they knew that the surgery was unnecessary and not indicated.

85. As a direct and proximate result of the aforementioned battery by Defendant, Plaintiff Julie Martin was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, the loss of ability to perform usual and customary activities and Plaintiff has incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VI: FRAUD - DEFENDANT DURRANI, WEST CHESTER HOSPITAL & UC HEALTH

86. Plaintiff incorporates, adopts and alleges those allegations contained in the above paragraphs.

87. Defendants made material, false representations to Plaintiffs and their insurance company regarding the course of care and treatment to Julie Martin, as outlined in this Complain, both before and after the January 27, 2012 surgery.

88. Such false representations include, inter alia, stating that the surgery would be performed due to degenerative spondylolisthesis when the first MRI completed on

December 23, 2011 did not indicate anything of Plaintiff regarding severe stenosis or severe spondylolisthesis; stating that the surgery was imminently necessary; that further conservative treatment was unnecessary and futile; that the procedures and surgery billing to the insurance company was accurate and medically indicated; that the surgery was successful; that Julie Martin was medically stable and ready to be discharged.

89. Defendants knew or should have known such representations were false, and/or Defendants made the misrepresentations with such utter disregard and recklessness as to whether they were true or false that knowledge of their falsity may be inferred.

90. Defendants made the misrepresentations with the intent of misleading Plaintiffs into relying upon them.

91. Plaintiffs justifiably relied upon the material misrepresentations of Defendants when making the decision to undergo surgery performed on January 27, 2012.

92. As a direct and proximate result of the aforementioned, Plaintiff Julie Martin did undergo surgery on January 27, 2012, which was paid for in whole or in part by her insurance company, and Plaintiffs sustained grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

13

93. Plaintiffs incorporate adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

94. Defendants intended to, and in fact, caused emotional distress to the Plaintiffs.

95. Defendants' conduct was so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

96. Defendants' conduct was the proximate and actual cause of the Plaintiffs' psychiatric and emotional injuries, mental anguish, suffering, and distress.

97. The distress and anguish suffered by the Plaintiffs is so serious and of a nature no reasonable man or woman could be expected to endure.

## COUNT VIII - VICARIOUS LIABILITY OF WEST CHESTER & UC HEALTH

98. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs and further state:

99. At all times relevant, Dr. Durrani was an agent, employee, and/or performed services at the direction of, and/or for the benefit of West Chester Hospital & UC Health.

100.    Dr. Durrani was performing within the scope of his employment when dealing with the Plaintiffs and their insurance company regarding the care of Julie Martin.

101.    Defendants West Chester Hospital and UC Health are responsible for harm caused by acts of its agents and employees for conduct that were within the scope of employment under the theory of respondeat superior.

102.    Defendant West Chester Hospital and UC Health are vicariously liable for the acts and omissions of Defendant Dr. Durrani as alleged in this Complaint.

103.    As a direct and proximate result of the acts and omissions of West Chester Hospital, Plaintiffs sustained grievous injuries, paralysis, new and different pain, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and Plaintiffs have incurred and will continue to incur substantial medical expenses and treatment.

## COUNT IX: LOSS OF CONSORTIUM

104.    Plaintiffs incorporate, adopt and re-allege as if fully restated herein, those allegations contained in the above paragraphs.

105.    At all times relevant, Plaintiffs Julie Martin and Stanley Martin were married. That as a result of the wrongful and negligent acts of each of the Defendants, Plaintiff Julie Martin was caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of Plaintiffs' marital relationship. That all the aforesaid injuries and damages were proximately caused by the negligence of the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on all claims. Plaintiffs further request:

1. Costs associated with the disbursement of this action;
2. Interests;
3. Punitive damages, not to exceed $50,000,000.00 (fifty million dollars);
4. Reasonable attorney's fees;

15

5. All compensatory damages, not to exceed $5,000,000.00 (five million dollars);

6. Trial by jury; and

7. All other relief this court deems fitting and proper.

Respectfully submitted,

\s\ *Eric C. D*

Eric C. Deters (38050)
ERIC. C. DETERS &
PARTNERS, PSC
5247 Madison Pike
Independence, KY 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
eric@ericdeters.com

16

**JURY DEMAND**

Plaintiff hereby respectfully requests trial by jury on all issues.

Respectfully submitted,

Eric C. Deters (0038050)
Attorney for Plaintiff
ERIC C. DETERS & PARTNERS, P.S.C.
5247 Madison Pike
Independence, KY 41051-7941
Phone: 859-363-1900 Fax: 859-363-1444
Email: eric@ericdeters.com

17

Crystal Pierce Complaint

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

CRYSTAL PIERCE
3543 Epley Road #3
Cincinnati, Ohio 45247

       Plaintiff

v.

ABUBAKAR ATIQ DURRANI, M.D.
4555 Lake Forest Drive
Suite 150
Cincinnati, Ohio 45242

    (Serve Certified Mail)

and

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.
4555 Lake Forest Drive
Suite 150
Cincinnati, Ohio 45242

    Serve: John E. Barnes
         255 East Fifth Street
         Suite 1900
         Cincinnati, Ohio 45202

    (Serve Certified Mail)

and

CHRIST HOSPITAL
2139 Auburn Avenue
Cincinnati, Ohio 45219

    Serve: CT Corporation System
         1300 East Ninth Street
         Cleveland, Ohio 44114

    (Serve Certified Mail)

CASE No.    A 1 2 0 0 2 6 5

Judge:

COMPLAINT AND
JURY DEMAND



FILED
JAN 1 2 2012
TRACY WINKLER
COMMON PLEAS COURT

1

and

## UNKNOWN DOCTORS AND MEDICAL PROVIDERS

Comes now Plaintiff, Crystal Pierce, and for her Complaint and jury demand states as follows:

### JURISDICTION

1.  At all times relevant, Plaintiff Crystal Pierce, was a resident of and domiciled in the State of Ohio.

2.  At all times relevant, Defendant Dr. Abubakar Atiq Durrani was licensed to and did in fact practice medicine in the State of Ohio.

3.  At all times relevant, Center for Advanced Spine Technologies, Inc. (hereinafter "CAST"), was licensed to and did in fact perform medical services in the State of Ohio, and was and is a corporation authorized to transact business in the State of Ohio.

4.  At all times relevant, Christ Hospital, was licensed to and did in fact perform medical services in the State of Ohio.

5.  At all times relevant, the Unknown Doctors and Medical Providers treated Plaintiff Crystal Peirce, either at Christ Hospital or other service providers.

6.  Plaintiff attaches an Affidavit of Merit to this Complaint.

7.  The amount in controversy exceeds the jurisdictional threshold of this Court.

8.  The subject matter of the Complaint arises out of medical treatment by the Defendants in Hamilton County, Ohio. This Court is thus the proper venue to grant the Plaintiff the relief she seeks.

2

## BACKGROUND

9.    Plaintiff incorporates by reference each and every allegation contained within the above paragraphs further states:

10.    Plaintiff had suffered for many years with back problems.

11.    In October 2007, Plaintiff had a surgical fusion of C6-C7.

12.    During December and January 2009, Plaintiff developed numbness and tingling in her fingers of her rights hand.

13.    She also had pain in her neck, radiating down through the back of her arm into her fingers.

14.    Plaintiff visited her previous surgeon, Dr. Cohen, who suggested non-surgical treatment.

15.    Plaintiff sought a second opinion and saw Defendant Dr. Durrani.

16.    Under information and belief, Defendant Dr. Durrani is employed by Defendant CAST.

17.    Defendant Dr. Durrani reviewed the existing MRI and determined that Plaintiff was in grave danger of immediately becoming paralyzed unless she had surgery.

18.    Defendant Dr. Durrani explained this was an emergent case and should operate as soon as possible.

19.    On or about January 28, 2009, Defendant Dr. Durrani operated on Plaintiff at Defendant Christ Hospital.

20.    Defendant Dr. Durrani performed an anterior cervical discectomy and fusion of C5-C6.

3

21. Due to weather, Defendant Dr. Durrani waited until on or about January 30, 2009 to complete the procedure with a second surgery of a C3-C7 laminoplasty.

22. These surgeries included the use of a plate and screws.

23. Unknown Doctors and Medical Providers participated in these surgeries.

24. Defendant Dr. Durrani caused Plaintiff to be placed under general anesthetic twice for the procedure.

25. Defendant Dr. Durrani did not make his notations regarding the surgery and discharge until March 2009.

26. Plaintiff developed pain post-operatively before being discharged.

27. Plaintiff maintained consistent and as prescribed post-operative follow up with Defendant Dr. Durrani and physical therapy.

28. Plaintiff's pain continued.

29. On or about June 2009, Plaintiff went to Defendant Christ Hospital emergency department for pain treatment.

30. Unknown Doctors and Medical Providers examined Plaintiff, and ordered a CT.

31. Unknown Doctors and Medical Providers told Plaintiff the CT showed a displaced screw at C7.

32. Unknown Doctors and Medical Providers advised Plaintiff to take the CT to her surgeon for follow up.

33. Plaintiff presented the CT to Defendant Dr. Durrani, who stated the Unknown Doctors and Medical Providers did not know what they were talking about and that Defendant Dr. Durrani had meant to put the screw that way.

4

34.    On or about July 2009, Plaintiff saw her pain specialist, Dr. Shapiro, who reviewed the CT and advised that the pain would not resolve until the hardware was removed.

35.    Plaintiff returned for follow up to Defendant Dr. Durrani.

36.    Plaintiff restated what Dr. Shapiro had said.

37.    Defendant Dr. Durrani became defensive and accusatory toward Plaintiff.

38.    Plaintiff returned to Dr. Cohen for treatment.

39.    On or about September 2009, Dr. Cohen performed a CT myelogram which revealed right-sided laminar screws causing mild dorsal rightward thecal sac compression at C3, C4, and C5 without right dorsal spinal cord impingement.

40.    On or about October 2009, Dr. Cohen operated, removing the hardware.

41.    Plaintiff's pain resolved almost immediately.

### COUNT I - NEGLIGENCE OF DOCTOR DURRANI

42.    Plaintiff incorporates by reference each and every allegation contained within the above paragraphs and further states:

43.    Defendant Dr. Abubakar Atiq Durrani owed his patient, Plaintiff Crystal Pierce, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

44.    Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, the negligent diagnosis, medical mismanagement and mistreatment of Plaintiff,

5

including but not limited to improper selection for surgery, improper performance
of the surgery and installation of hardware, improper follow up care addressing a
patient's concerns and lax documentation.

## COUNT II - NEGLIGENCE OF CAST

45.     Plaintiff incorporates by reference each and every allegation contained within the
above paragraphs and further states:

46.     Defendant CAST owed its patient, Plaintiff Crystal Pierce, the duty to exercise the
degree of skill, care, and diligence an ordinarily prudent health care provider
would have exercised under like or similar circumstances.

47.     Defendant CAST breached that duty by failing to exercise the requisite degree of
skill, care, and diligence an ordinarily prudent health care provider would have
exercised under same or similar circumstances through, among other things, its
negligent medical mismanagement, negligent diagnosis and mistreatment of
Plaintiff.

48.     As a direct and proximate result of the aforementioned negligence and deviation
from the standard of care on the part of the Defendant, Plaintiff was caused to
sustain severe and grievous injuries, prolonged pain and suffering, emotional
distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to
perform usual and customary activities and incurred substantial medical expenses
and treatment.

## COUNT III - VICARIOUS LIABILITY OF CAST

49.     Plaintiff incorporates by reference each and every allegation contained within the

6

above paragraphs and further states:

50.   At all times relevant, Defendant Dr. Durrani was a shareholder, director, officer,

      agent, and/or employee of CAST.

51.   Defendant Dr. Durrani was performing within the scope of his employment when

      dealing with the Plaintiff regarding the care of Plaintiff.

52.   Defendant CAST is responsible for harm caused by acts of its employees for

      conduct that was within the scope of employment under the theory of respondeat

      superior.

53.   Defendant CAST is vicariously liable for the negligent acts of Defendant Dr.

      Durrani alleged in this Complaint.

54.   As a direct and proximate result of Defendant CAST's actions, Plaintiff sustained

      harm.

## COUNT IV - NEGLIGENCE OF CHRIST HOSPITAL

55.   Plaintiff incorporates by reference each and every allegation contained within the

      above paragraphs and further states:

56.   Defendant Christ Hospital owed its patient, Plaintiff Crystal Pierce, the duty to

      exercise the degree of skill, care, and diligence an ordinarily prudent health care

      provider and hospital would have exercised under like or similar circumstances.

57.   Defendant Christ Hospital breached that duty by failing to exercise the requisite

      degree of skill, care, and diligence an ordinarily prudent health care provider

      would have exercised under same or similar circumstances through, among other

      things, its negligent medical treatment of Plaintiff, and the negligent retention and

7

supervision of Defendant Dr. Durrani.

58.     As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant, Plaintiff was caused to sustain severe and grievous injuries, prolonged pain and suffering, emotional distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to perform usual and customary activities and incurred substantial medical expenses and treatment.

## COUNT V - NEGLIGENCE OF UNKNOWN DOCTORS AND MEDICAL PROVIDERS

59.     Plaintiff incorporates by reference each and every allegation contained within the above paragraphs and further states:

60.     Defendants Unknown Doctors and Medical Providers owed its patient, Plaintiff Crystal Pierce, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider and hospital would have exercised under like or similar circumstances.

61.     Defendant Unknown Doctors and Medical Providers breached that duty by failing to exercise the requisite degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, its negligent medical treatment of Plaintiff.

62.     It is reasonable that Plaintiff could not identify who these persons were during the course of her treatment.

63.     It is reasonably believed these Unknowns can be identified through discovery.

64.     As a direct and proximate result of the aforementioned negligence and deviation

8

from the standard of care on the part of the Defendant, Plaintiff was caused to

sustain severe and grievous injuries, prolonged pain and suffering, emotional

distress, humiliation, discomfort, loss of enjoyment of life, and loss of ability to

perform usual and customary activities and incurred substantial medical expenses

and treatment.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants on all claims.  Plaintiff
further request:

1. Costs associated with the disbursement of this action;
2. Interests;
3. Reasonable attorney's fees;
4. All compensatory damages;
5. Trial by jury; and
6. All other relief this court deems fitting and proper.

Respectfully submitted,

Eric C. Deters (38050)
Eric C. Deters & Partners P.S.C.
5247 Madison Pike
Independence, KY 41051
(859) 363-1900        Fax: (859) 363-1444
Eric@ericdeters.com

William D. Cunningham  (0000796)
The Law Office of Steven R. Adams
8 West Ninth Street
Cincinnati, OH 45202
(513) 929-9333        Fax: (513) 929-9337
williec@fuse.net

9

## JURY DEMAND

Plaintiffs respectfully request a trial by jury.

Eric C. Deters (38050)

## CERTIFICATION OF EXPERT REVIEW

Eric Deters certified he has had this matter reviewed by competent health care providers qualified to testify and they are willing to support the allegations made in the Complaint.

Eric C. Deters

10

## Affidavit of Merit

I, Keith Wilkey, M.D., after bring duly sworn and cautioned state as follows:

1.    I have reviewed all relevant medical records reasonably available about Crystal Pierce concerning the allegations of medical negligence.

2.    I am familiar with the applicable standard of care.

3.    Based upon my review of this record, my education, my training, and experience, it is my belief, to a reasonable degree of medical probability that the care provided by the Defendant Abubakar Durrani, M.D. was negligent and this negligence caused injury to Crystal Pierce.

4.    I devote at least one-half of my professional time to the active clinical practice in my field of licensure, or to its instruction in an accredited school.

5.    My curriculum vitae is attached.

**FURTHER AFFIANT SAITH NAUGHT.**

Keith Wilkey, M.D.

STATE OF _Missouri_            )
                                           )
COUNTY OF _St. Charles_       )

        **SUBSCRIBER, SWORN TO AND ACKNOWLEDGED,** before me, a Notary
Public, by Keith Wilkey, M.D. on the ___27___ day of ___December___, 2011.

Notary Public

My Comm. Exp 07 | 18 | 2015

ANGELA POINSETT
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: July 18, 2015
Commission Number: 11133613

**Keith D. Wilkey, M D**
E-mail: kdwilkey@earthlink.net
C: 314-791-0883

Best method of communication is e-mail

Orthopedic Associates
Contact: Cynthia
Des Peres Square
1050 Old Des Peres Rd , Suite 100
St. Louis, MO 63131-1865
314-569-0612

Bone and Joint Institute
Contact: Sarah or Angie
Des Peres Medical Arts Pavilion
2325 Dougherty Ferry Road, Suite 202
St. Louis, MO 63122-3356
314-966-6480

Alpha Spine of Saint Louis
Orthopaedic and Spine Consultant
Contact: Cynthia
Des Peres Square
1050 Old Des Peres Rd., Suite 100
St. Louis, MO 63131-1865
314-569-0612
Dr. Wilkey direct: 314-791-0883

## EDUCATION

Bachelor of Science in Biochemistry,
June 1985,
The Ohio State University

Doctor of Medicine,
June 1989,
Wright State University School of Medicine

## POSTGRADUATE EDUCATION

Rotating Transitional Internship,
Brooke Army Medical Center,
San Antonio, TX,
July 1989 to July 1990

Orthopaedic Residency,
Brooke Army Medical Center,
San Antonio, TX,
July 1992 to July 1996

Spine Fellowship,
Letterman Spine Institute, University of Louisville,
Louisville, KY,
August 2004 to August 2005

HONORS

AOA (third year), 1988,
Dean's Award 1986 and 1987,
China Medical Board Traveling Scholar, 1989,
Graduated first in class, 1989,
Army Achievement and Commendation Medals, multiple,
Saudi Arabia, Kuwait, and Southwest Asia Service Ribbons, 1991,
Third Place- Commander's Award for Outstanding House staff Research, 1996

PUBLICATIONS AND PRESENTATIONS

**Mechanical Characteristics of Eight Femoral Intramedullary Nails**
Presented to the American Academy of Orthopaedic Surgeons (AAOS), February 1996,
and to the Society of Military Orthopaedic Surgeons, December 1995.
Published in the Journal of Orthopaedic Trauma, November, 1998.

**Patellar Fractures in an Elderly Population**
Presented to the North American Orthopaedic Guild, October 1994.

**Taking the Mystery Out of Orthopaedic Radiology and Advanced Orthopaedic Imaging**
Presented to the National Association of Orthopaedic Nurses (NAON), May 2001, 2002,
2003, 2004, 2005, and 2007

**Orthopaedic ER**
Presented to the National Association of Orthopaedic Nurses (NAON), May 2004 and
2005

**Oh...My Aching Back!  The Discogenic Theory of Low Back Pain**
Presented to the National Association of Orthopaedic Nurses (NAON),  May 2007
and to St. Louis Orthopaedic Residency Grand Rounds, October 2006

**Basic Fracture Identification and Radiographic Description**
Presented to 3rd year medical student surgery clerks University of Illinois at Champaign-
Urbana 1999 through 2001 school years.

**WMUB Radio Sound Health**
Radio talk show guest orthopaedic and spine specialist for WMUB Sound Health, Monthly
August 2002 through December 2004

CERTIFICATIONS and POSITIONS

Board Certified - Orthopaedic Surgery 1998
Fellow - American Academy of Orthopaedic Surgeons (AAOS) 2000
Fellow - North American Spine Society (NASS) 2006
Associate Professor of Surgery, University of Illinois at Champaign-Urbana 1999 to 2001.
Voluntary Staff St. Louis University Dept. of Orthopaedic Surgery 2006 to present

LICENSURE

Missouri, Kentucky, Illinois, Indiana, and Ohio Medical Licenses

## ORTHOPAEDIC EXPERIENCE

Chief of Outpatient Specialty Clinics / Orthopaedics
Ft. Drum MEDDAC
July 1996 to July 1998

Christie Clinic
Champaign IL
July 1998 to July 2001

Orthopaedics & Spine
Hamilton OH
August 2001 to August 2004

Alpha Spine LLC
St. Louis MO
September 2005 to present

## HOSPITAL PRIVILEGES (Current)

Des Peres Hospital
2345 Dougherty Ferry Rd.
St. Louis, MO 63122
314-966-9489

St. Joseph's Hospital, Kirkwood
525 Couch Ave.
St. Louis, MO 63122
314-966-1500

## PHYSICIAN REFERENCES

Maladen Djurasovic, MD (Fellowship Director)
Louisville Spine Institute
210 E. Gray St.
Louisville, KY 40202
502-584-7525

Steven Glassman, MD (Staff Surgeon)
Louisville Spine Institute
210 E. Gray St.
Louisville, KY 40202
502-584-7525

Steve Packard, MD (Chairman Dept. of Orthopaedics, Carle Clinic)
611 W. Park Ave
Urbana, II 61801
217- 383-3260

William Price, MD (Former Partner)
101 W. University Ave
Champaign, Il 61820
217- 366-1237

MILITARY EXPERIENCE

    Marine Reserve
    June 1981 to May 1984

    Brigade Surgeon, US Army
    July 1990 to June 1992

    Chief of Outpatient Specialty Clinics / Orthopaedics
    Ft. Drum MEDDAC
    July 1996 to July 1998

COMMUNITY

    FBI Citizens Academy (Alumni)
    November 2006

    FBI InfraGuard Medical Consultant
    November 2006 to present

    Rotary International
    October 2006 to present

    Veterans of Foreign Wars
    November 2005 to present

    Member Universialist Unitarian Church
    June 2002 to present

AVOCATIONS

    Private Pilot License
    September 2006 to present

    Basic, Advanced, and NITROX certified SCUBA diver
    August 2000 to present

    Arts, Humanities, and Sciences